UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x

| | |
|---|---|
| VR GLOBAL PARTNERS, L.P. PATON HOLDINGS : | |
| LTD., VR CAPITAL GROUP LTD., AND VR : | No. 07 Civ. 8686 (GEL) |
| ARGENTINA RECOVERY FUND, LTD., : | |
| : | FILED ELECTRONICALLY |
| Plaintiffs, : | |
| : | |
| - against - : | |
| : | |
| PHILIP R. BENNETT, ET AL., : | |
| : | |
| Defendants. : | |

--------------------------------------------------------------------x

| | |
|---|---|
| CAPITAL MANAGEMENT SELECT FUND : | |
| LTD., INVESTMENT & DEVELOPMENT : | No. 07 Civ. 8688 (GEL) |
| FINANCE CORPORATION, IDC FINANCIAL S.A., : | |
| : | |
| Plaintiffs, : | |
| : | |
| - against - : | |
| : | |
| PHILIP R. BENNETT, ET AL., : | |
| : | |
| Defendants. : | |
| : | |

--------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## JOSEPH J. MURPHY'S AND WILLIAM M. SEXTON'S MOTION TO DISMISS


FRIEDMAN & WITTENSTEIN
A Professional Corporation
600 Lexington Avenue
New York, NY 10022
(212) 750-8700

*Attorneys for Defendant William M. Sexton*

SHAPIRO FORMAN ALLEN & SAVA LLP
380 Madison Avenue
New York, NY 10017
(212) 972-4900

*Attorneys for Defendant Joseph J. Murphy*

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    Refco Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    The Alleged "RCM Securities Scheme" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    The Alleged "RGHI Scheme" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    The IPO and LBO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    The October 10, 2005 Disclosure and Refco Bankruptcy Filing . . . . . . . . . . . . . 9

    Allegations as to Sexton and Murphy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    **POINT I**
    **COUNT I FAILS TO STATE A CLAIM AGAINST SEXTON AND**
    **MURPHY UNDER § 10(B) OF THE EXCHANGE ACT** . . . . . . . . . . . . . . . 12

        A.    Count I Should Be Dismissed As Against Sexton And Murphy
            Because They Are Not Alleged To Have Committed
            A Deceptive Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

              1.    Plaintiffs Fail To Allege That
                    Sexton Or Murphy Engaged In Any Conduct
                    Prohibited Under Rule 10b-5(a) Or (c) . . . . . . . . . . . . . . 14

                    (a)    Plaintiffs Fail To Allege With
                            Particularity Any Participation By
                            Sexton Or Murphy In The RCM
                            Securities Scheme . . . . . . . . . . . . . . . . . . . . . . . 15

                    (b)    Plaintiffs Fail To Allege That Sexton
                            Or Murphy Committed A Manipulative
                            Or Deceptive Act . . . . . . . . . . . . . . . . . . . . . . . . 16

2.      The VR Plaintiffs Fail To Allege
        That Sexton Or Murphy Made Any
        Materially False Statement Or Omission
        Under Rule 10b-5(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

B.      Count I Should Be Dismissed Because
        Plaintiffs Have Not Pled Scienter As To
        Murphy Or Sexton . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        1.      Plaintiffs' Generalized Motive And
                Opportunity Allegations Are Insufficient To Establish
                That Murphy Or Sexton Acted With Scienter . . . . . . . . . 23

                (a)     Plaintiffs' Insufficient Motive
                        Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

                (b)     Plaintiffs' Insufficient Opportunity Allegations  .26

        2.      Plaintiffs Have Not Pled Strong Circumstantial Evidence
                That Murphy Or Sexton Consciously Misbehaved
                Or Was Reckless . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**POINT II**
**PLAINTIFFS HAVE NOT PLED RULE 10b-16 CLAIMS AGAINST**
**MURPHY OR SEXTON** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**POINT III**
**PLAINTIFFS HAVE NOT PLED SECTION 20(A) CONTROL PERSON**
**CLAIMS AGAINST MURPHY OR SEXTON** . . . . . . . . . . . . . . . . . . . . . . 32

        A.      Plaintiffs' Conclusory "Control" Allegations
                Are Insufficient As Against Murphy And
                Sexton . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

        B.      Plaintiffs Fail To Plead That Murphy Or
                Sexton Culpably Participated In The Alleged
                Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*American Financial International Group - Asia, LLC v. Bennett,*
    05 Civ. 8988, 2007 WL 1732427
    (S.D.N.Y. Jun. 14, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Apace Communications, Ltd. v. Burke,*
    522 F. Supp. 2d 509 (W.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*ATSI Communications, Inc. v. The Shaar Fund, Ltd.,*
    493 F.3d 87 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 23

*Bell Atlantic Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 33

*Bissell v. Merrill Lynch & Co.,*
    937 F. Supp. 237 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
    511 U.S. 164 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Converse, Inc. v. Norwood Venture Corp.,*
    96 Civ. 3745, 1997 WL 742534 (S.D.N.Y. Dec. 1, 1997) . . . . . . . . . . . . . . . . 35

*Copland v. Grumet,*
    88 F. Supp. 2d 326 (D.N.J. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Ernst & Ernst v. Hochfelder,*
    425 U.S. 185 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Geiger v. Solomon-Page Group, Ltd.,*
    933 F. Supp. 1180 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Glickman v. Alexander & Alexander Services, Inc.,*
    93 Civ. 7594, 1996 WL 88570 (S.D.N.Y. Feb. 29, 1996) . . . . . . . . . . . . . . 23, 25

*Gurfein v. Ameritrade, Inc.,*
    411 F. Supp. 2d 416 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*In re Alstom SA Securities Litigation,* 406 F. Supp.2d 433 (S.D.N.Y. 2005)  . . . . . . . . 17

*In re AOL Time Warner, Inc. Securities & ERISA Litigation,*
    381 F. Supp. 2d 192 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*In re Authentidate Holding Corp. Securities Litigation,*
    05 Civ. 5323, 2006 WL 2034644 (S.D.N.Y. July 14, 2006)  . . . . . . . . . . . . . . . 24

*In re Blech Securities Litigation,*
    961 F. Supp. 569 (S.D.N.Y. 1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16, 34

*In re Citigroup, Inc. Securities Litigation,*
    330 F. Supp. 2d 367 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 28, 30

*In re Converium Holding AG Securities Litigation,*
    04 Civ. 7897, 2006 WL 3804619 (S.D.N.Y. Dec. 28, 2006) . . . . . . . . . . . . . . . 21

*In re Enron Securities Derivative & ERISA Litigation,*
    439 F. Supp. 2d 692 (S.D. Tex. 2006)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Flag Telecom Holdings, Ltd. Securities Litigation,*
    308 F. Supp. 2d 249 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*In re Flag Telecom Holdings, Ltd. Securities Litigation,*
    352 F. Supp. 2d 429 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*In re Global Crossing, Ltd. Securities Litigation,*
    322 F. Supp. 2d 319 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 22

*In re Global Crossing, Ltd. Securities Litigation,*
    No. 02 Civ. 910, 2005 WL 1907005
    (S.D.N.Y. Aug. 8, 2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 32, 33, 34, 35

*In re Interpublic Securities Litigation,*
    02 Civ. 6527, 2003 WL 21250682 (S.D.N.Y. May 29, 2003)  . . . . . . . . . . . . . 28

*In re Mercury Interactive Corp. Securities Litigation,*
    No. C 05-3395 JF (PVT), 2007 WL 2209278
    (N.D. Cal. Jul. 30, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Parmalat Securities Litigation,*
    376 F. Supp. 472 (S.D.N.Y. 2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Refco Capital Markets Brokerage Customer Securities Litigation,*
   06 Civ. 643, 2007 WL 2694469
   (S.D.N.Y. Sept. 13, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*In re Refco, Inc. Securities Litigation,*
   503 F. Supp. 2d 611 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*In re Sotheby's Holdings, Inc,*
   00 Civ. 1041, 2000 WL1234601 (S.D.N.Y. August 31, 2000) . . . . . . . . . . . . . 35

*In re Salomon Analyst Winstar Litigation,*
   No. 02 Civ. 6171, 2006 WL 510526 (S.D.N.Y. Feb. 28, 2006) . . . . . . . . . . . . 23

*In re Van Wagoner Funds, Inc. Securities Litigation,*
   382 F. Supp. 2d 1173 (N.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Iqbal v. Hasty,* 490 F.3d 143 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Jaufman v. Levine,*
   1:06-CV-1295, 2007 WL 2891987 (S.D.N.Y. Sept. 28, 2007) . . . . . . . . . . . . . 23

*Kalnit v. Eichler,*
   264 F.3d 131 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 27

*Katz v. David W. Katz & Co.,*
   82 Civ. 6383, 1984 WL 2385 (S.D.N.Y. Feb. 14, 1984) . . . . . . . . . . . . . . . . . 34

*Kinsey v. Cendant Corp.,*
   04 Civ. 0582, 2005 WL 1907678 (S.D.N.Y. Aug. 10, 2005) . . . . . . . . . . . . . . 29

*Lentell v. Merrill Lynch & Co.,*
   396 F.3d 161 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Levitin v. PaineWebber Inc.,*
   933 F. Supp. 325 (S.D.N.Y. 1996), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Liberty Mutual Insurance Co. v. Wawa Tours, Inc.,*
   CV-07-00880, 2007 WL 2743500 (E.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . 29

*Melder v. Morris,*
   27 F.3d 1097 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Powers v. British Vita, P.L.C.,*
    57 F.3d 176 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Rich v. Maidstone Financial, Inc.,*
    98 Civ. 2569, 2002 WL 31867724
    (S.D.N.Y. Dec. 20, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16

*Robbins v. Hometown Buffet, Inc.,*
    No. 94-1655, 1995 WL 908194 (S.D. Cal. Mar. 16, 1995) . . . . . . . . . . . . . . . . 34

*Rombach v. Chang,*
    355 F.3d 164 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 26

*Ross v. A.H. Robins Co.,*
    607 F.2d 545 (2d Cir 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Rubinstein v. Skyteller, Inc.,*
    48 F. Supp.2d 315 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Securities Exchange Commission v. U.S. Environmental Inc.,*
    155 F.3d 107 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Securities Exchange Commission v. Durgarian,*
    477 F. Supp. 2d 342 (D. Mass. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Shapiro v. Cantor,* 123 F.3d 717 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Shields v. Citytrust Bancorp,*
    25 F.3d 1124 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 26

*Simon v. Weaver,*
    327 F. Supp.2d 258 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Simpson v. AOL Time Warner,*
    452 F.3d 1040 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Steed Financial LDC v. Laser Advisors, Inc.,*
    258 F. Supp. 2d 272 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27, 29

*Stevelman v. Alias Research, Inc.,*
    174 F.3d 79 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.,*
     128 S. Ct. 761 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank,*
     250 F.3d 87 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
     127 S. Ct. 2499 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 28, 30

*Wallace v. Buttar,*
     239 F. Supp. 2d 388 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Wright v. Ernst & Young LLP,*
     152 F.3d 169 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 21

## STATUTES & RULES

15 U.S.C. § 78u-4(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

17 C.F.R. § 240.10b-5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13, 14, 29

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

Defendants Joseph J. Murphy ("Murphy") and William M. Sexton ("Sexton") respectfully submit this Memorandum of Law in support of their motion pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b), to dismiss the claims asserted against them in the complaints in these two actions.[1]

## Preliminary Statement

In the Refco Capital Markets Ltd. ("RCM") customers class action, class plaintiffs alleged §§ 10(b) and 20(a) claims against Murphy and Sexton arising out of a purported scheme to convert RCM customer securities. Confronted with Murphy's and Sexton's motions to dismiss – which argued that they were not alleged to have engaged in any deceptive conduct, that plaintiffs had not adequately pled scienter against them, and that they had not culpably participated in any wrongdoing – the class plaintiffs abandoned those claims. As a result, this Court dismissed the claims against Murphy and Sexton without leave to replead. See In re RCM Brokerage Customer Sec. Litig., 06 Civ. 643, 2007 WL 2694469, at *6 (S.D.N.Y. Sept. 13, 2007). Inexplicably, a few individual RCM customers have now filed virtually identical claims against Murphy and Sexton. Those claims suffer from the same fundamental defects as the prior action and also should be dismissed without leave to replead.

If there was any basis to name Murphy or Sexton in this suit, Plaintiffs would have pled it. Their counsel is also counsel to the Trustee of the Refco Litigation Trust. As a result, counsel has long had access to 40+ million pages of Refco's records, as well as to Refco's employees and agents, and has had the benefit of the record of the Bankruptcy Court trial centering on the RCM

---

[1] The two actions, which assert substantially identical claims as against Murphy and Sexton, are referred to as the "VR Action" and the "CM Action," and their complaints as the "VR Complaint" and the "CM Complaint" (collectively, the "Complaints").

customer accounts.[2] Despite these sources of information, Plaintiffs are unable to make a single allegation linking Murphy or Sexton to the alleged fraud involving RCM customer assets. While Plaintiffs make specific allegations concerning the conduct of other defendants, they fail to plead any particularized allegations against Murphy or Sexton other than that they were officers of the parent company and officers of Refco subsidiaries not involved in these cases.

Plaintiffs in both the VR Action and the CM Action were customers of RCM, which was the offshore securities and foreign exchange broker subsidiary of Refco Group, Ltd. and Refco, Inc. (collectively "Refco"). RCM was run by defendant Santo Maggio ("Maggio"). The Complaints allege that Maggio and defendant Phillip Bennett ("Bennett"), the Chief Executive Officer of Refco, devised a scheme (referred to by Plaintiffs as the "RCM Securities Scheme") whereby assets belonging to RCM customers would be used to fund the working capital needs of Refco. Refco's "senior management" allegedly carried out this scheme by directing the sale of securities held by RCM on behalf of its customers, and the diversion of the proceeds from RCM to prop up other Refco entities. Plaintiffs seek recovery not for any loss in value of any security they purchased or sold, but rather for the shortfall in funds held by RCM when it filed for

---

[2] Both Complaints rely upon the testimony of Thomas Yorke, a former Executive Vice President of RCM on its Global Execution and Finance Desk. (See, e.g., VR Compl. ¶¶ 117-118; CM Compl. ¶¶ 108-09, 168.) Yorke testified for three days in connection with a hearing before Judge Drain in In re Refco, Inc., No. 03-60006 (Bankr. S.D.N.Y.), regarding procedures followed by RCM with respect to customers' securities. (See Declaration of Matthew J. Sava in Support of Defendants Joseph J. Murphy's and William M. Sexton's Motion to Dismiss the Complaints, dated February 21, 2008 ("Sava Declr.") ¶¶ 2-3 & Ex. A.) Notably, at no point during Yorke's three days of testimony is there any mention of Sexton or Murphy. This Court can consider this testimony since Plaintiffs have relied on it and/or incorporated it by reference into their Complaints. See ATSI Communications, Inc. v. The Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (in deciding a motion to dismiss, the court "may consider . . . statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit").

bankruptcy in October 2005.[3]

As asserted against Murphy and Sexton, the Complaints are wholly inapposite because Murphy and Sexton (i) were not officers or employees of RCM (with one exception not relevant to Plaintiffs' allegations[4]), (ii) did not take any action on RCM's behalf, and (iii) had nothing to do with any of the actions complained about in the Complaints. Nor do the Complaints contain any particularized allegations to the contrary. In fact, the Complaints do not attribute a single act or statement to Murphy or Sexton that could even arguably support the claims against them. Rather, the only relevant, particularized "allegations" against Murphy and Sexton are that they were officers of a Refco subsidiary (Refco LLC) that received an unspecified amount of inter-company loans that allegedly originated from RCM customer assets, that they were also officers of Refco (i.e., the parent entity), and that, years after the RCM Securities Scheme began, they received certain pecuniary benefits as a result of a leveraged buyout ("LBO") and initial public offering ("IPO") of Refco shares.

In the precise manner that courts have repeatedly rejected, Plaintiffs include Murphy and Sexton as defendants by simply "lumping" them with numerous other defendants, including the two former officers specifically alleged to have devised and/or implemented the scheme to convert the RCM customers' assets. Thus, as against Murphy and Sexton, the Complaints rely on wholly conclusory allegations that the more than twenty "Defendants" or the eight "Officer

---

[3] The VR Complaint also includes allegations as to a second scheme (the "RGHI Scheme") purportedly engaged in by defendants Bennett, Maggio, Tone Grant ("Grant") and Robert Trosten ("Trosten") to improve the appearance of Refco's financial statements by moving Refco losses into a receivable from Refco's parent, and then concealing the related-party nature of such receivable by engaging in a series of "round trip" loan transactions at the end of financial reporting periods. Neither Murphy nor Sexton is alleged to have participated in the RGHI Scheme.

[4] Murphy was briefly appointed President of RCM on October 10, 2005 – one week before Refco declared bankruptcy – after Bennett and Maggio were asked by Refco's Board to resign.

Defendants" were aware of the RCM Securities Scheme and somehow participated in it. The absence of specific allegations against Murphy and Sexton is not surprising because – as the Complaints tacitly acknowledge by failing to allege otherwise with particularity – Murphy and Sexton had nothing to do with the operation of RCM and had no role of any kind in the alleged wrongdoing.

Notwithstanding Murphy and Sexton's lack of involvement with RCM and the absence of particularized allegations against them, the Complaints include Murphy and Sexton in all three of their claims for relief. Count I in both Complaints asserts a claim under § 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 (the "Exchange Act") against all Defendants, based on alleged participation in the RCM Securities Scheme. However, Count I fails as against Murphy and Sexton because there is no allegation that either of them committed any deceptive act. Count I also should be dismissed against Murphy and Sexton because Plaintiffs have failed to plead any particularized facts giving rise to a "strong inference" that either acted with scienter, as required by the PSLRA. Under established case law, Plaintiffs' generalized, "group pleading" allegations of recklessness, without citing to any specific actions or knowledge of Murphy or Sexton, fail to adequately allege that Murphy or Sexton acted with the conscious misbehavior required to state a claim under § 10(b). Similarly, Plaintiffs' attempt to plead motive against Murphy and Sexton by alleging that they and numerous other defendants stood to benefit from the Refco LBO and IPO is far too attenuated, and Plaintiffs have wholly failed to show how Murphy or Sexton had the opportunity to commit any alleged fraud.

Count II of the Complaints, which is premised on Rule 10b-16 of the Exchange Act, alleges that Plaintiffs did not receive certain written disclosures required by that rule. This claim fails as against Murphy and Sexton for a number of reasons, including that there is no private

right of action under Rule 10b-16 and that, in any event, the rule proscribes conduct only by brokers or dealers, and thus cannot be the basis for a claim against individuals such as Murphy or Sexton who are not alleged to have had any dealings with RCM customers.

Count III of the Complaints, alleging "control person" liability pursuant to § 20(a) of the Exchange Act against numerous defendants, should also be dismissed as against Murphy and Sexton. Plaintiffs have failed to adequately allege Murphy's or Sexton's culpable participation in the purported primary violation, as the Complaints contain no specific allegations as to Murphy's or Sexton's participation in or knowledge of the alleged fraud. The Complaints also fail to adequately allege Murphy's or Sexton's "control" over the primary violators or the transactions at issue.

## STATEMENT OF FACTS[5]

### Refco Background

Prior to its bankruptcy filing in October 2005, Refco was a publicly traded holding company that, through its subsidiaries, provided securities brokerage and execution and clearing services in the derivatives, foreign currency and fixed income markets. (See VR Compl. ¶ 52; CM Compl. ¶ 36.) Refco was divided into three principal operating subsidiaries: RCM was Refco's unregulated securities and foreign exchange broker subsidiary incorporated in Bermuda; Refco Securities LLC ("RSL") was Refco's U.S. regulated broker-dealer subsidiary; and Refco LLC was Refco's U.S. regulated futures commission merchant subsidiary. (VR Compl. ¶¶ 55-57, 79; CM Compl. ¶¶ 39-41, 60.)

---

[5] This summary of the facts is based on the allegations in the Complaints, and is solely for purposes of this motion to dismiss. No admission as to their veracity is hereby intended or made.

**The Parties**

Plaintiffs VR Global Partners, L.P., VR Capital Group Ltd., Paton Holdings Ltd. and VR Argentina Recovery Fund, Ltd. (collectively, "VR") are limited liability companies registered in Grand Cayman that maintained accounts at RCM. (VR Compl. ¶ 49.) VR opened those accounts starting in September 2001. (VR Compl. ¶ 83.)

Plaintiffs Capital Management Select Fund Ltd. ("Capital Management"), Investment & Development Finance Corporation ("IDF") and IDC Financial S.A. ("IDC") (collectively, the "CM Plaintiffs") were also RCM customers. Capital Management is an investment company incorporated under the laws of the Bahamas that opened an account with RCM in June 2004. (CM Compl. ¶¶ 31, 67.) IDF is an investment company incorporated under the laws of the British Virgin Islands that opened two accounts with RCM in October 1996. (CM Compl. ¶¶ 32, 78.) IDC is an investment company incorporated under the laws of Panama that opened an account with RCM in February 1998. (CM Compl. ¶¶ 33, 90.)

In addition to Bennett and Maggio, the defendants are: (1) six other former officers of Refco; (2) Refco Group Holdings, Inc. ("RGHI"), which owned 90% of Refco prior to the LBO; (3) Thomas H. Lee Partners, L.P. ("THL"), which purchased 57 percent of Refco as part of the LBO; (4) various persons and entities affiliated with THL; and (5) Grant Thornton LLP ("Grant Thornton"), which served as the independent auditor of RCM. (VR Compl. ¶¶ 60-78.)[6]

**The Alleged "RCM Securities Scheme"**

Plaintiffs allege that RCM engaged in the so-called "RCM Securities Scheme," whereby it converted its customers' securities and used the proceeds to fund the daily operations of Refco,

---

[6] The CM Complaint does not name Grant, RGHI or Grant Thornton as defendants.

as well as acquisitions by Refco. (VR Compl. ¶¶ 3-5, 116; CM Compl. ¶¶ 2-4, 107.)  According to Plaintiffs, while RCM represented that it held securities entrusted to it by its customers in custodial accounts, it routinely sold such securities through hypothecations or repurchase agreements, without the customers' knowledge, authorization or consent. (VR Compl. ¶¶ 4-5, 8, 116; CM Compl. ¶¶ 3-4, 70, 75, 81, 89, 91, 99.)  Those sales were allegedly a source of "low-cost supplementary capital" which was "siphoned out" of RCM and "upstreamed" or "side-streamed" to other Refco subsidiaries, in the form of intercompany loans. (VR Compl. ¶¶ 116-19, 122; CM Compl. ¶¶ 107-10, 113.)  The intercompany loans were allegedly routed through Refco Capital LLC ("RCC"), a Refco subsidiary that functioned as Refco's "treasury" or "disbursing agent." (VR Compl. ¶ 53; CM Compl. ¶ 37.)

Plaintiffs allege that Maggio and Bennett orchestrated the RCM Securities Scheme, and directed RCM staff, including RCM Executive Vice President Thomas Yorke, to sell RCM customer securities in order to raise needed funds. (VR Compl. ¶¶ 117, 255, 257; CM Compl. ¶¶ 108, 168.)  Plaintiffs also repeatedly allege, with no specificity, that Refco "senior management" and/or the "Officer Defendants" directed the sale of RCM customers' securities. (VR Compl. ¶¶ 5, 117; CM Compl. ¶¶ 4, 10.)

According to Plaintiffs, the RCM Securities Scheme was concealed through misrepresentations in account statements and customer agreements.  Plaintiffs each entered into a standard form "Securities Account Customer Agreement" (the "Customer Agreement") with both RCM and RSL. (VR Compl. ¶ 106; CM Compl. ¶ 100.)  Plaintiffs allege that those Customer Agreements were misleading because they purportedly represented that transactions involving the fully-paid securities in their accounts could only be made in accordance with Plaintiffs' authorization. (VR Compl. ¶ 106; CM Compl. ¶ 100.)  Similarly, Plaintiffs allege that the

7

periodic RCM customer account statements sent to them were deceptive because they failed to disclose that RCM did not treat the securities in the accounts as property of Plaintiffs, but instead, as "its own property that could be sold to finance the business activities" of Refco. (VR Compl. ¶¶ 157-59; CM Compl. ¶¶ 125-27.) Plaintiffs also attempt to allege deception through representations made by certain Refco representatives – but not Sexton or Murphy. (See, e.g., VR Compl. ¶¶ 84-86; CM Complaint ¶¶ 64, 70.)

**The Alleged "RGHI Scheme"**

The VR Complaint alleges that defendants Bennett, Grant, Maggio and Trosten (the "Bennett Co-Conspirators") – but not Sexton or Murphy – engaged in a separate scheme, the so-called "RGHI Scheme," designed to falsely improve the appearance of Refco's financial condition and to conceal losses suffered by the company in the late 1990s as a result of customer and proprietary trading losses. (See VR Compl. ¶¶ 30, 126.) The VR Complaint alleges that the Bennett Co-Conspirators improperly recorded the losses as an amount due from defendant RGHI (the "RGHI Receivable"), and that, in order to disguise the magnitude and related-party nature of the RGHI Receivable, the Bennett Co-Conspirators engaged in "Round-Trip Loans" ("RTLs") at the end of quarterly and yearly reporting periods. (Id. ¶¶ 30-31, 127, 136, 144.) The RTLs were allegedly sham transactions whereby RCM "loaned" money to a third party, which in turn "loaned" money to RGHI. (Id. ¶¶ 136-140.) RGHI would use this money to pay down the RGHI Receivable so that Refco's books showed only a group of smaller, unrelated third party receivables. (Id. ¶ 137.) After the start of each new reporting period, the loans were "unwound," and the RGHI Receivable was restored to its full value. (Id. ¶ 141.)

The VR Complaint further alleges that, as a result of the RGHI Scheme perpetrated by the Bennett Co-Conspirators, the Refco consolidated financial statements and RCM financial

8

statements for the fiscal years 2001 to 2005 contained untrue statements or omissions of material fact. (VR Compl. ¶ 183.) For example, the VR Complaint alleges that RCM's financial statements failed to disclose RCM's involvement in the RTLs and were inflated because of RGHI's large, uncollectible debt to RCM. (Id. ¶¶ 185-90.) It also alleges that RCM's financial statements failed to disclose the conversion of customer securities and the amount and nature of RCM's intercompany "loans" to other Refco subsidiaries. (Id. ¶¶ 191-207.)

According to the VR Complaint, prior to opening its account at RCM in 2001, VR reviewed the audited financial statements of Refco and RCM and, in determining and continuing to entrust its securities for safekeeping with RCM, relied on Refco's and RCM's audited financial statements for the years 2001-2005. (VR Compl. ¶¶ 32, 180.)

## The IPO and LBO

From 1999 until the LBO in 2004, RGL (the principal Refco holding company before the LBO) was 90 percent owned by RGHI, which in turn was owned by Bennett and Grant. (See VR Compl. ¶¶ 58, 62.) In August 2004, THL and its related entities and affiliates purchased a controlling 57 percent equity stake in Refco for approximately $507 million. (VR Compl. ¶¶ 16, 71, CM Compl. ¶¶ 15, 53.) In August 2005, Refco completed its IPO. (VR Compl. ¶¶ 400, 489; CM Compl. ¶¶ 294, 308.)

## The October 10, 2005 Disclosure and Refco Bankruptcy Filing

On October 10, 2005, Refco announced that it had discovered a $430 million receivable owed to Refco by RGHI. (VR Compl. ¶ 236; CM Compl. ¶ 155.) Due to this "undisclosed affiliate transaction," Refco announced that its financial statements for fiscal years 2002 to 2005 could no longer be relied upon. (VR Compl. ¶ 236; CM Compl. ¶ 155.) Plaintiffs allege that, in response to those disclosures, many RCM customers sought to withdraw securities and funds that

9

they had entrusted to RCM. (VR Compl. ¶ 237; CM Compl. ¶ 156.) However, on October 13, Refco announced that it was imposing a 15-day moratorium on all RCM trading activities. (VR Compl. ¶ 237; CM Compl. ¶ 156.) On October 17, 2005, Refco and certain of its subsidiaries, including RCM, filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code in the Southern District of New York. (VR Compl. ¶ 238; CM Compl. ¶ 157.)

**Allegations as to Sexton and Murphy**

Murphy and Sexton are two of the eight "Officer Defendants." (VR Compl. ¶ 60; CM Compl. ¶ 43.)[7] Murphy joined Refco in 1999 as an Executive Vice President responsible for global marketing. (VR Compl. ¶ 64; CM Compl. ¶ 46.) Murphy also served as President of the Refco futures subsidiaries Refco LLC and Refco Global Futures LLC. (VR Compl. ¶ 64; CM Compl. ¶ 46.) Sexton joined Refco in 1999, and served as Executive Vice President and Chief Operating Officer ("COO") of Refco LLC from July 2001 to August 2004. (VR Compl. ¶ 65; CM Compl. ¶ 47.) In August 2004, Sexton became Executive Vice President and Chief Operating Officer of RGL. (VR Compl. ¶ 65; CM Compl. ¶ 47.)

Plaintiffs do not allege that Murphy or Sexton was an officer of RCM or RCC (the "treasury" subsidiary) or had any involvement with either entity. Moreover, the Complaints contain no specific allegations that Murphy or Sexton took any actions that were in any way related to the RCM Securities Scheme. Plaintiffs do not allege that Murphy or Sexton was involved in the creation or dissemination of the Customer Agreements or the customer account statements, or that they were responsible for any misstatements allegedly made to Plaintiffs or

---

[7] In the CM Action there are seven "Officer Defendants," as Grant is not named as a defendant.

other RCM customers.  Nor does the VR Complaint allege that Murphy or Sexton participated in

any way in the RGHI Scheme.

Apart from wholly conclusory allegations pled against "Refco Senior Management" or

the "Officer Defendants" generally, the only even plausibly relevant allegations against Murphy

and Sexton are that they:  (1) were officers of Refco LLC, a Refco subsidiary that received an

unspecified amount of intercompany loans that purportedly originated from RCM customer

assets;[8] (2) were officers of RGL (in Sexton's case beginning only in August 2004); and (3)

received certain pecuniary benefits as a result of the LBO and IPO of Refco shares.

Both Complaints assert three claims against Murphy and Sexton.  Count I, Plaintiffs'

claim under § 10(b) and Rule 10b-5 of the Exchange Act, is based upon Defendants' alleged

participation in the RCM Securities Scheme.  Count II alleges a claim under § 10(b) and Rule

10b-16 of the Exchange Act based upon RCM's purported failure to provide certain written

disclosures to its customers as required pursuant to that Rule.  Count III alleges "control person"

liability pursuant to § 20(a) of the Exchange Act.

For the reasons set forth below, all of Plaintiffs' claims against Murphy and Sexton

should be dismissed with prejudice.

## ARGUMENT

In order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint

must "amplify a claim with some factual allegations . . . to render the claim plausible."  Iqbal v.

Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).  "Under this standard, a

complaint may be dismissed where it fails to plead 'enough facts to state a claim to relief that is

---

[8]  There are no allegations as to any wrongdoing relating to Refco LLC, the Refco business that
Murphy and Sexton ran, or as to any inaccuracies in the profits it earned and reported.

11

plausible on its face.'" In re RCM Brokerage Customer Sec. Litig., 06 Civ. 643, 2007 WL

2694469, at *5 (S.D.N.Y. Sept. 13, 2007) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct.

1955, 1974 (2007)).  As a result, "'more than labels and conclusions'" are required to satisfy

"'[a] plaintiff's obligation to provide the grounds of his entitlement to relief,'" and a "'formulaic

recitation of the elements of a cause of action[] will not do.'"  Id. (quoting Twombly, 127 S. Ct.

at 1965).  "Where a plaintiff 'ha[s] not nudged [its] claims across the line from conceivable to

plausible, [its] complaint must be dismissed.'"  Id. (quoting Twombly, 127 S. Ct. at 1974).

### POINT I

### COUNT I FAILS TO STATE A CLAIM AGAINST
### SEXTON AND MURPHY UNDER § 10(b) OF THE EXCHANGE ACT

Count I, alleging violations of § 10(b) and Rule 10b-5 of the Exchange Act, fails to state a

claim against Sexton or Murphy for three fundamental reasons.  First, for the reasons set forth by

the THL Defendants in Point I of the Memorandum of Law In Support of The THL Defendants'

Motion to Dismiss (which is incorporated herein), Count I does not state a claim against any

Defendant.  Second, as specific to Murphy or Sexton, Count I fails to allege any deceptive

conduct or statement by them that could support a § 10(b) claim.  Third, Count I fails to plead

with particularity any facts giving rise to a "strong inference" that either acted with scienter as

required by the PSLRA.

**A.**    **Count I Should Be Dismissed As Against Sexton and Murphy**
       **Because They Are Not Alleged To Have Committed a Deceptive Act**

Count I should be dismissed as against Sexton and Murphy because Plaintiffs have failed

to plead any specific misstatement or other deceptive conduct by them as required to assert a

claim under § 10(b) and Rule 10b-5 of the Exchange Act.  Section 10(b) makes it unlawful to

"use or employ, in connection with the purchase or sale of any security . . . any manipulative or

deceptive device in contravention of such rules and regulations as the [SEC] may proscribe."

Rule 10b-5 prohibits three types of conduct:  (a) employing any device, scheme or artifice to

defraud; (b) making any untrue statements of material fact or omitting to state a material fact

necessary to make statements made, in light of the circumstances under which they were made,

not misleading; or (c) engaging in any act, practice, or course of business which operates as a

fraud or deceit upon any person.  17 C.F.R. § 240.10b-5.

 As this Court has recognized, the PSLRA and Fed. R. Civ. P. 9(b) impose particularity

requirements upon complaints alleging violations of § 10(b).  See In re Refco, Inc. Sec. Litig.,

503 F. Supp. 2d 611, 640 (S.D.N.Y. 2007) (Lynch, J.).  See also Lentell v. Merrill Lynch & Co.,

396 F.3d 161, 168 (2d Cir. 2005) (describing the "strict pleading requirements in securities fraud

cases" and stating that while "any fraud must be pled with particularity[,] the rule is applied

assiduously to securities fraud").  Where there are multiple defendants, in order to comply with

Rule 9(b), the complaint must set forth with particularity each defendant's alleged deceptive or

manipulative conduct.  See Rich v. Maidstone Fin., Inc., 98 Civ. 2569, 2002 WL 31867724, at

*n.7 & 10 (S.D.N.Y. Dec. 20, 2002).  Rule 9(b) is not satisfied by a complaint in which

defendants are clumped together in vague allegations.  See In re Refco, Inc. Sec. Litig., 503 F.

Supp. 2d at 640; In re Blech Sec. Litig., 961 F. Supp. 569, 581 (S.D.N.Y. 1997).  See also

Gurfein v. Ameritrade, Inc., 411 F. Supp. 2d 416, 426 (S.D.N.Y. 2006) ("The complaint may not

rely upon blanket references to acts or omissions by all of the defendants, for each defendant . . .

is entitled to be appraised of the circumstances surrounding the fraudulent conduct with which he

individually stands charged.").

 Absent allegations that a particular defendant committed a deceptive or manipulative act,

that defendant cannot be a primary violator, and thus cannot be liable under Rule 10b-5.  See

Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 177 (1993)

("[Section 10(b)] prohibits only the making of a material misstatement (or omission) or the

commission of a manipulative act[.] . . . The proscription does not include giving aid to a person

who commits a manipulative or deceptive act."); Rich, 2002 WL 31867724, at *7 ("[Section]

10(b) reaches only primary violators, i.e., those who commit a manipulative or deceptive act . . .

and not individuals who aid and abet the violation."). "'Anything short of such conduct is merely

aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger

liability under [10(b)].'" In re Refco, Inc. Sec. Litig., 503 F. Supp. 2d at 641 (quoting Wright v.

Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998)).

Here, Count I does not properly plead either a "scheme to defraud" or a "misstatements"

claim as against Sexton or Murphy, as the Complaints fail to allege any specific deceptive act or

statement attributable to those Defendants that could even arguably support the claims against

them.  In contravention of Rule 9(b), the PSLRA, and the clear requirements of the case law in

this Circuit, Plaintiffs merely "lump" Sexton and Murphy with all other Defendants or with all

"Officer Defendants," and improperly rely on conclusory "group" allegations in an attempt to

state a claim.[9]

### 1.    Plaintiffs Fail To Allege that Sexton or Murphy Engaged in Any Conduct Prohibited Under Rule 10b-5(a) or (c)

In order to properly plead a "scheme" claim under § 10(b) and Rule 10b-5(a) or (c), a

complaint must allege, inter alia, that the defendant participated in the purported scheme through

---

[9]    As stated above, the allegations (or lack thereof) against Sexton and Murphy in the Complaints are substantially the same as the conclusory allegations asserted against them by plaintiffs in the RCM customer class action, which was dismissed as against Sexton and Murphy without leave to replead because plaintiffs did not attempt to oppose Sexton and Murphy's motions to dismiss. See In re RCM Brokerage Customer Sec. Litig., 2007 WL 2694469, at *6.

the commission of a deceptive or manipulative act. See, e.g., In re RCM Brokerage Customer Sec. Litig., 2007 WL 2694469, at *8. Plaintiffs fail to allege any participation by Sexton or Murphy in the purported scheme, much less that either committed a deceptive act.

**(a)    Plaintiffs Fail To Allege With Particularity Any Participation By Sexton or Murphy in the RCM Securities Scheme**

First, Count I should be dismissed because the Complaints set forth no particularized allegations of Sexton's or Murphy's participation in the RCM Securities Scheme. The principal claim in Count I of both Complaints is that the Defendants engaged in a fraudulent scheme through which they converted customer securities owned by Plaintiffs and other customers of RCM. (See, e.g., VR Compl. ¶¶ 3, 541, 544; CM Compl. ¶¶ 2, 110, 355, 358.). However, Bennett and Maggio are the only Officer Defendants alleged to have engaged in specific acts in furtherance of the RCM Securities Scheme. For example, Bennett is alleged to have "directly participated in and supervised the fraudulent conversion and subsequent transfer of RCM customer assets and the RGHI Scheme." (VR. Compl. ¶ 255; CM Compl. ¶ 173.) Likewise, the Complaints allege that Maggio "instigat[ed] and overs[aw] the fraudulent conversion and subsequent transfer of customer assets," and that "RSL employees who improperly sold, loaned, pledged, hypothecated or converted customer securities frequently did so on Maggio's instructions." (VR Compl. ¶ 257; CM Compl. ¶ 175.)

In contrast to the allegations against Bennett and Maggio, Plaintiffs do not identify a single act by Sexton or Murphy in furtherance of the RCM Securities Scheme. There are no specific allegations that Sexton or Murphy approved or directed the acts constituting the fraud, or that Sexton or Murphy orchestrated the RCM Securities Scheme. Rather, both Complaints rely on conclusory, non-specific allegations against all "Defendants" or "Officer Defendants." (See,

15

e.g., VR Compl. ¶¶ 28 ("Defendants' fraudulent conversion of Plaintiffs' securities"); 112 ("the

Officer Defendants had directed Refco employees to sell, or cause to be sold, RCM customers'

securities"); 121 ("Officer Defendants . . . caused customer securities to be converted

fraudulently"); CM Compl. ¶ 4 ("Refco senior management, including the Officer Defendants,

directed Refco employees to sell, or cause to be sold . . . securities . . . that had been entrusted to

RCM.").)

     Such non-specific allegations do not state a claim for violation of § 10(b) against Sexton

or Murphy.  See Gurfein, 411 F. Supp. 2d at 426-27 (complaint failed to state securities fraud

claims where it made allegations against "defendants" without specifying which defendant did

what); Rich, 2002 WL 31867724, at *8-9 & n.7 (allegations that defendant was aware of scheme

together with general allegations of fraudulent conduct by "defendants" did not satisfy

requirement that complaint set forth defendant's participation in scheme); In re Blech, 961 F.

Supp. 569, 580-81 (S.D.N.Y. 1997) (dismissing § 10(b) claim against trustee of a trust alleged to

have purchased and sold shares in furtherance of alleged market manipulation scheme, as

complaint did not set forth specific acts by trustee demonstrating his direct participation in

scheme).[10]

### (b)    Plaintiffs Fail To Allege That Sexton or Murphy Committed A Manipulative or Deceptive Act

     Even if the Court finds that Plaintiffs have alleged Sexton's and Murphy's participation

in the "RCM Securities Scheme" (which, for reasons set forth above, Plaintiffs have not),

---

[10]  As set forth above, both Complaints rely upon the testimony of Thomas Yorke, a former RCM employee. (See, e.g., VR Compl. ¶¶ 117-118; CM Compl. ¶¶ 108-09, 168.)  Yorke testified for three days in connection with a hearing in the Refco bankruptcy regarding procedures followed by RCM with respect to customers' securities. (See Sava Declr. ¶¶ 2-3 & Ex. A.)  However, at no point during Yorke's testimony is there even any mention of Sexton or Murphy.

Plaintiffs have still failed to plead that Sexton or Murphy committed a <u>deceptive</u> act, as required

to plead a claim under § 10(b). <u>See In re RCM Brokerage Customer Sec. Litig.</u>, 2007 WL

2694469, at *7 ("The point is that there must be some conduct or representation by the fraudster

that deceives the victim – that is, the defendant's conduct must create in the victim a sense that

things are otherwise than they are."); <u>In re Global Crossing, Ltd. Sec. Litig.</u>, 322 F. Supp. 2d 319,

336 (S.D.N.Y. 2004) (Lynch, J.) (requiring commission of a deceptive act for a "scheme" claim)

(citing <u>SEC v. U.S. Environmental Inc.</u>, 155 F.3d 107, 111 (2d Cir. 1998)).[11]

Merely alleging an act in furtherance of a fraudulent scheme cannot create liability.

Rather, to state a § 10(b) "scheme" claim, the defendant must have taken actions which "in and

of" themselves or "by nature" are deceptive or manipulative. <u>See In re Alstom SA Sec. Litig.</u>,

406 F. Supp. 2d 433, 476-77 (S.D.N.Y. 2005). <u>See also In re Parmalat Sec. Litig.</u>, 376 F. Supp.

472, 504 (S.D.N.Y. 2005). "When determining whether a defendant is a 'primary violator,' the

conduct of each defendant, while evaluated in its context, must be viewed alone for whether it

had a purpose and effect of creating a false appearance of fact in the furtherance of an overall

scheme to defraud." <u>Simpson v. AOL Time Warner</u>, 452 F.3d 1040, 1050 (9th Cir. 2006),

<u>vacated</u> <u>sub</u> <u>nom.</u> <u>Avis Budget Group, Inc. v. Ca. State Teacher's Retirement Sys.</u>, __ S. Ct. __,

---

[11] Here, while Plaintiffs allege that certain defendants owed a fiduciary duty to them, they do not allege that Sexton or Murphy owed any fiduciary duties to them. <u>See In re RCM Brokerage Customer Sec. Litig.</u>, 2007 WL 2694469, at *7 (requiring "some conduct or representation by the fraudster that deceives the victim" when no fiduciary duty is shown). Nor could they. As set forth above, neither Sexton nor Murphy was an officer of RCM or RSL during the period of the alleged sales of RCM customer securities. Rather, they were officers of the corporate parent of RCM and RSL, or other Refco subsidiaries. Moreover, even if Sexton and Murphy had been officers of RCM or RSL, as this Court has clearly held, officers of a corporation do not owe fiduciary duties to that corporation's customers. <u>See Am. Fin. Int'l Group-Asia, L.L.C. v. Bennett</u>, 05 Civ. 8988, 2007 WL 1732427, at *4 (S.D.N.Y. Jun. 14, 2007) (Lynch, J.).

2008 WL 169496 (2008).[12] See also In re Enron Sec., Derivative & ERISA Litig., 439 F. Supp. 2d 692, 718 n.33 (S.D. Tex. 2006).

In In re RCM Brokerage Customer Securities Litigation, this Court determined that although plaintiffs made various allegations of wrongdoing or mishandling of assets, they "failed to explain how defendants created a false impression concerning their handling of assets." 2007 WL 2694469, at *8. As a result, "[t]he complaint fail[ed] to make sufficient allegations as to deception" and was dismissed. Id. at *12. The recent Supreme Court decision in Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., 128 S. Ct. 761 (2008), framed the concept in terms of reliance. In that action, plaintiffs alleged losses after purchasing common stock in Charter Communications, Inc. ("Charter"). At issue was whether Charter's suppliers, who had agreed to arrangements that allowed Charter to mislead its auditor and issue a misleading financial statement affecting its stock price, were subject to liability under § 10(b) for their participation in the scheme, when the suppliers had no role in preparing or disseminating the financial statement. Id. at 766-67. The Court determined that because plaintiffs did not specifically rely upon statements or representations made by the suppliers when making their investment decisions, the § 10(b) private right of action did not reach those defendants. See id. at 770.

Whether framed in terms of deception or reliance, the allegations against Sexton and Murphy fail to state a § 10(b) claim. In both Complaints, the crux of Plaintiffs' claim is that

---

[12] The judgment in Simpson was vacated for reconsideration in light of Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., 128 S. Ct. 761 (2008), which, as set forth below, held that a plaintiff asserting a § 10(b) claim based upon deceptive conduct had to plead reliance upon such conduct. It is clear that the Ninth Circuit's decision was vacated not as a result of the court's requirement that each defendant committed a deceptive act, but because the Ninth Circuit had dispensed with the reliance element of a § 10(b) claim.

Defendants "perpetrated a fraudulent and deceptive scheme through which they converted for their own benefit customer securities owned by Plaintiffs and other customers of [RCM]." (VR Compl. ¶ 3.) There are two parts of the alleged scheme: (1) the alleged deception of RCM customers through the Customer Agreement, account statements and trade confirmations, as well as statements by RCM employees (collectively, the "representations") (see, e.g., VR Compl. ¶¶ 85-86, 106-110, 157-60); and (2) the selling of RCM customer securities and loaning of the proceeds of those sales to Refco entities. (See, e.g., VR Compl. ¶¶ 117, 119, 122.)

It is clear that the alleged representations – not the sale of securities and intercompany loans – constitute the acts by which Plaintiffs allegedly were deceived. (See VR Compl. ¶ 105 ("VR relied . . . upon Refco's false representations in the customer agreements with VR and the RCM-issued customer statements and trade confirmations in entrusting its securities to RCM and maintaining additional securities with RCM throughout the course of its relationship with Refco.").)[13] In fact, Plaintiffs allege that they were unaware of the sales and loan transactions, so those transactions cannot constitute the deceptive act required for liability under Rule 10b-5(a) and (c). (See VR Compl. ¶118 ("At all times, VR was unaware that its securities (and the securities of other RCM customers) were being sold without VR's authorization or consent.").)

However, there are no allegations whatsoever that Sexton or Murphy was involved in preparing or disseminating the Customer Agreement or the customer account statements, or that Sexton or Murphy made any representations to Plaintiffs. Indeed, missing from the Complaints

---

[13] With respect to the Customer Agreement, Plaintiffs allege each Plaintiff entered into a Customer Agreement with RCM and RSL and that no provision of the Customer Agreement gave RCM the right to sell customers' fully-paid securities entrusted to RCM other than in accordance with the customer's express instructions. (VR Compl. ¶¶ 106, 108.) Plaintiffs thus allege that "RCM's theft of Plaintiffs' securities contradicted the terms and conditions of the Customer Agreement and the understanding that Plaintiffs had justifiably reached concerning the manner in which their securities were being held." (VR Compl. ¶ 110.)

are allegations that Sexton or Murphy met with Plaintiffs in connection with their Customer Agreement or account statements, that any specific representations of Sexton or Murphy were reflected in the Customer Agreement or account statements, that Sexton or Murphy was involved with the content of the Customer Agreement or accounts statements, or even that Sexton or Murphy had any role whatsoever at RCM.  As in Stoneridge, Plaintiffs have failed to allege that Sexton or Murphy did anything Plaintiffs specifically relied upon when deciding to open an account or entrust securities with RCM.  See Stoneridge, 128 S. Ct. at 767-69.  In other words, Plaintiffs have failed to allege any actions by Sexton or Murphy that "had a principal purpose and effect upon creating a false appearance in fact in furtherance of a scheme to defraud."  Securities Exchange Comm'n v. Durgarian, 477 F. Supp. 2d 342, 353 (D. Mass. 2007).  See also In re Mercury Interactive Corp. Sec. Litig., C 05-3395 JF, 2007 WL 2209278, at *11-12 (N.D. Cal. Jul. 30, 2007) (dismissing § 10(b) scheme claim against officer defendants because "the Complaint contains insufficient allegations that the various defendants' contributions to the overall scheme had a deceptive purpose and effect").

### 2.    The VR Plaintiffs Fail To Allege that Sexton or Murphy Made Any Materially False Statement or Omission Under Rule 10b-5(b)[14]

To state a "material misstatement" claim under § 10(b) and Rule 10b-5(b), a plaintiff must, inter alia: "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  In re Refco, Inc. Sec. Litig., 503 F. Supp. 2d at 640-41 (quoting Stevelman v. Alias Research, Inc., 174 F.3d 79, 84 (2d Cir. 1999)).

Critically, a defendant "'must actually make a false or misleading statement in order to be

---

[14] Only the VR Complaint alleges that Defendants violated § 10(b) through misstatements or omissions; the CM Complaint does not allege a violation of Rule 10b-5(b) by any Defendant.

held liable under [§] 10(b).'" Wright v. Ernst & Young LLP, 152 F.3d at 175 (quoting Shapiro v.

Cantor, 123 F.3d 717, 720 (2d Cir. 1997)). See also In re Refco Sec. Litig., 503 F. Supp. 2d at

641 (same). The misrepresentation must also have been "attributed to that specific [defendant] at

the time of its dissemination." Wright, 152 F.3d at 175. See also In re Global Crossing, Ltd.

Sec. Litig., 02 Civ. 910, 2005 WL 1907005, at *8 (S.D.N.Y. Aug. 8, 2005) (Lynch, J.) ("The

Second Circuit has elaborated that in cases brought under Rule 10b-5(b), defendants can only be

held liable for statements that are publicly attributed to them."); In re Converium Holding AG

Sec. Litig., 04 Civ. 7897, 2006 WL 3804619, at *11 (S.D.N.Y. Dec. 28, 2006) (same).

Here, the VR Complaint alleges that "in making the decision to place securities in

customer accounts with RCM," Plaintiffs relied on "RCM's and Refco's audited financial

statements for the years 2001 to 2005." (VR Compl. ¶ 32. See also id. ¶ 180.) However,

Plaintiffs do not attribute any misstatements or omissions to Murphy or Sexton. The sole,

boilerplate allegation in this respect is that the "Officer Defendants also knowingly participated

in the issuance of false financial statements, including the false RGL financial statements for

2001-2005, the false RCM financial statements for 2001-2005, and the false 2005 10-K Annual

Report." (Id. ¶ 268.)

The VR Complaint does not allege that Sexton or Murphy had any involvement

whatsoever in preparing, editing or approving RCM's or Refco's financial statements, or Refco's

2005 10-K Annual Report.[15] Cf. In re Refco, Inc. Sec. Litig., 503 F. Supp. 2d at 642 (noting the

---

[15] There are no allegations in the Complaint that Plaintiffs relied on the Refco 2005 10-K Annual Report, so this document cannot in any event provide the basis for any Defendant's liability under § 10(b). See Simon v. Weaver, 327 F. Supp. 2d 258, 262-63 (S.D.N.Y. 2004) (dismissing § 10(b) claim because plaintiffs did not allege reliance). See also In re Van Wagoner Funds, Inc. Sec. Litig., 382 F. Supp. 2d 1173, 1187 (N.D. Cal. 2004) (noting plaintiffs "make no specific allegations that they read the annual reports or registration statements which contained statements or consents prepared by

(continued...)

complaints alleged that the officers prepared and approved the allegedly fraudulent documents). Moreover, there are no allegations that Sexton or Murphy was involved in the "creation of the alleged misstatements." Id. Plaintiffs thus fail to allege that Sexton or Murphy substantially participated in the statements, with the knowledge of investors, so that they may be deemed to have made them. See Global Crossing, 322 F. Supp. 2d at 333 (setting forth prerequisites for treating a statement as having been made by a defendant absent public attribution to that defendant).[16]

## B.    Count I Should Be Dismissed Because Plaintiffs Have Not Pled Scienter as to Murphy or Sexton

Count I of the Complaints should also be dismissed as to Murphy and Sexton because Plaintiffs have not met their heavy burden under the PSLRA of pleading scienter against them -- that is, "'an intent to deceive, manipulate or defraud.'" In re Refco Sec. Litig., 503 F. Supp. 2d at 644 (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976)).

The PSLRA requires that, "with respect to each act or omission" alleged in a § 10(b) complaint, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphases added). Recently, in Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499 (2007), the Supreme Court clarified that "[t]o qualify as 'strong' within the intendment of [the PSLRA] . . ., an

---

[15](...continued)
[defendant auditor]" in dismissing § 10(b) claim for, inter alia, failure to plead reliance with particularity).

[16] Moreover, the alleged misstatements about the financial condition of Refco were not "in connection with" Plaintiffs' purchase or sale of securities because Plaintiffs never purchased or sold the securities of RCM – or, for that matter, Refco, or any other Refco affiliate. See Levitin v. PaineWebber, Inc., 933 F. Supp. 325, 328-29 (S.D.N.Y. 1996) (dismissing Rule 10b-5 claim as nondisclosure related to contract relationship between customer and broker rather than purchase and sale of any securities), aff'd, 159 F.3d 698 (2d Cir. 1998); Bissell v. Merrill Lynch & Co., 937 F. Supp. 237, 242-43 (S.D.N.Y. 1996), aff'd, 157 F.3d 138 (2d Cir. 1998).

inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Id. at 2504-05.

Plaintiffs thus must plead particularized facts "(1) showing that the defendant had both motive and opportunity to commit the [alleged] fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." ATSI Communications, 493 F.3d at 99. Whichever approach is followed, the allegations will not meet the PSLRA's heightened pleading standard unless they create a strong inference of wrongdoing. See Tellabs, 127 S. Ct. at 2511 (although "it is true that motive can be a relevant consideration . . . the significance that can be ascribed to an allegation of motive, or lack thereof, depends on the entirety of the complaint").[17] "[O]missions and ambiguities count against inferring scienter[.]" Id.

### 1.    Plaintiffs' Generalized Motive and Opportunity Allegations Are Insufficient To Establish that Murphy or Sexton Acted with Scienter

#### (a)    Plaintiffs' Insufficient Motive Allegations

Plaintiffs have not adequately pled that Murphy or Sexton was motivated to participate in the alleged scheme. An alleged motive is only cognizable for § 10(b) pleading purposes if it is:

- "concrete and personal" to the particular defendant, In re Refco Sec. Litig., 503 F. Supp. 2d at 645, and not merely beneficial to his or her principal, see, e.g., Rombach v. Chang, 355 F.3d 164, 177 (2d Cir. 2004);[18]

- unique to that defendant, and not merely generalized to the officers of the corporation or to officers of for-profit organizations generally, see, e.g., Rombach, 355 F.3d at 177; and

- direct, and not merely speculative or attenuated, see, e.g., Glickman v. Alexander & Alexander Servs., Inc., 93 Civ. 7594, 1996 WL 88570, at *11 (S.D.N.Y. Feb.

---

[17] See also ATSI Communications, 493 F.3d at 99; In re Salomon Analyst Winstar Litig., 02 Civ. 6171, 2006 WL 510526, at *7 (S.D.N.Y. Feb. 28, 2006) (Lynch, J.).

[18] See also In re Citigroup, Inc. Sec. Litig., 330 F. Supp. 2d 367, 380-81 (S.D.N.Y. 2004); Jaufman v. Levine, 1:06-CV-1295, 2007 WL 2891987, *8 (S.D.N.Y. Sept. 28, 2007).

29, 1996); In re Authentidate Holding Corp. Sec. Litig., 05 Civ. 5323, 2006 WL 2034644, *6 (S.D.N.Y. July 14, 2006); In re Refco Sec. Litig., 503 F. Supp. 2d at 645-46.

Here, Plaintiffs' motive allegations consist of the assertion that:

> misappropriated RCM customer assets were used to fund Refco's otherwise financially unsustainable operations and thus project a false appearance of growth and success on the part of Refco that allowed Defendants to enrich themselves personally. The false appearance of growth and success created by the RCM Securities Scheme and the RGHI Scheme enabled the Officer Defendants successfully to complete Refco's Bond Offering in July 2004. It also enabled the Officer Defendants to complete the THL LBO in August 2004, and enabled the Officer Defendants and the THL Defendants successfully to complete Refco's IPO in August 2005. The Officer Defendants and the THL Defendants reaped tremendous monetary benefit from each of these transactions.

(VR Compl. ¶ 489; CM Compl. ¶ 308.)

To the extent Plaintiffs allege that the eight "Officer Defendants" (including Sexton and Murphy) committed fraud to perpetuate Refco's "unsustainable" operations and thereby obtain "monetary benefit," such generalized allegations are patently insufficient to survive a motion to dismiss. As the Second Circuit has explained, "a plaintiff must do more than merely charge that executives aim to prolong the benefits of the positions they hold." Shields v. Citytrust Bancorp. Inc., 25 F.3d 1124, 1130 (2d Cir. 1994). Nor may Plaintiffs rely on allegations that defendants were motivated by "(1) the desire for the corporation to appear profitable and (2) the desire to keep stock prices high to increase officer compensation." Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001). If scienter could be so readily pleaded, executives of "'virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions.'" Rombach, 355 F.3d at 177 (citation omitted).

To the extent Plaintiffs allege that Murphy and Sexton were motivated by a desire to

obtain monetary benefits in various specific corporate transactions,[19] those allegations are

likewise insufficient.  Plaintiffs must do more than merely charge that executives seek to

complete a corporate transaction such as an LBO or an IPO for monetary gain.  See Geiger v.

Solomon-Page Group, Ltd., 933 F. Supp. 1180, 1189-90 (S.D.N.Y. 1996); Melder v. Morris, 27

F.3d 1097, 1102 (5th Cir. 1994).  Indeed, far from establishing a strong inference of fraudulent

intent, it strains reason to assert that Murphy or Sexton would be motivated to commit fraud – in

a scheme alleged to have been initiated long before either became a Refco employee in 1999

(e.g., CM Compl. ¶¶ 46, 47, 80)[20] – for the alleged purpose of receiving potential benefits in

corporate transactions occurring many years later.

Under this Court's ruling in In re Refco Inc. Securities Litigation and other clear authority

in this District, such attenuated motive allegations do not suffice.  See 503 F. Supp. 2d at 645-46

("Motive . . . entails 'concrete benefits that could be realized by one or more of the false

statements and wrongful nondisclosures alleged,' and plaintiffs do not explain how these first

floods of money relate to the alleged fraud.") (citation omitted); Glickman, 1996 WL 88570, at

*11 ("It strains credibility to allege that Alexander, beginning in 1991, would . . . allow ACG to

misstate[] ACG's performance and prospects for the purpose of making a private placement of

---

[19]  Plaintiffs allege that Murphy received a $13.1 million profit-sharing payment and Sexton an
$8.1 million payment in connection with the August 2004 LBO (VR Compl. ¶ 492; CM Compl. ¶ 311);
that in advance of the August 2005 IPO, Murphy received 534,000 stock grants and Sexton 596,000 (VR
Compl. ¶¶ 493-94; CM Compl. ¶¶ 312-13); that each was allocated 701,963 restricted stock units in the
IPO vesting over a 4-year period (VR Compl. ¶ 496; CM Compl. ¶ 315); and that Murphy received
$359,311 and Sexton $426,052 as a result of the IPO underwriters' exercise of an over-allotment option
and the Refco board's subsequent decision to issue the resulting payment to the company's pre-IPO
shareholders (VR Compl. ¶ 500; CM Compl. ¶ 319).

[20]  The Yorke testimony relied upon in the Complaints makes clear that the practices of RCM
with respect to customer securities that Plaintiffs claim to be fraudulent date back to at least 1997. See
Sava Declr., Ex. A at pp. 80-81.

preferred stock and an otherwise unremarkable acquisition in 1993. . . . The connection between

the alleged scheme and the motive for it is speculative, related only by the conjectural chain that

Alexander decided two years in advance that it would make these transactions, but that it would

make them on the strength of artificially inflated stock, and that to inflate the stock, it would

adopt the financial statements of a subsidiary, themselves skewed[.]").[21]

### (b)    Plaintiffs' Insufficient Opportunity Allegations

In addition to insufficiently alleging motive, Plaintiffs fail to plead that Murphy or Sexton

had the requisite opportunity to commit fraud. A showing of opportunity requires a "clear"

demonstration of "the means and likely prospect of achieving concrete benefits by the means

alleged." Powers v. British Vita, P.L.C., 57 F.3d 176, 184-85 (2d Cir. 1995); Shields, 25 F.3d at

1130. Conclusory allegations do not suffice. See Steed Fin. LDC v. Laser Advisors, Inc., 258 F.

Supp. 2d 272, 279 (S.D.N.Y. 2003).

Unlike the allegation in In re Refco, Inc. Securities Litigation that particular defendants

prepared and approved the allegedly false registration statements at issue, 503 F. Supp. 2d at 647,

the pleadings in these cases do not explain how Murphy or Sexton had a clear opportunity to

allegedly convert Plaintiffs' securities. All they allege is that Murphy was an executive vice

president of RGL responsible for marketing and the "President of various Refco subsidiaries,

including Refco LLC and Refco Global Futures LLC, that were beneficiaries of the [allegedly]

---

[21] Tellingly, Plaintiffs' motive allegations are even less cogent than those rejected in cases decided during the less exacting pre-Tellabs regime. See, e.g., Rombach, 355 F.3d at 177 (allegations that CEO, COO and CFO omitted to state material information to complete private offering, thereby retiring debt and increasing their personal compensation, insufficient to plead motive); Shields, 25 F.3d at 1130 (allegations that CEO and COO omitted to state material information to maintain stock price and prolong executive benefits insufficient to plead motive); Geiger, 933 F. Supp. at 1189-90 (allegations that registration statement signatories omitted to state material information to inflate IPO stock price and make their existing shares more valuable insufficient to plead motive).

fraudulent conversion of RCM customer assets" (VR Compl. ¶ 64; CM Compl. ¶ 46) and that

Sexton was the chief operating officer of RGL from August 2004 "and was responsible for

information technology, operations, accounting and finance, credit, margins, and risk control for

Refco's futures businesses [and, before that,] Executive Vice President and COO of Refco LLC,

an RGL [futures] subsidiary that received illegal transfers of RCM customer assets[.]" (VR

Compl. ¶ 65; CM Compl. ¶ 47.)

Plaintiffs' allegations do not demonstrate that Murphy or Sexton was "well positioned" to

carry out the alleged conversion of brokerage assets at RCM, an entity with which neither is

alleged to have had an identified role, Powers, 57 F.3d at 185 – much less the means they

allegedly used to do so. See, e.g., Steed Fin., 258 F. Supp. 2d at 279 (dismissing as insufficient

"motive and opportunity" allegations that hedge fund sponsors had the "means" to misprice fund

assets due simply to their allegedly "pervasive control and domination of the Funds"). Plaintiffs'

"motive and opportunity" allegations are deficient on their face and should be rejected.

### 2. Plaintiffs Have Not Pled Strong Circumstantial Evidence that Murphy or Sexton Consciously Misbehaved or Was Reckless

"'Where motive is not apparent, it is still possible to plead scienter by identifying

circumstances indicating conscious behavior by the defendant, though the strength of the

circumstantial allegations must be correspondingly greater.'" Kalnit, 264 F.3d at 142 (internal

citation omitted). To survive dismissal under a "conscious misbehavior" theory, a plaintiff must

"'at the least'" show that a defendant engaged in "reckless conduct . . . 'which is highly

unreasonable and which represents an extreme departure from the standards of ordinary care to

the extent that the danger was either known to the defendant or so obvious that the defendant

must have been aware of it.'" Id. Such allegations must be specific, see Steed Fin., 258 F. Supp.

27

2d at 280, and "at least as compelling as any opposing inference of nonfraudulent intent."

Tellabs, 127 S. Ct. at 2504-05.

As in the Refco Securities litigation, "[a]side from defendants' role in the corporation,[22]

the complaint's allegations of recklessness focus primarily on the allegedly fraudulent

transactions themselves, in particular, their size . . . and . . . lack of business purpose." In re

Refco Sec. Litig., 503 F. Supp. 2d at 648 (rejecting such allegations against Murphy and Sexton).

Specifically here, Plaintiffs allege that:

> The fraudulent scheme perpetrated on the RCM customers was so
> fundamental to the operation and financing of Refco that it had to have been
> apparent to each Defendant. The sheer magnitude and size of the transfers
> raise a very strong inference that the Defendants participated in, and knew of,
> the fraudulent scheme alleged herein. . . . [G]iven the size of the funds
> generated for Refco through the fraudulent conversion of customer securities,
> each of the Defendants was well aware that RCM customer funds were not
> being protected and segregated in accordance with the relevant state law and
> federal regulatory requirements.  While Refco Board papers in the relevant
> period monitored segregation and net capital requirements for other Refco
> entities, those same Refco Board papers made clear that no such segregation
> requirements were observed in relation to RCM.  Refco management also
> kept careful track of the intercompany transactions and of the customer assets
> that were held at RCM at any given time.  Refco's treasury operations were
> managed by the treasury department of another Refco entity. Regular reports
> were generated for Refco management showing the amount of customer
> assets that could be fraudulently converted and used to sustain Refco's
> business operations and acquisitions. Defendants had access to these reports
> during the relevant period.  On information and belief, it was by examining
> reports such as these that Refco management, including the THL Defendants,
> ascertained that Refco was experiencing severe liquidity problems and thus
> decided to impose a moratorium on RCM customer withdrawals in October
> 2005.  (VR Compl. ¶¶ 247-48; CM Compl. ¶¶ 165-66.)

---

[22]  As set forth above, Plaintiffs do not allege that Murphy or Sexton had any role or position
with RCM, but rely instead on allegations as to their "high level" positions within Refco. (VR Compl. ¶¶
64-65, 256, 258; CM Compl. ¶¶ 46-47, 174, 176.) "Generalized allegations about [defendant's] role . . .
are not a substitute for the particularized pleading required by law." In re Interpublic Sec. Litig., 02 Civ.
6527, 2003 WL 21250682, at *14 (S.D.N.Y. May 29, 2003). See also In re Citigroup, Inc. Sec. Litig.,
330 F. Supp. 2d 367, 382 (S.D.N.Y. 2004) ("[CFO's] position as an officer alone . . . is insufficient to
support an inference of scienter.").

These allegations fail to raise a strong inference that Murphy or Sexton acted with fraudulent intent for at least three reasons. First, Plaintiffs' indiscriminate "lumping" of defendants is impermissible under the PSLRA and Fed. R. Civ. P. 9(b). See Apace Communications, Ltd. v. Burke, 522 F. Supp. 2d 509, 517 (W.D.N.Y. 2007); Liberty Mut. Ins. Co. v. Wawa Tours, Inc., CV-07-0880, 2007 WL 2743500, *7 (E.D.N.Y. 2007) (rejecting scienter allegations that "fail[ed] to distinguish between defendants").[23] As one example of Plaintiffs' impermissible grouping, neither Murphy nor Sexton was a Refco board member, and the allegations relating to information provided to the Board could have no application to them.

Second, Plaintiffs have failed, as required to state a potentially viable claim, to set out "facts regarding how and when defendants received [the] information which they allegedly recklessly ignored." Steed Fin., 258 F. Supp. 2d at 280 (citing Ross v. A.H. Robins Co., 607 F.2d 545, 558-59 (2d Cir. 1979)). Merely alleging as Plaintiffs do that defendants had "access . . . to reports" is insufficient. See Kinsey v. Cendant Corp., 04 Civ. 0582, 2005 WL 1907678, at *5 (S.D.N.Y. Aug. 10, 2005); In re AOL Time Warner, 381 F. Supp. 2d at 224. As this Court explained in the context of similar allegations in the Refco Securities litigation that Murphy and Sexton, as part of Refco management, had access to information allegedly disclosing huge financial flows from "round trip" loans made through Refco subsidiaries, "Plaintiffs never explain . . . what business Murphy, Refco's vice president for global marketing, would have had reviewing the [alleged] books" or why Sexton would have "had any involvement whatsoever in the operations" of the implicated subsidiaries. 503 F. Supp. 2d at 650.[24]

---

[23] As this Court has confirmed, the "group pleading doctrine 'has no effect on the PSLRA's scienter requirement.'" In re Refco Sec. Litig., 503 F. Supp. 2d at 645 (citation omitted).

[24] The absence of any particularized allegations regarding information received by Murphy or
(continued...)

Third, even if the Court did credit Plaintiffs' conclusory suggestion that Murphy or

Sexton somehow received reports showing intercompany transactions and the amount of

customer assets allegedly held by RCM, Plaintiffs' allegations fail to explain how that data

would have alerted them to the alleged wrongdoing.  Although Plaintiffs assert that the use of

customer deposits violated RCM's legal obligations and customer agreements, they do not plead

any facts demonstrating that parent company officers and non-lawyers Murphy and Sexton

should have known that any laws or the terms of any agreements were being violated or that

RCM customers were being deceived.  See In re Citigroup, 330 F. Supp. 2d at 381 ("the

Complaint is devoid of facts establishing that Weill knew such transactions to be fraudulent").

To the contrary, Plaintiffs concede, as they must, that RCM "claimed it was not" subject

to regulation.  (VR Compl. ¶ 22; CM Compl. ¶ 21.)  Thus, the reports' alleged implication that

customer deposits were not being segregated by the unregulated entity, but rather were the

subject of intercompany loans to other Refco businesses, would not have raised any red flags.

See In re RCM Brokerage Customer Sec. Litig., 2007 WL 2694469, at *9 (finding similar

allegations insufficient to demonstrate deception, where RCM held itself out as unregulated and

not subject to net capital and segregation requirements).

As explained in Tellabs, to establish the requisite "strong inference" of wrongdoing, the

proffered inference must be "at least as compelling as any opposing inference of nonfraudulent

intent."  127 S. Ct. at 2504-06.  Here, even if there were adequate allegations that Murphy and

Sexton were aware that RCM customer deposits were being lent to other Refco entities (and

---

[24](...continued)
Sexton is telling, given that Plaintiffs' counsel, which also represents the Trustee of the Refco Litigation
Trust and formerly represented the Refco Creditors' Committee, has had full access to Refco's files, as is
acknowledged in the Complaints.  (See VR Compl. ¶ 1(c); CM Compl. ¶ 1(c).)

there are not), such allegations would not suffice because there is nothing inherently wrongful about intercompany loans, which serve a self-evident, valid business purpose. See In re RCM Brokerage Customer Sec. Litig., 2007 WL 2694469, at *9-10. Indeed, Murphy and Sexton would have had no reason to suspect that any such intercompany loans were wrongful unless they knew that the recipient entities were unwilling or unable to pay. There is no suggestion in the Complaints, however, that Murphy or Sexton knew prior to October 2005 that the Refco subsidiaries to which RCM customer assets allegedly were loaned could not or would not satisfy their obligations. See id. at *11 ("Importantly, the complaint also fails to explain which of the defendants in the case, if any, knew that the affiliates were insolvent or lacked the intent to pay."). Without such allegations, there is no conceivable basis for a strong inference that Murphy or Sexton acted with an intent to deceive, manipulate or defraud.

**POINT II**

**PLAINTIFFS HAVE NOT PLED RULE 10b-16 CLAIMS
AGAINST MURPHY OR SEXTON**

Count II of each of the Complaints purports to assert claims against Murphy and Sexton, and the other "Officer Defendants," pursuant to SEC Rule 10b-16. For the reasons comprehensively set forth at Point II of Defendant Philip Silverman's Memorandum of Law in Support of His Motion to Dismiss, which we incorporate herein, Plaintiffs' claim fails because (i) there is no private right of action to enforce Rule 10b-16, (ii) by its very terms, Rule 10b-16 does not apply to Murphy or Sexton, neither of whom is alleged to be a "broker or dealer" engaged in extending credit to Plaintiffs, and (iii) the claims are in any event untimely and otherwise fail to satisfy the requirements for §10(b) claims.

31

**POINT III**

**PLAINTIFFS HAVE NOT PLED SECTION 20(a)**
**CONTROL PERSON CLAIMS AGAINST MURPHY OR SEXTON**

Count III of each of the Complaints purports to assert a generalized § 20(a) control person

claim against each of the individual defendants.  To state a claim under § 20(a), a plaintiff must

plead (i) a primary violation of the 1934 Act, (ii) control by the defendant of the primary violator

and (iii) "culpable participation 'in some meaningful sense' . . . in the [alleged] fraud." In re

Global Crossing, Ltd. Sec. Litig., 2005 WL 1907005, at *11 (citation omitted).  Count III should

be dismissed as to Murphy and Sexton because the Complaints fail to establish a primary

violation,[25] contain no plausible grounds for inferring that Murphy or Sexton controlled the

alleged primary violator and fail as required by the PSLRA to plead facts creating a strong

inference that they culpably participated in any alleged fraud.

 A. **Plaintiffs' Conclusory "Control" Allegations Are**
   **Insufficient As Against Murphy and Sexton**

To plead the requisite control, a complaint must demonstrate that each named defendant

possessed:

> "in fact, rather than in theory, the ability to direct the actions of the controlled
> person."  In other words, plaintiffs must show both that the defendant
> "possessed the power to direct or cause the direction of the management and
> policies of a person, . . ." and that the defendant had "actual control over the
> transaction in question."

In re Global Crossing, 2005 WL 1907005, at *12 (citations omitted) (emphasis added).

The purpose of § 20(a) is to prevent persons or entities from evading liability by "using

---

[25] Both Complaints attempt to satisfy the first element of a § 20(a) claim, a primary violation of
the Exchange Act, by alleging that RCM and "Refco" violated §10(b) and Rules 10b-5 and 10b-16 as
alleged in Counts I and II of each Complaint.  (VR Compl. ¶ 559; CM Compl. ¶ 371.)  For the reasons set
forth in the motion to dismiss filed by the THL Defendants and in Points I and II above, Plaintiffs are
unable to establish any primary violation, mandating dismissal of the control person claims.

32

'dummies' to do the things that they [a]re forbidden to do by the securities laws." In re Flag
Telecom Holdings, Ltd. Sec. Litig., 352 F. Supp. 2d 429, 459 (S.D.N.Y. 2005). Accordingly,
determination of § 20(a) responsibility "'requires an individualized determination of a
defendant's control of the primary violator as well as a defendant's particular culpability.'" In re
Global Crossing, 2005 WL 1907005, at *12 (internal citation omitted); see also In re Blech Sec.
Litig., 961 F. Supp. at 580. The "[a]llegations of control . . . must be substantial." In re Flag
Telecom Hldgs. Ltd. Sec. Litig., 308 F. Supp. 2d 249, 274 (S.D.N.Y. 2004). "Conclusory
allegations of control are insufficient as a matter of law." In re Global Crossing, 2005 WL
1907005, at *12. See also Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87,
102 (2d Cir. 2001).

Here, while Plaintiffs specifically plead that Bennett and Maggio directed RCM and RSL
employees to sell securities owned by Plaintiffs and other customers (VR Compl. ¶¶ 117, 119;
CM Compl. ¶¶ 108, 110), they do not plead any "plausible ground[]," Twombly, 127 S. Ct. at
1965, for inferring that Murphy or Sexton controlled those entities – or, more particularly, that
they controlled transactions at those entities involving the alleged "conversion" of Plaintiffs'
assets (or the alleged extension of credit to Plaintiffs without proper disclosures).

Indeed, the "control" sections of the Complaints (VR Compl. ¶¶ 504-515; CM Compl. ¶¶
323-329) mention Murphy and Sexton only in passing, noting simply that each held "executive"
positions with "Refco" and "were subject to non-compete agreements with Refco in the event of
their departure." (VR Compl. ¶¶ 508-509; CM Compl. ¶¶ 327-28.) Those allegations are
insufficient to state a claim. "Because 'the power to direct the management and policies of a
person must be a real, de facto power and not just de jure[,] officer or director status alone does
not constitute control.'" In re Global Crossing, 2005 WL 1907005, at *12 (internal citation

omitted). <u>Accord</u> <u>In re Blech Sec. Litig.</u>, 961 F. Supp. at 587 (the potential "exercise of influence is not 'actual control'").

Entirely absent from the Complaints are allegations that Murphy or Sexton had or exercised actual control over the transactions in question.[26] This omission warrants dismissal of the control person claims. <u>See</u> <u>Wallace v. Buttar</u>, 239 F. Supp. 2d 388, 396 (S.D.N.Y. 2003) (rejecting § 20(a) liability against company president where there was no showing that he possessed control over transaction in question), <u>rev'd on other grounds</u>, 378 F.3d 182 (2d Cir. 2004); <u>Rubinstein v. Skyteller, Inc.</u>, 48 F. Supp. 2d 315, 323 (S.D.N.Y. 1999) (lack of specific facts suggesting control over stock misappropriation compelled dismissal of claim against acting treasurer); <u>Robbins v. Hometown Buffet, Inc.</u>, No. 94-1655, 1995 WL 908194, at *9 (S.D. Cal. Mar. 16, 1995) (dismissing claim for failing to "provide specific allegations of acts indicating control"); <u>Katz v. David W. Katz & Co.</u>, 82 Civ. 6383, 1984 WL 2385, at *7 (S.D.N.Y. Feb. 14, 1984) (alleged control person must "possess[] actual control over the transactions in question").

Nor have Plaintiffs pled that Murphy or Sexton was involved in the day-to-day operations of RCM, the entity at which the alleged conversion of customer assets occurred.[27] <u>See</u> <u>In re</u>

---

[26] This fact distinguishes Plaintiffs' Complaints from the control person claims asserted by the shareholder plaintiffs in <u>In re Refco, Inc. Securities Litigation</u>. There, Murphy and Sexton were alleged to have prepared and approved an allegedly misleading IPO registration statement underlying plaintiffs' claims. <u>See</u> 503 F. Supp. 2d at 639. Here, neither Murphy nor Sexton is alleged to have personally performed any act indicating control over the transactions in question.

[27] Even had the Complaints alleged that Murphy and Sexton were officers of the alleged primary wrongdoer, that would be insufficient to establish "control" for the purposes of § 20(a). <u>See, e.g.</u>, <u>In re Global Crossing</u>, 2005 WL 1907005, at *12; <u>Rubinstein</u>, 48 F. Supp. 2d at 323 (dismissing control person claim against acting treasurer due, <u>inter alia</u>, to complaint's failure to allege how defendant controlled wrongdoer or transaction). Where, as here, defendants are not alleged to be officers of the primary wrongdoer itself, but of other related companies, there is even less grounds for inferring control. <u>See</u> <u>Robbins</u>, 1995 WL 908194, at *9 (dismissing control person claim against officers of major shareholder, even though they also were directors of primary wrongdoer); <u>Copland v. Grumet</u>, 88 F. Supp. 2d 326, 335 (D.N.J. 1999) (rejecting claim that officers of subsidiary whose numbers were

(continued...)

Global Crossing, 2005 WL 1907005, at *13 (dismissing claim against parties with power to participate in major corporate decisions due to lack of facts indicating ability to control daily management); Converse, Inc. v. Norwood Venture Corp., 96 Civ. 3745, 1997 WL 742534, at *4 (S.D.N.Y. Dec. 1, 1997) (dismissing complaint that failed to allege that defendant "was involved in the day to day operations" of the primary wrongdoer). Indeed, Plaintiffs have not suggested any logical reason whatsoever why Murphy or Sexton, officers of the Refco parent company and the regulated futures subsidiaries, would have had any role whatsoever in – much less control over – the alleged mismanagement of Plaintiffs' brokerage accounts at the unregulated RCM business.

**B.    Plaintiffs Fail To Plead that Murphy or Sexton
       Culpably Participated in the Alleged Fraud**

In addition to failing to allege that Sexton or Murphy controlled a primary violator, Plaintiffs' § 20(a) claims fail to allege "culpable participation 'in some meaningful sense' by [them] in the fraud." In Re Refco Sec. Litig., 503 F. Supp. 2d at 660.

Culpable participation must be pled with the heightened particularity required by the PSLRA. Id. at 661. Plaintiffs must therefore "plead with particularity facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct." Id. See also In re Sotheby's Holdings, Inc., 2000 WL 1234601, at *8 (S.D.N.Y. Aug. 31, 2000) (dismissing § 20(a) claim where plaintiffs failed to allege scienter for § 10(b) purposes). As set forth at Point I.B above, Plaintiffs fail to adequately plead that Sexton or Murphy acted with scienter and therefore fail to state a § 20(a) claim against either of them.

---

[27](...continued)
misreported in parent's financial statements were "control persons").

35

In addition, as set forth at Point I.A, the Complaints contain no particularized facts of any participation by Sexton or Murphy in the alleged RCM Securities Scheme. See Point I.A, supra, pp. 15-16. Likewise, neither Sexton nor Murphy is alleged to have participated in the RGHI Scheme, and neither is alleged to have made any materially false statement or ommission. See Point I.A, supra, pp. 17-20. For these reasons, too, Count III against Sexton and Murphy should be dismissed. See In re Refco, Inc. Sec. Litig., 503 F. Supp. 2d at 663 (stating that a "claim under § 20(a) requires culpable participation," and dismissing § 20(a) claim against defendant Trosten in connection with the Bond Registration Statement because Trosten did not himself make the misstatements) (emphasis in original).

## CONCLUSION

For the foregoing reasons, defendants Murphy and Sexton respectfully request that the Court dismiss Plaintiffs' Complaints against them in their entirety with prejudice.

Dated: February 21, 2008
New York, New York

FRIEDMAN & WITTENSTEIN
A Professional Corporation

By: _____ /s/   Ivan O. Kline _____
     Stuart I. Friedman (SF 9186)
     Ivan O. Kline (IK 9591)
     Elizabeth Meacham (EM 0890)

600 Lexington Avenue
New York, NY 101022
(212) 750-8700

*Attorneys for Defendant William M. Sexton*

SHAPIRO FORMAN ALLEN & SAVA LLP

By: _____ /s/   Matthew J. Sava _____
     Matthew J. Sava (MS 9231)
     Yoram J. Miller (YM 4207)
     Jason Vigna (JV 8965)

380 Madison Avenue
New York, NY 10017
(212) 972-4900

*Attorneys for Defendant Joseph J. Murphy*