UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

VR GLOBAL PARTNERS, L.P. PATON HOLDINGS  :
LTD., VR CAPITAL GROUP LTD., AND VR       :   No. 07 CIV 8686 (GEL)
ARGENTINA RECOVERY FUND, LTD.,          :

                          Plaintiffs,    :   ELECTRONICALLY FILED

                                   :

          - against -           :

PHILIP R. BENNETT, ET AL.,           :

                               :

                       Defendants.   :

-------------------------------------------------------------------X

                               :

CAPITAL MANAGEMENT SELECT FUND LTD.,  :
INVESTMENT & DEVELOPMENT FINANCE    :   No. 07 Civ. 8688 (GEL)
CORPORATION, IDC FINANCIAL S.A.,        :

                               :

                      Plaintiffs,    :

          - against –          :

PHILIP R. BENNETT, ET AL.,           :

                       Defendants.   :

-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## PHILIP SILVERMAN'S MOTIONS TO DISMISS THE COMPLAINTS

HELLER EHRMAN LLP
Lawrence J. Zweifach (LZ-8641)
lawrence.zweifach@hellerehrman.com
Richard Cashman (RC-4769)
richard.cashman@hellerehrman.com
Eric Creizman (EC-7684)
eric.creizman@hellerehrman.com
Times Square Tower
7 Times Square
New York, New York  10036-6524
Telephone:  (212) 832-8300
Facsimile:  (212) 763-7600

*Attorneys for Defendant Philip Silverman*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ............................................................................................................1

ARGUMENT ...................................................................................................................6

I.   PLAINTIFFS' SECTION 10(b) CLAIM SHOULD BE DISMISSED AS
     AGAINST MR. SILVERMAN ...............................................................................6

     A.   Plaintiffs Have Not Pled Their Section 10(b) Claim With
          Particularity As To Mr. Silverman...........................................................7

          1.   The RCM Securities Scheme. ..................................................8

          2.   The RGHI Securities Scheme. ...............................................11

     B.   Plaintiffs Also Have Not Alleged Particularized Facts Raising A
          Strong Inference Of Scienter With Respect To Mr. Silverman ...........12

          1.   Plaintiffs do not even mention Mr. Silverman once in their
               motive and opportunity allegations...........................................13

          2.   Plaintiffs have not alleged any facts that would constitute
               strong circumstantial evidence of conscious misbehavior or
               recklessness...............................................................................15

          3.   "Group pleading" is an impermissible means of pleading
               scienter. .....................................................................................16

II.  PLAINTIFFS' CLAIM UNDER SEC RULE 10b-16 SHOULD BE
     DISMISSED .........................................................................................................17

     A.   There Is No Implied Private Right Of Action Under Rule 10b-16......................18

          1.   The Supreme Court's decisions in *Sandoval* and *Stoneridge*
               and recent Second Circuit decisions preclude the implication
               of a private right of action under Rule 10b-16..........................18

          2.   Plaintiffs cannot assume that an implied right of action exists
               under Rule 10b-16 because there is a recognized private right
               of action for violations of Rule 10b-5.......................................21

     B.   The Rule 10b-16 Claim Should Be Dismissed Even If The Rule
          Creates An Implied Right Of Action ....................................................23

        1.      Mr. Silverman is not subject to Rule 10b-16. .............................................23

        2.      The Rule 10b-16 claim is untimely............................................................25

        3.      Plaintiffs' 10b-16 claim fails because it does not meet the
                  basic requirements for any Section 10(b) claim. .......................................26

III.    PLAINTIFFS' CONTROL PERSON CLAIM AGAINST
       MR. SILVERMAN ALSO SHOULD BE DISMISSED ....................................................26

    A.    The Complaints Do Not Allege That Mr. Silverman Exercised
        "Actual Control" .............................................................................................27

    B.    Plaintiffs Also Fail To Adequately Plead Culpable Participation By
        Mr. Silverman .................................................................................................29

CONCLUSION .........................................................................................................................30

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) ............................................................................................. *passim*

*American Fin. Int'l Group-Asia, L.L.C. v. Bennett,*
    No. 05 Civ. 8988, 2007 WL 1732427 (S.D.N.Y. June 14, 2007) (Lynch, J.) .......... 3, 7, 16

*Angelastro v. Prudential-Bache Secs., Inc.,*
    764 F.2d 939 (3d Cir. 1985) ........................................................................................ 22

*Bellikoff v. Eaton Vance Corp.,*
    481 F.3d 110 (2d Cir. 2007) ............................................................................. 19, 20, 21

*Bissell v. Merrill Lynch & Co., Inc.,*
    937 F. Supp. 237 (S.D.N.Y. 1996) ..................................................................... 20, 25, 26

*Board of Governors of the Federal Reserve System v. Dimension Financial Corp.,*
    474 U.S. 361 (1986) ..................................................................................................... 25

*Boguslavsky v. Kaplan,*
    159 F.3d 715 (2d Cir. 1998) ................................................................................... 27, 30

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
    511 U.S. 164 (1994) ..................................................................................................... 22

*Chemical Bank v. Shearson Lehman Bros., Inc.,*
    91 Civ. 4915, 1992 U.S. Dist. LEXIS 10751
    (S.D.N.Y. July 21, 1992) .............................................................................................. 20

*Cortec Indus., Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2d Cir. 1991) ............................................................................................. 8

*DiVittorio v. Equidyne Extractive Indus., Inc.,*
    822 F.2d 1242 (2d Cir. 1987) ...................................................................................... 11

*Ernst & Ernst v. Hochfelder,*
    425 U.S. 185 (1976) ..................................................................................................... 12

*Establissement Tomis v. Shearson Hayden Stone, Inc.,*
    459 F. Supp. 1355 (S.D.N.Y. 1978) ............................................................................ 20

*Furer v. Paine, Webber, Jackson & Curtis, Inc.,*
    No. CV-81-4944, 1982 WL 1309 (C.D. Cal. Apr. 20, 1982) ........................................ 22

*Greenblatt v. Drexel Burnham Lambert, Inc.*,
    763 F.2d 1352 (11th Cir. 1985) ............................................................ 18, 19

*Hart v. Internet Wire, Inc.*,
    145 F. Supp. 2d 360 (S.D.N.Y. 2001) .................................................... 15, 16

*Haynes v. Anderson & Strudwick, Inc.*,
    508 F. Supp. 1303 (E.D. Va. 1981) .............................................................. 22

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995) .............................................................. 10, 29

*In re Alstom SA Sec. Litig.*,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005) .................................................... 27, 28

*In re Bayer AG Sec. Litig.*,
    No. 03 CV 1546, 2004 WL 2190357 (S.D.N.Y. Sept. 30, 2004) ...................... 17

*In re BISYS Sec. Litig.*,
    397 F. Supp. 2d 430 (S.D.N.Y. 2005) .................................................... 13, 15

*In re Blech Sec. Litig.*,
    961 F. Supp. 569 (S.D.N.Y. 1997) ........................................................... 7, 10

*In re Global Crossing, Ltd. Sec. Litig.*,
    322 F. Supp. 2d 319 (S.D.N.Y. 2004) ............................................. 7, 10, 29, 30

*In re Global Crossing, Ltd. Sec. Litig.*,
    No. 02 Civ. 910, 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005) (Lynch, J.) ............ 6, 27

*In re Initial Public Offering Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) ........................................................... 10

*In re Livent, Inc. Sec. Litig.*,
    78 F. Supp. 2d 194 (S.D.N.Y. 1999) ............................................................ 27

*In re Parmalat Sec. Litig.*,
    376 F. Supp. 2d 472 (S.D.N.Y. 2005) ....................................................... 7, 10

*In re Refco Capital Markets, Ltd. Brokerage Customers Sec. Litig.*,
    No. 06 Civ. 643, 2007 WL 2694469 (S.D.N.Y. Sept. 13, 2007) (Lynch, J.) ............. 1

*In re Refco, Inc., Sec. Litig.*,
    503 F. Supp. 2d 611 (S.D.N.Y. 2007) (Lynch, J.) ...................................... 13, 27

*In re Salomon Analyst Winstar Litig.*,
    No. 02 Civ. 6171, 2006 WL 510526 (S.D.N.Y. Feb. 28, 2006) (Lynch, J.) ............ 13

*In re Sotheby's Holdings, Inc. Sec. Litig.*,
  No. 00 Civ. 1041, 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) .............................. 16, 27

*In re Van der Moolen Holding N.V. Sec. Litig.*,
  405 F. Supp. 2d 388 (S.D.N.Y. 2005).............................................................................. 17

*In re Visual Networks, Inc. Sec. Litig.*,
  217 F. Supp. 2d 662 (D. Md. 2002) ................................................................................ 16

*In re Yukos Oil Co. Sec. Litig.*,
  04 Civ. 5243, 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) ........................................... 17

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)..................................................................................... 12, 15

*Komanoff v. Mabon, Nugent & Co.*,
  884 F. Supp. 848 (S.D.N.Y 1995)............................................................................ 20, 26

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
  501 U.S. 350 (1991)........................................................................................................ 25

*Levitin v. PaineWebber, Inc.*,
  933 F. Supp. 325 (S.D.N.Y. 1996),
  *aff'd on other grounds*, 159 F.3d 698 (2d Cir. 1998) ................................................ 20, 26

*Metzner v. D.H. Blair & Co.*,
  689 F. Supp. 262 (S.D.N.Y. 1988)................................................................................. 20

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)................................................................................... 15, 16

*Olmsted v. Pruco Life Ins. Co.*,
  283 F.3d 429 (2d Cir. 2002)................................................................... 19, 20, 21, 23

*Pani v. Empire Blue Cross Blue Shield*,
  152 F.3d 67 (2d Cir. 1998).............................................................................................. 8

*Polar Int'l Brokerage Corp. v. Reeve*,
  108 F. Supp. 2d 225 (S.D.N.Y. 2000)............................................................................ 11

*Rich v. Maidstone Fin., Inc.*,
  No. 98 Civ. 2569, 2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002)............................. 7, 27

*Roberto's Fruit Market, Inc. v. Schaffer*,
  13 F. Supp. 2d 390 (E.D.N.Y. 1998) ............................................................................... 3

*Robertson v. Dean Witter Reynolds, Inc.*,
  749 F.2d 530 (9th Cir. 1984) ......................................................................................... 22

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)...............................................................13, 15

*Seinfeld v. Gray*,
404 F.3d 645 (2d Cir. 2005)...............................................................24, 25

*Slomiak v. Bear Stearns & Co.*,
597 F. Supp. 676 (S.D.N.Y. 1984)............................................................20

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
128 S. Ct. 761 (2008)..................................................................*passim*

*Superintendent of Ins. v. Bankers Life & Cas. Co.*,
404 U.S. 6 (1971)........................................................................21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
127 S. Ct. 2499 (2007)....................................................................13

*Wanetick v. Mel's of Modesto, Inc.*,
811 F. Supp. 1402 (N.D. Cal. 1992) ........................................................28

*Winer Family Trust v. Queen*,
503 F.3d 319 (3d Cir. 2007)................................................................11

*Zerman v. Ball*,
735 F.2d 15 (2d Cir. 1984).............................................................20, 22

*Zerman v. Melton*,
No. 82 Civ. 6846, 1983 U.S. Dist. LEXIS 17809 (S.D.N.Y. Apr. 12, 1983),
*aff'd on other grounds*, 735 F.2d 751 (2d Cir. 1984),
*cert. denied*, 474 U.S. 845 (1985).........................................................20

## Statutes, Rules and Regulations

Fed. R. Civ. P. 12(b)(6).................................................................1, 8, 28

Fed. R. Civ. P. 9(b) ..................................................................*passim*

Investment Company Act of 1940, 15 U.S.C. § 80a-26(f) (2008)................................21

Investment Company Act of 1940, 15 U.S.C. § 80a-27(i) (2008)................................21

Private Securities Litigation Reform Act of 1995,
Pub. L. No. 104-67, 109 Stat. 737 (1995)...................................................20

S.E.C. Rule 10b-16, 17 C.F.R. § 240.10b-16 (2008).......................................*passim*

S.E.C. Rule 10b-5, 17 C.F.R. § 240.10b-5 (2008).....................................6, 7, 21, 22

Sarbanes-Oxley Act of 2002, 28 U.S.C. § 1658(b) (2008).....................................................25, 26

Securities Exchange Act of 1934, 15 U.S.C. § 78c(a) (2008) ......................................................25

Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (2008)................................................*passim*

Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) (2008)......................................................26

Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(b) (2008) ..........................................*passim*

Truth in Lending Act, 15 U.S.C. § 1601-1667f (2008) ........................................................22, 23

## **Other Authorities**

*Guide to Broker-Dealer Registration*,
    Division of Market Regulation,
    U.S. Securities and Exchange Commission (December 2005),
    *available at* http://www.sec.gov/divisions/marketreg/bdguide.htm#II ...........................24

Loss & Seligman, SECURITIES REGULATIONS § 13-E (3d ed. 2006).......................................22, 23

Defendant Philip Silverman submits this memorandum in support of his motions pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, and pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b), to dismiss all counts of the Complaints in *VR Global Partners, L.P. et al v. Bennett, et al.* (the "VR Complaint" or "VR Compl.") and *Capital Management Select Fund Ltd., et al. v. Bennett, et al.* (the "CM Complaint" or "CM Compl.") as against him.[1]  He also joins in those arguments for dismissal applicable to him made by the other defendants.

## **<u>INTRODUCTION</u>**

The VR and CM Complaints were filed only after this Court dismissed the earlier purported class action complaint filed on behalf of brokerage customers of Refco Capital Markets, Ltd. ("RCM").  *See In re Refco Capital Markets, Ltd. Brokerage Customers Sec. Litig.*, No. 06 Civ. 643, 2007 WL 2694469 (S.D.N.Y. Sept. 13, 2007) (Lynch, J.) (the "Class Action"). The Court dismissed the Class Action complaint against all of the defendants because that complaint had failed to allege deceptive conduct.  *Id.* at *5.  As to Mr. Silverman and three other defendants (Sexton, Murphy and Sherer), the Court went further and dismissed the Class Action complaint as against them without leave to replead, because the Class Action plaintiffs had not opposed their separate motions to dismiss and thus had abandoned their claims against Mr. Silverman and those other defendants.  *Id.* at *6.  The VR and CM Complaints should fare

---

[1] Although the cases are not consolidated, the VR Complaint and the CM Complaint are substantially identical in virtually all respects relevant to Mr. Silverman's arguments set forth herein. With consent of the plaintiffs in these actions, Mr. Silverman respectfully requests that the Court accept the filing of one memorandum of law in support of his motion to dismiss both Complaints so as to avoid burdening the Court with identical arguments in two separate memoranda of law.  On February 20, 2008, Mr. Silverman submitted to the Court for its approval a proposed Stipulation and Order permitting him to follow this procedure.

In this memorandum, unless otherwise specified, the term "plaintiffs" refers to the plaintiffs in both the VR and CM actions.

no better.

The four VR plaintiffs apparently are related foreign private investment funds operated off-shore out of the Cayman Islands. VR Compl. ¶ 49. The three CM plaintiffs apparently are three foreign investment companies incorporated under the laws of the Bahamas, the British Virgin Islands, and Panama, respectively. CM Compl. ¶¶ 31-33. Each of the VR and CM plaintiffs allegedly opened one or more accounts with Refco Capital Markets, Ltd. ("RCM"), a Refco entity formed in Bermuda. VR Compl. ¶¶ 49, 55; CM Compl. ¶¶ 31-33, 39. As brokerage customers of RCM, each of the VR and CM plaintiffs were members of the putative class whose complaint had already been dismissed when they filed this action. The plaintiffs in both actions apparently are seeking to avoid the Court's order dismissing Mr. Silverman from the Class Action without leave to replead by naming him as a defendant in these new, individual actions. Plaintiffs, however, have not pleaded anything of substance pertaining to Mr. Silverman that was not already in the dismissed Class Action complaint, and, in fact, plead essentially the same claims as the Class Action complaint.

Like the Class Action plaintiffs, the plaintiffs in both of these actions attempt to allege a fraud that plaintiffs label "The RCM Securities Scheme." The alleged scheme is really a claimed theft rather than a securities fraud. RCM allegedly converted for the benefit of other Refco entities securities and other assets that RCM customers deposited with it. *See* VR Compl. ¶¶ 3-6; CM Compl. ¶¶ 2-4. The VR plaintiffs allege an additional fraud scheme they label "The RGHI Scheme." (The CM plaintiffs do not allege this scheme in their Complaint and merely describe it in passing. CM Compl. ¶¶ 62-63.) The RGHI scheme involved "round-robin" loan transactions allegedly designed to conceal uncollectible receivables from Refco investors. *See* VR Compl. ¶¶ 30-31. That second scheme is largely lifted from the complaint in another action pending

before this Court, *In re Refco, Inc. Sec. Litig.*, No. 05 Civ. 8626 (Lynch, J.).

Despite the 186 pages and 561 paragraphs of the VR Complaint and the 123 pages and 373 paragraphs of the CM Complaint, neither the VR plaintiffs nor the CM plaintiffs have been any more successful than the Class Action plaintiffs in devising allegations identifying fraudulent conduct or misrepresentations specifically committed by Mr. Silverman himself. In fact, Mr. Silverman's name is mentioned in only six paragraphs of the 561-paragraph VR Complaint and in only five paragraphs of the 373-paragraph CM Complaint. None of those paragraphs allege any specific wrongdoing by Mr. Silverman: one paragraph in each Complaint labels Mr. Silverman as one of the "Officer Defendants" (VR Compl. ¶ 60; CM Compl. ¶ 43);[2] two other paragraphs in each Complaint describe the positions Mr. Silverman is supposed to have held at other Refco entities (there is no allegation that Mr. Silverman was an officer of RCM in either Complaint), and claim that he was "a close confidant of Bennett, and, on information and belief, was Bennett's personal accountant" (VR Compl. ¶¶ 66, 259; CM Compl. ¶¶ 48, 177);[3] in another paragraph plaintiffs refer to him as having been initially named to the board of managers of a Refco entity which quickly became inoperative with the IPO (VR Compl. ¶ 322; CM Compl. ¶ 218); and in one other paragraph they conclusorily allege that

---

[2] Eight "Officer Defendants" are listed in the VR Complaint (¶ 60); seven are listed in the CM Complaint (¶ 43).

[3] Apart from being untrue, the Court already has observed that the "close confidant" allegation essentially is meaningless. In dismissing another Refco complaint which included the same allegation, the Court stated: "The complaint also alleges that Silverman was 'a close confidant of Bennett, and, on information and belief, was Bennet[t]'s personal accountant.' (Compl. ¶ 46.) It does not allege that Silverman's personal association with Bennett resulted in Bennett's confessing the ongoing fraud to him, and it can hardly be assumed that everyone associating with an alleged fraudster is aware of the ongoing wrong." *American Fin. Int'l Group-Asia, L.L.C. v. Bennett*, No. 05 Civ. 8988, 2007 WL 1732427, at *8, n.8 (S.D.N.Y. June 14, 2007) (Lynch, J.). The Court therefore should disregard the "close confidant" allegation. *Cf. Roberto's Fruit Market, Inc. v. Schaffer*, 13 F. Supp. 2d 390, 396 (E.D.N.Y. 1998) (striking allegations in a RICO action concerning defendants' ties to organized crime: even if true, the allegations had no relationship to the underlying RICO claims, and amounted to "unnecessary, vague, and inflammatory language in the nature of trash-talking").

Mr. Silverman was one of an undefined group of persons charged with day-to-day operations of Refco (but not RCM).  VR Compl. ¶ 533; CM Compl. ¶ 347.  The VR Complaint contains one additional allegation that an Arthur Andersen employee once remarked that it made little sense having Mr. Silverman send an audit confirmation request to himself.  VR Compl. ¶ 469.  Not only are there few allegations that refer to Mr. Silverman, none of those allegations provide even the slightest detail of any fraudulent conduct committed by him.  The most plaintiffs can manage in the remainder of the Complaints is to lump Mr. Silverman together with others under their "Officer Defendant" label (*e.g.* VR Compl. ¶¶ 4, 60; CM Compl. ¶¶ 3, 43), but this sort of guilt-by-association group pleading does nothing to advance their claims against Mr. Silverman.

Plaintiffs' theory seems to be that the "Officer Defendants" can be lumped together because "their ultimate goal was to present Refco as more profitable and successful than it was in order to monetize and cash out their interests in the company for more than they were worth." VR Compl. ¶ 23; CM Compl. ¶ 22.  Yet nothing alleged in the Complaints would even permit an inference that Mr. Silverman should be swept into this net because the Complaints each make clear that he was ***never*** part of any group effort to cash out of Refco.  There is no allegation that Mr. Silverman was ever provided any benefits or any interests in Refco, or profited, or stood to profit, from any of the alleged schemes.  Indeed, every time plaintiffs point in the Complaints to some specific way in which the "Officer Defendants" are supposed to have cashed out or taken some benefit for themselves – whether in the form of the money the "Officer Defendants" paid themselves out of Refco's LBO or IPO (VR Compl. ¶¶ 492-95; CM Compl. ¶¶ 311-14); whether through Refco stock they took for themselves (VR Compl. ¶ 494; CM Compl. ¶ 313); whether through the IPO's greenshoe dividend (VR Compl. ¶ 500; CM Compl. ¶ 319); whether through grants of restricted stock units (VR Compl. ¶ 496; CM Compl. ¶ 315) – Mr. Silverman's name is

conspicuously absent. Plaintiffs do not, and cannot, include Mr. Silverman in any of those allegations because he was never a participant in any of the alleged payoff schemes and never profited from them. He was a salaried employee and no more, and the Complaint does not – indeed, cannot – allege otherwise. Plaintiffs' theory for lumping Mr. Silverman with the "Officer Defendants" thus collapses entirely of its own weight; the facts plaintiffs themselves allege belie it.

Even plaintiffs' control person allegations fall apart as to Mr. Silverman. Those allegations are based on the theory that the "Officer Defendants" controlled Refco, as demonstrated by Refco's SEC filings, which touted the key roles played by the "Officer Defendants." *See* VR Compl. ¶ 507; CM Compl. ¶ 326. Yet those SEC filings never mention Mr. Silverman at all. *See* accompanying Declaration of Richard Cashman in Support of Motion to Dismiss by Defendant Philip Silverman, dated February 21, 2008, and the exhibits thereto ("Cashman Decl."). Although Refco plainly never considered Mr. Silverman a member of its senior management team, plaintiffs say he was, but they do not provide any facts to support that claim. Accordingly, plaintiffs' theory for including Mr. Silverman with the other "Officer Defendants" not only is unsupported, but, like their other attempts to lump Mr. Silverman with others, it is flatly contradicted by the very documents on which they purport to rely. The plaintiffs' claim that Mr. Silverman was a control person thus also fails.

Plaintiffs also include a claim under SEC Rule 10b-16, but that rule does not apply to Mr. Silverman and it does not provide a private right of action in any event.

Accordingly, regardless of whatever merit they may have as to other defendants, plaintiffs' claims against Mr. Silverman should be dismissed.

# ARGUMENT

## I.    PLAINTIFFS' SECTION 10(b) CLAIM SHOULD BE DISMISSED AS AGAINST MR. SILVERMAN

In the VR Complaint, plaintiffs allege in Count I that the defendants engaged in "two related fraudulent schemes" – the RCM Securities Scheme and the RGHI Scheme – in violation of Section 10(b) and Rule 10b-5.  *See, e.g.* VR Compl. ¶¶ 2, 542.  The CM Complaint alleges that the defendants engaged in the RCM Securities Scheme (but not the RGHI Scheme) in violation of Section 10(b) and Rule 10b-5.  *See, e.g.* CM Compl. ¶ 356.

Plaintiffs' claims are subject to two strict pleading standards.  First, Rule 9(b) of the Federal Rules of Civil Procedure, requires that in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Second, the PSLRA heightens the Rule 9(b) pleading standard by requiring that plaintiffs "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  Accordingly, "[t]he pleading standard for all claims under Section 10b-5 is raised by the requirement that plaintiffs plead the element of scienter, defined as 'a mental state embracing intent to deceive, manipulate or defraud.'"  *In re Global Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910, 2005 WL 1907005, at *4 (S.D.N.Y. Aug. 8, 2005) (Lynch, J.) (citations omitted).

The Complaints here utterly fail to meet either standard with respect to Mr. Silverman. While the Complaints make sweeping, conclusory allegations as to the "Officer Defendants," neither identifies what deceptive conduct Mr. Silverman himself committed.[4]  The Complaints also fail to allege particularized facts from which it can be inferred that Mr. Silverman had a

---

[4] Nor does either Complaint explain why Mr. Silverman should be grouped together with the "Officer Defendants."

"mental state embracing intent to deceive, manipulate, or defraud."  Count I in both Complaints

should be dismissed as to Mr. Silverman for these reasons.[5]

### A.    Plaintiffs Have Not Pled Their Section 10(b) Claim With Particularity As To Mr. Silverman

Group pleading has no place when it comes to pleading a scheme liability theory under

Rule 10b-5(a) and (c).  A scheme liability claim requires an allegation that the defendant himself

committed a deceptive act on which the plaintiff relied, because the implied Section 10(b) right

of action does not extend to aiders and abettors.  *See Stoneridge Investment Partners, LLC v.

Scientific-Atlanta, Inc.,* 128 S. Ct. 761, 769 (2008).  To make such a claim, "the plaintiffs must

specify what deceptive or manipulative acts were performed, which defendants performed them,

when the acts were performed, and what effect the scheme had on investors in the securities at

issue."  *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 493 (S.D.N.Y. 2005); *accord In re

Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 329 (S.D.N.Y. 2004); *see also In re Blech

Sec. Litig.*, 961 F. Supp. 569, 580 (S.D.N.Y. 1997) (a plaintiff asserting a market manipulation

claim must allege direct participation in a scheme, and when a complaint is made against

multiple defendants, "'the pleading must give notice to *each* defendant of its alleged

misconduct'") (emphasis in original) (citation omitted).  As this Court has observed, "'[a]

plaintiff cannot satisfy Rule 9(b) by filing a complaint in which defendants are clumped together

in vague allegations.'"  *American Fin. Int'l Group-Asia*, 2007 WL 1732427, at *11 (citations

omitted); *accord Rich v. Maidstone Fin., Inc.*, No. 98 Civ. 2569, 2002 WL 31867724, at *8, n.7

(S.D.N.Y. Dec. 20, 2002).  That kind of impermissible group pleading, however, is all that

appears in both Complaints with respect to Mr. Silverman.

---

[5] As explained in the THL Defendants' motion to dismiss, the Section 10(b) claim in both Complaints also should be dismissed because plaintiffs still have not alleged deception, and they do not have standing.

### 1.    The RCM Securities Scheme.

Plaintiffs devote large sections of their Complaints to discussing the RCM Securities Scheme and the manner in which it was allegedly conducted.  *See* VR Compl. ¶¶ 3-29, 79-125, 149-79; CM Compl. ¶¶ 2-26, 60-61, 105-60.  And yet, despite the detailed attention given to describing this alleged fraud, plaintiffs fail to make a single particularized factual allegation about Mr. Silverman's purported involvement in the fraud.  Instead, they simply lump him together with others under the term "Officer Defendants," and hope that will suffice.  For several independent reasons, it does not.

As an initial matter, the Complaints do not charge Mr. Silverman with creating or disseminating RCM customer agreements or transaction statements.  Nor do the Complaints allege that he had any communications with plaintiffs or any other RCM customers.  The sum total of the allegations purporting to connect Mr. Silverman to the RCM Securities Fraud are found in two paragraphs of each Complaint containing the same generalized allegations. At paragraphs 66 and 259 of the VR Complaint and paragraphs 48 and 177 of the CM Complaint, plaintiffs allege that Mr. Silverman held "numerous" unidentified executive positions within Refco and various of its subsidiaries, including the title of Controller[6] of RCM's indirect parent company (RGL), and, in that capacity, had responsibility "for overseeing inter-

---

[6] In fact, Mr. Silverman ***was not*** the Controller of Refco Group.  While Mr. Silverman acknowledges the Court's previous reluctance to consider this fact on a motion to dismiss, publicly available documents disclose that Frank Mutterer – not Mr. Silverman – was the Controller of Refco Group.  *See* Supplemental Motion of Official Committee of Unsecured Creditors for Order Under 11 U.S.C. § 1103(c) at ¶ 29, *In re Refco, Inc.*, No. 05-60006 (Bankr. S.D.N.Y., *filed* May 23, 2006), *available at* http://www.refcodocket.com/DocketFiles/1940.pdf.  Notably, the referenced Motion was filed by the Milbank, Tweed firm, the same firm now representing the VR and CM plaintiffs in these cases.  Plaintiffs therefore should be estopped from disputing the issue.

The Court may refer to publicly available documents and any document quoted or discussed in the Complaint in deciding a motion to dismiss under Rule 12(b)(6).  *E.g., Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

company and related-party transactions (including transactions between RCM and RCC and RCM and Refco Global Finance)."

That allegation is wholly insufficient, because even if Mr. Silverman had been in a position to "oversee" transactions involving RCM (plaintiffs do not allege that Mr. Silverman was an officer of RCM), plaintiffs have not alleged that Mr. Silverman knew that any of those transactions were fraudulent, or even how he would have known that any of the transactions were fraudulent.

Plaintiffs allege that the RCM Securities Scheme was carried out by deceiving RCM customers through "written and oral representations" about the manner in which their securities would be held, and by false representations about the circumstances under which customers' securities would be sold.  VR Compl. ¶¶ 8-11; CM Compl. ¶¶ 7-10.[7]  Thus, transactions involving the sale of RCM customers' securities – to the extent they were fraudulent – were fraudulent because of representations made by RCM to its customers.  Nothing in the Complaints, however, connects Mr. Silverman to any communications with RCM customers, and there are no allegations to suggest that Mr. Silverman could have, or should have, known that RCM customers had not approved the use of their securities.

Plaintiffs' theory is even further strained because nothing in the Complaints explains why an executive of RCM's indirect parent company would have had any role in communications with the customers of its subsidiary.  Indeed, the Complaints themselves affirmatively allege that other defendants and individuals, not Mr. Silverman, were the people who actually oversaw RCM's finances and executed the RCM Securities Scheme, and other individuals, not Mr. Silverman, communicated with plaintiffs.  *See, e.g.*, VR Compl. ¶¶ 85-86, 255, 257, 263;

---

[7] In fact, as demonstrated by the THL Defendants' motion to dismiss, there was no deception.

CM Compl. ¶¶ 64, 76, 173, 175, 181.[8]  The generalized allegation that Mr. Silverman was in a

position to oversee transactions of a Refco subsidiary, without more, stands in stark contrast to

those detailed allegations describing the alleged fraud; such conclusory allegations "need not be

credited . . . when [they are] belied by more specific allegations of the complaint."  *Hirsch v.*

*Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995).

Apart from the vague and peremptory allegation that Mr. Silverman was in a position to

oversee certain transactions, all plaintiffs are left with is another vague and conclusory allegation

that all of the "Officer Defendants" "played key roles by virtue of their executive positions with

Refco, and their direct involvement in Refco's day-to-day operations, including its finance and

accounting functions."  VR Compl. ¶ 60; CM Compl. ¶ 43.  Again, that is not a particularized

allegation sufficient to satisfy plaintiffs' pleading obligations under Rule 9(b).  Plaintiffs must

allege, at a minimum, how and when Mr. Silverman himself used or employed a "manipulative

or deceptive device or contrivance" in furtherance of the scheme.  *In re Parmalat Sec. Litig.*, 376

F. Supp. 2d at 503; *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d at 328-29 (quoting

*In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 385 (S.D.N.Y. 2003)) (citing *In re*

*Blech Sec. Litig.*, 961 F. Supp. at 582)).  Without such allegations, at most Mr. Silverman is

being accused of nonactionable aiding and abetting.  *See Stoneridge*, 128 S. Ct. at 771.

The same is true with respect to the allegations that RCM's financial statements

contained false statements.  The Complaints do not specify any particular conduct by

---

[8] For example, plaintiffs allege that Bennett, Maggio and Outridge directly orchestrated and supervised the conversion of RCM customer securities, that Outridge was primarily responsible for RCM's financial affairs, and that the RCM employees who converted the customer securities frequently did so at Maggio's direction.  VR Compl. ¶¶ 255, 257, 263; CM Compl. ¶¶ 173, 175, 181.  They also allege that an RCM employee named Adam Weiss was the one who induced the VR plaintiffs to open their RCM accounts; and that RCM employees named Stafford Bucknall, Thomas Yorke, Rodrigo Alvarez, Victor Enriquez, Sixto Campano and Carlos Alvarez were the ones who induced the CM plaintiffs to open their RCM accounts.  VR Compl. ¶¶ 85-86; CM Compl. ¶¶ 64, 76.

Mr. Silverman; plaintiffs attempt to assign responsibility for RCM's financial statements to Mr. Silverman through broad-brush allegations about involvement by the "Officer Defendants." Such flimsy allegations fail to advise Mr. Silverman of the basis of the claim, and they do not meet the heightened pleading standard imposed by Rule 9(b) and the PSLRA. All that the VR Complaint alleges is that the "Officer Defendants" participated in the issuance of false financial statements. VR Compl. ¶ 268. That studiously ambiguous allegation does not allege that Mr. Silverman was actually involved in the preparation of RCM's or Refco's financial statements.[9]

### 2.    The RGHI Securities Scheme.

The VR Complaint also fails to allege any deceptive conduct by Mr. Silverman in connection with the RGHI Scheme.[10] In fact, the VR Complaint alleges that the RGHI Scheme was not perpetrated by Mr. Silverman; according to the Complaint, that scheme was perpetrated

---

[9] The group pleading doctrine is "extremely limited in scope," and applies "only to clearly cognizable corporate insiders with active daily roles in the relevant companies or transactions." *Polar Int'l Brokerage Corp. v. Reeve*, 108 F. Supp. 2d 225, 237 (S.D.N.Y. 2000); *see also DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247, 1249 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud," thus the group pleading doctrine is inapplicable to affiliates of corporate defendants where those affiliates were not "tied to the [allegedly fraudulent] Offering Memorandum in any specific way."). As explained above, plaintiffs do not allege that Mr. Silverman was an RCM officer.

Further, even though this Court and others within this District in the absence of a decision on the issue by the Second Circuit have accepted the continuing viability of group pleading after the PSLRA as a means of attributing certain corporate statements to corporate officers, the fact is that every Circuit Court of Appeals which has considered the issue has concluded that the group pleading doctrine does not survive the PSLRA. The Third Circuit has recently added its vote against the continued viability of the doctrine. *See Winer Family Trust v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007) ("We agree and hold the group pleading doctrine is no longer viable in private securities actions after the enactment of the PSLRA. . . . [A]ny such claims must be pleaded with the specificity required by the PSLRA with respect to each defendant."). Group pleading therefore should not be allowed to save the Complaint from dismissal.

[10] The CM Complaint does not allege the RGHI Scheme as part of its 10(b) claim. In fact, what is described as the RGHI Scheme in the VR Complaint is mentioned only in passing in two paragraphs in the CM Complaint. *See* CM Compl. ¶¶ 62-63. Plaintiffs thus implicitly acknowledge that their case against Mr. Silverman does not depend upon the RGHI Scheme.

by the "Bennett Co-Conspirators," identified by plaintiffs as Bennett, Grant, Maggio and Trosten.  VR Compl. ¶ 30.

Plaintiffs allege that the Bennett Co-Conspirators hid the scheme from the public (*id.* ¶ 36), used the scheme to conceal trading losses (*id.* ¶ 126), engaged in improper accounting to manipulate Refco's financial statements (*id.* ¶¶ 126, 131), and orchestrated transactions designed to transfer losses to other entities (*id.* ¶¶ 132-48).  Nowhere in their description of the RGHI Scheme do plaintiffs allege that Mr. Silverman was a director of this scheme. Mr. Silverman is not alleged to have been one of the Bennett Co-Conspirators.

Instead, plaintiffs allege that Mr. Silverman "would have had intricate knowledge of the key elements of the RGHI Scheme" due to his position in the company, and conclude that Mr. Silverman "either knew, or was reckless in not knowing, that the fraudulent schemes were occurring."  *Id.* ¶ 259.  Like the allegations concerning the RCM Securities Scheme, these allegations do not ascribe any deceptive conduct to Mr. Silverman and therefore do not meet the requirements for alleging a scheme liability claim against him.

## B.    Plaintiffs Also Have Not Alleged Particularized Facts Raising A Strong Inference Of Scienter With Respect To Mr. Silverman

Not only are plaintiffs required to plead the circumstances constituting fraud with particularity, they are likewise required to plead particularized facts giving rise to a "strong inference" of scienter – specifically an intent to deceive or defraud – with respect to each defendant.  *See Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976).  Under this standard, a plaintiff must plead particularized facts, not conclusory allegations or speculative assertions, that "point strongly to an inference that defendants harbored an intent to deceive, manipulate, or defraud."  *In re Salomon Analyst Winstar Litig.*, No. 02 Civ. 6171, 2006 WL 510526, at *7 n.11,  14 (S.D.N.Y. Feb. 28, 2006)

12

(Lynch, J.).  The facts alleged must be sufficient to create an inference of scienter that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007).

Scienter may be pled either (a) by alleging facts "to show that defendants had both motive and opportunity to commit fraud," or (b) by alleging "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004).  The Complaints here allege neither.

### 1.    Plaintiffs do not even mention Mr. Silverman once in their motive and opportunity allegations.

To plead scienter by motive and opportunity, a plaintiff must plead that the defendant benefited in a way that is concrete and personal.  *E.g., In re Refco, Inc., Sec. Litig.,* 503 F. Supp. 2d 611, 644-45 (S.D.N.Y. 2007) (Lynch, J.); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 441 (S.D.N.Y. 2005).  In an attempt to meet this requirement, each Complaint contains the same section entitled "Defendants Reaped Substantial Proceeds From The Schemes." VR Compl. ¶¶ 488-503; CM Compl. ¶¶ 307-22.  In those paragraphs, plaintiffs name other defendants, not Mr. Silverman, and describe, by text and chart, millions of dollars of benefits that each of those defendants allegedly received from Refco.  *Id.*  Those benefits allegedly gave those other defendants incentives to sell plaintiffs' securities and divert the proceeds to Refco.  *Id.*

Not once in this entire section is Mr. Silverman even mentioned, much less alleged to have received any payments or other benefits.  Thus, where plaintiffs allege in the first paragraph of this section that "the Defendants" had a motive and opportunity to engage in the fraudulent schemes "to enrich" themselves, that "motive and opportunity" cannot be imputed to Mr. Silverman.  VR Compl. ¶ 488; CM Compl. ¶ 307.  Plaintiffs go on, throughout that section, to allege that the "***Officer Defendants*** and the THL Control Group Defendants reaped

tremendous monetary benefit" from the allegedly fraudulent RCM transactions and that those defendants were thus motivated to conduct the fraudulent scheme. VR Compl. ¶ 489; CM Compl. ¶ 308 (emphasis added). And yet, because plaintiffs do not, and cannot, identify any such benefits received by Mr. Silverman, they have completely failed to plead that Mr. Silverman had any motive or incentive to commit fraud.

For example, plaintiffs allege that certain "Officer Defendants" realized "significant windfalls" from the LBO: Murphy $13.1 million; Sexton $8.1 million; Maggio $13.5 million. VR Compl. ¶ 492; CM Compl. ¶ 311. Plaintiffs also allege that "certain Officer Defendants received substantial grants of Refco common stock" (VR Compl. ¶ 493; CM Compl. ¶ 312); that the "Officer Defendants" were given the opportunity to receive large sums of cash during the Company's IPO through the Company's exercise of a "greenshoe" option (VR Compl. ¶ 500; CM Compl. ¶ 319); and that "[c]ertain Officer Defendants also received huge grants of RSUs [restricted stock units] in advance of the IPO." VR Compl. ¶ 496; CM Compl. ¶ 315. Even though Mr. Silverman is defined as an "Officer Defendant," he is not alleged in any of these paragraphs to have received *any* benefit from the Refco LBO or IPO. The reason is that he did not receive any stock; and he did not receive any cash.

The Complaint contains charts listing the benefits that purportedly establish "motive and opportunity" as to the "Officer Defendants," but those charts do not include Mr. Silverman. One chart, for example, lists the grants of common stock received by certain defendants, as follows (VR Compl. ¶ 494; CM Compl. ¶ 313):

| Defendant | Stock Held at IPO | Value at IPO Price |
|---|---|---|
| Bennett | 48,427,000 shares | $1,065,394,000 |
| Sexton | 596,000 shares | $13,112,000 |
| Murphy | 534,000 shares | $11,748,000 |
| Maggio | 503,000 shares | $11,066,000 |

Mr. Silverman is not listed.

Another chart itemizes the greenshoe dividend paid to certain of the Officer Defendants (VR Compl. ¶ 500; CM Compl. ¶ 319):

| Defendant | Pre-IPO Interest | Greenshoe Dividend |
|---|---|---|
| Bennett (through RGHI) | 42.1% | $34,616,153 |
| Sexton | 0.52% | $426,052 |
| Murphy | 0.46% | $381,558 |
| Maggio | 0.44% | $359,311 |
| THL Entities & affiliates | 57% | $45,120,576 |

Mr. Silverman again is not listed.

Put simply, **none** of the motives identified in the Complaints with respect to the other "Officer Defendants" with whom he is lumped apply to Mr. Silverman. The Complaints themselves demonstrate that he did not receive, and was not promised, any of the wealth plaintiffs allege as the Officer Defendants' motive to commit fraud. Accordingly the Complaints fail to raise a cogent inference of scienter as to Mr. Silverman.

> **2.    Plaintiffs have not alleged any facts that would constitute strong circumstantial evidence of conscious misbehavior or recklessness.**

Having failed to allege a factual basis for inferring motive on Mr. Silverman's part, plaintiffs can only satisfy their obligation to plead scienter by alleging "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Rombach*, 355 F.3d at 176. To plead scienter based on conscious misbehavior, the plaintiff must allege facts that would support an inference "that defendants deliberately or recklessly engaged in illegal conduct." *BISYS*, 397 F. Supp. 2d at 441 (citing *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000)). Importantly, where, as here, "motive and opportunity do not exist, 'the strength of the circumstantial allegations [regarding fraudulent intent] must be correspondingly greater.'" *Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360, 367 (S.D.N.Y. 2001) (internal citation omitted); *see also Kalnit*, 264 F.3d at 142). In these circumstances, plaintiffs must overcome a "significant

burden" to plead a "substantial factual basis in order to create a 'strong inference' that the defendant acted with the required state of mind." *In re Visual Networks, Inc. Sec. Litig.*, 217 F. Supp. 2d 662, 669 (D. Md. 2002) (internal citations omitted). Plaintiffs must "allege facts approaching a knowledgeable participation in the fraud or a deliberate and conscious disregard of facts." *Hart*, 145 F. Supp. 2d at 367.

In spite of this substantial pleading burden, the Complaints say nothing warranting an inference of deliberate or reckless illegal conduct as to Mr. Silverman. As explained above, the Complaint makes nothing more than vague allegations that Mr. Silverman "would have" known of the alleged RCM fraud due to his positions at other Refco entities. These allegations do not assert "facts approaching a knowledgeable participation in the fraud," nor are they "stronger" in light of the nonexistent motive and opportunity allegations. *Hart*, 145 F. Supp. 2d at 367. None of the allegations describing the fraudulent schemes say anything about Mr. Silverman. "It is well established that boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their . . . executive positions are insufficient to plead scienter." *In re Sotheby's Holdings, Inc. Sec. Litig.*, No. 00 Civ. 1041, 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000) (citing *Novak*, 216 F.3d at 309); *accord American Financial*, 2007 WL 1732427, at *8.

Because the allegations in the Complaints fall well short of establishing a "substantial factual basis" that would create the requisite "strong inference" that Mr. Silverman "acted with the required state of mind," plaintiffs have failed to plead facts raising an inference of conscious misbehavior or recklessness. *Visual Networks*, 217 F. Supp. 2d at 669 (internal citation omitted).

### 3.  "Group pleading" is an impermissible means of pleading scienter.

The PSLRA requires plaintiffs to plead scienter with particularity as to ***each defendant***. *In re Bayer AG Sec. Litig.*, No. 03 CV 1546, 2004 WL 2190357, at *15 (S.D.N.Y. Sept. 30,

2004) (even where statements are attributed to a group of defendants, "plaintiffs must still establish scienter as to each defendant").  In other words, plaintiffs cannot support a strong inference of scienter by alleging that Mr. Silverman was part of a group – for example by alleging knowledge by "the Officer Defendants" or by alleging that all Officer Defendants had "access to inside information."

For this reason, it is not enough for the plaintiffs to allege that the "sheer magnitude and size of the improper transfers," or that "access to inside information," raise a strong inference of scienter on the part of the "Officer Defendants."  VR Compl. ¶¶ 247, 253; CM Compl. ¶¶ 165, 171.  Such allegations amount to "group pleading" and do not raise an inference of scienter with the requisite particularity as to Mr. Silverman.  "[G]eneralized group pleading allegations of . . . knowledge and access to information are insufficient as a matter of law to establish [a defendant's] conscious misbehavior or recklessness."  *In re Yukos Oil Co. Sec. Litig.*, 04 Civ. 5243, 2006 WL 3026024, at *20 (S.D.N.Y. Oct. 25, 2006); *accord In re Van der Moolen Holding N.V. Sec. Litig*., 405 F. Supp. 2d 388, 408 (S.D.N.Y. 2005).

## II.    PLAINTIFFS' CLAIM UNDER SEC RULE 10b-16 SHOULD BE DISMISSED

Plaintiffs allege a claim against the "Officer Defendants" under SEC Rule 10b-16, on the theory that the "Officer Defendants" extended credit to the plaintiffs without providing the information required by the Rule.  VR Compl. ¶¶ 551-52; CM Compl. ¶¶ 363-64.  This claim should be dismissed, because Second Circuit decisions and the Supreme Court's decisions in *Alexander v. Sandoval,* 532 U.S. 275 (2001), and *Stoneridge*, 128 S. Ct. 769, hold that courts may not imply private rights of action or expand the contours of the right of action recognized under Section 10(b) of the 1934 Act in the absence of a clearly expressed intent by Congress to do so.  The claim also fails and should be dismissed because, even if a private right of action under Rule 10b-16 could be implied, the Rule does not apply to the "Officer Defendants," the

17

claim is untimely, and the claim does not satisfy the required elements that any claim under Section 10(b) must meet.

### A.     There Is No Implied Private Right Of Action Under Rule 10b-16

#### 1.     The Supreme Court's decisions in *Sandoval* and *Stoneridge* and recent Second Circuit decisions preclude the implication of a private right of action under Rule 10b-16.

Plaintiffs incorrectly assume that they have the right to bring a private action for damages under Rule 10b-16.  Neither Section 10(b) of the 1934 Act, pursuant to which the SEC promulgated Rule 10b-16, nor any other provision of the statute, nor Rule 10b-16 itself, explicitly provides for a private right of action for alleged violations of the Rule.  *See Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1357 (11th Cir. 1985) (Rule 10b-16 "does not create an express private right to enforce the duties it sets forth.").  Thus, plaintiffs' suit would be proper only if a right to bring a private action could be implied, but it cannot be.

The Supreme Court has severely restricted the right of federal courts in general to create implied rights of action.  *Sandoval*, 532 U.S. 275.  In *Sandoval*, the Court rejected any analysis which allows for the creation of implied rights of action based on a finding that a private right of action would serve some perceived statutory purpose.  Rather, the Court held that an implied right of action may be recognized only when doing so is consistent with an expressed congressional intent, not just to create a private right, but also to create a private remedy.  "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress."  *Id.* at 286.  The Court explained that:

> The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. . . .  Statutory intent on this latter point is determinative. . . .  Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

*Id*. at 286-87.

The Supreme Court applied *Sandoval* most recently in its *Stoneridge* decision.  In *Stoneridge*, the Court rejected an attempt to use a scheme liability theory to extend the reach of the implied Section 10(b) right of action.  The Court reasoned that Congress did not intend to provide a broad federal remedy for all kinds of fraud.  *Stoneridge*, 128 S. Ct. at 771.  It held instead that,

> Concerns with the judicial creation of a private cause of action caution against its expansion.  The decision to extend the cause of action is for Congress, not for us.  Though it remains the law, the §10(b) private right should not be extended beyond its present boundaries.

*Id.* at 773.

For its part, the Second Circuit has applied *Sandoval* twice, and in each instance it has rejected an argument in favor of the recognition of an implied private right of action.  *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007); *Olmsted v. Pruco Life Ins. Co.,* 283 F.3d 429 (2d Cir. 2002).  In each instance the Second Circuit recognized that reliance upon pre-*Sandoval* authorities, rendered when the courts had more latitude to weigh statutory policy and other considerations, is misplaced and should not be followed because they relate to an "*ancien regime*."  *See Olmsted,* 283 F.3d at 434; *Bellikoff,* 481 F.3d at 117.

*Sandoval*, *Stoneridge*, *Olmsted* and *Bellikoff* therefore preclude the implication of a private right of action under Rule 10b-16.  These decisions prohibit implying new private rights that have not previously been recognized by the Supreme Court or explicitly created by Congress.  *Stoneridge* in particular teaches that the implied right of action under Section 10(b) is not to be expanded beyond its present boundaries.  Since Rule 10b- 16 "does not create an express private right to enforce the duties it sets forth," *Greenblatt*, 763 F.2d at 1357, it is not the

proper function of the federal courts to create one.[11]

The Second Circuit has never recognized an implied right of action under Rule 10b-16.[12] Although some other courts have recognized a private right of action under Rule 10b-16, no court has addressed the issue since the decisions in *Sandoval* and *Stoneridge*, so those other cases were decided under a different standard and may no longer be followed. Indeed, the Second Circuit in *Olmsted* specifically recognized that as a result of *Sandoval's* new focus on congressional intent, some statutes, and by extension administrative rules, which previously were interpreted as providing a private right of action, may no longer be found to offer such a right to private plaintiffs. *Olmsted*, 283 F.3d at 434 ("[p]ast decisions reflecting judicial willingness to

---

[11] In fact, Congress appears to have disavowed any attempt to broaden claims under Section 10(b) and the regulations thereunder by providing in § 203 of the PSLRA that "[n]othing in this Act or the amendments made by this Act shall be deemed to create or ratify any implied right of action[]." P.L. 104-67, Title II, § 203, 109 Stat. 762.

[12] When confronted with the question, the Second Circuit affirmed the dismissal of a purported Rule 10b-16 claim on other grounds and held therefore that it did not have to decide whether a private right of action could be implied under the Rule. *See Zerman v. Ball*, 735 F.2d 15, 23 (2d Cir. 1984). Cases decided here in the Southern District have concluded that a private right of action under Rule 10b-16 does not exist. *See Zerman v. Melton*, No. 82 Civ. 6846, 1983 U.S. Dist. LEXIS 17809, at *14 (S.D.N.Y. Apr. 12, 1983), *aff'd on other grounds*, 735 F.2d 751 (2d Cir. 1984), *cert. denied*, 474 U.S. 845 (1985) (holding that Rule 10b-16 "provides no private cause of action; rather, it leaves enforcement to the S.E.C."); *Establissement Tomis v. Shearson Hayden Stone, Inc.*, 459 F. Supp. 1355, 1361 (S.D.N.Y. 1978) (rejecting the existence of a private right of action for damages under Rule 10b-16).

Other Southern District cases, like the Second Circuit, have dismissed Rule 10b-16 claims on other grounds, thus not deciding the issue of whether an implied right of action exists under Rule 10b-16. *See Levitin v. PaineWebber, Inc.*, 933 F. Supp. 325, 330-31 (S.D.N.Y. 1996), *aff'd on other grounds*, 159 F.3d 698 (2d Cir. 1998); *Bissell v. Merrill Lynch & Co., Inc.*, 937 F. Supp. 237 (S.D.N.Y. 1996) (same); *Komanoff v. Mabon, Nugent & Co.*, 884 F. Supp. 848, 858 (S.D.N.Y 1995).

Only two courts in the Southern District have concluded that a private right of action may be implied under Rule 10b-16, but these decisions predate the Supreme Court's decisions in *Sandoval* and *Stoneridge* as well as the Second Circuit's decisions in *Olmsted and Bellikoff*. *See Metzner v. D.H. Blair & Co.*, 689 F. Supp. 262, 267 (S.D.N.Y. 1988); *Slomiak v. Bear Stearns & Co.*, 597 F. Supp. 676 (S.D.N.Y. 1984); *see also Chemical Bank v. Shearson Lehman Bros., Inc.*, 91 Civ. 4915, 1992 U.S. Dist. LEXIS 10751, at *5 (S.D.N.Y. July 21, 1992) (assuming without addressing the issue that plaintiffs can bring a private right of action for damages under Rule 10b-16). Thus, to the extent that these opinions might otherwise serve as persuasive authority, they should no longer be followed. *See Olmsted*, 283 F.3d at 434.

'make effective [statutory] purpose' in the context of implied rights of action belong to an 'ancien regime.'").[13]

Plaintiffs therefore cannot simply presume, as they do, that they have a right to bring an action for damages under Rule 10b-16.  To the contrary, the Second Circuit has explained that unless Congress has explicitly articulated an intent to create a private cause of action, the Court must "begin with the presumption that Congress did not intend one."  *Bellikoff*, 481 F.3d at 116.

>    2.    **Plaintiffs cannot assume that an implied right of action exists under Rule 10b-16 because there is a recognized private right of action for violations of Rule 10b-5.**

Plaintiffs cannot assume that an implied right of action under Rule 10b-16 must be recognized simply because the courts have recognized an implied right of action under Rule 10b-5.  In contrast to Rule 10b-16, the Supreme Court has expressly acquiesced in the long line of cases accepting a private right of action for violations of Rule 10b-5.  *See, e.g., Stoneridge*, 128 S. Ct. at 768; *Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 13 n.9 (1971).  And the existence of the Rule 10b-5 private right of action was implicitly affirmed by Congress in 1995 when it passed the PSLRA enacting, for example, heightened pleading requirements and a loss causation requirement.  15 U.S.C. § 78u-4(b).  The 10b-5 right of action has been accepted because that Rule "encompasses only conduct already prohibited by § 10(b)."  *Stoneridge*, 128 S. Ct. at 768.[14]  Rule 10b-5 thus constitutes a "substantive implementing rule," whose purpose is

---

[13] In *Olmsted*, in holding that a private remedy does not exist under §§ 26(f) and 27(i) of the Investment Company Act of 1940, the Second Circuit noted that "an overwhelming majority of courts interpreting the ICA have recognized implied private rights of action to enforce many of its sections," but that "[w]hen those cases were decided . . . courts had more latitude to weigh statutory policy and other considerations than they do now."  *Olmsted*, 283 F.3d at 434.  The court explained that, "[p]ast decisions reflecting judicial willingness to 'make effective [statutory] purpose' in the context of implied rights of action belong to an 'ancien regime.'"  *Id.* (quoting *Sandoval*, 532 U.S. at 287).

[14] In *Sandoval*, the Supreme Court explained that a "private plaintiff may not bring a [suit based on a regulation] against a defendant for acts not prohibited by the text of [the statute].''  532 U.S. at 286

(*footnote cont'd*)

to give effect to the provisions of Section 10(b).  Loss & Seligman, SECURITIES REGULATIONS § 13-E (3d ed. 2006).

Nothing of the sort can be said of Rule 10b-16.  It does not have a similar history of long-standing uniform judicial interpretation or of Congressional acceptance of its creation of a private right of action.  Instead, where other courts have even addressed the issue (and the Second Circuit has not), there has been considerable disagreement as to whether there is an implied right of action under Rule 10b-16.  And even when some courts have found an implied right of action, they have disagreed over whether the existence of such a right should be analyzed under Section 10(b) or the Truth in Lending Act ("TILA"), and even whether scienter is a required element of the claim.  *See e.g., Angelastro v. Prudential-Bache Secs., Inc.*, 764 F.2d 939, 948, n.14 (3d Cir. 1985); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 535-36 (9th Cir. 1984); *Furer v. Paine, Webber, Jackson & Curtis, Inc.*, No. CV-81-4944, 1982 WL 1309, at *3 (C.D. Cal. Apr. 20, 1982); *Haynes v. Anderson & Strudwick, Inc.*, 508 F. Supp. 1303, 1321 (E.D. Va. 1981).  It is not surprising, therefore, that the Second Circuit treated the existence of an implied right of action under Rule 10b-16 as an issue to be considered independently even though in the same decision in which it declined to resolve the issue it sustained a claim brought under Rule 10b-5.  *See Zerman v. Ball*, 735 F.2d at 23.

Further, unlike Rule 10b-5, Rule 10b-16 is not directly related to the provisions of Section 10(b).  Rule 10b-16 was promulgated by the SEC in response to a directive by Congress when it passed the Truth In Lending Act in 1968.  When enacting TILA, Congress expressly exempted securities accounts from its coverage, and instead instructed the SEC to provide for substantially similar disclosure by regulation.  *See Haynes*, 508 F. Supp. at 1320 (outlining the

(quoting *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 173 (1994)).

history of the passage of TILA).  The SEC complied and adopted Rule 10b-16 to specify the

disclosures brokers and dealers are required to provide their margin customers, such as the

"annual rate or rates of interest that will be imposed" and the "method of computing interest."

17 C.F.R. § 240.10b-16(a)(1).  Rule 10b-16 accordingly focuses on brokers and dealers by

prescribing the disclosures they must make, and not on their customers.  This type of regulation

does not evince an intent to provide an implied private right of action, because "[s]tatutes that

focus on the person regulated rather than the individuals protected create 'no implication of an

intent to confer rights on a particular class of persons.'"  *Olmsted*, 283 F.3d at 433 (quoting

*Sandoval*, 532 U.S. at 289) (internal quotation and citation omitted).  Rule 10b-16 thus falls into

the category of "adjective implementing rules that prescribe the form and detail in which

statements and reports are to be prepared."  Loss & Seligman, SECURITIES REGULATIONS § 13-E.

This is not the type of regulation out of which a private enforcement right may be created.[15]

### B.    The Rule 10b-16 Claim Should Be Dismissed Even If The Rule Creates An Implied Right Of Action

Even assuming, *arguendo*, that plaintiffs could bring a claim under Rule 10b-16, the

claim should be dismissed for at least three separate reasons:  (1) the Rule only regulates conduct

by broker-dealers; (2) the claim is barred by the statute of limitations; and (3) the claim in any

event does not plead the essential elements required of any Section 10(b) claim.

### 1.    Mr. Silverman is not subject to Rule 10b-16.

Rule 10b-16 only regulates the conduct of broker-dealers.  Specifically, the Rule provides

that "[i]t shall be unlawful for *any broker or dealer* to extend credit, directly or indirectly, to any

customer in connection with any securities transaction unless *such broker or dealer* has

---

[15] Indeed, the Supreme Court has said that "it is appropriate for us to assume that when § 78u-4 [the PSLRA] was enacted, Congress accepted the § 10(b) private cause of action as then defined but chose to extend it no further."  *Stoneridge*, 128 S. Ct. at 773.

established procedures to assure that each customer" is given certain written statements and disclosures. 17 C.F.R. § 240.10b-16(a) (emphasis added). SEC regulations "should be interpreted according to [their] plain meaning[]." *Seinfeld v. Gray*, 404 F.3d 645, 649 (2d Cir. 2005). By its terms, Rule 10b-16 applies only to entities or individuals who qualify as brokers or dealers.

The Complaints make it clear that the plaintiffs opened brokerage accounts with *RCM* and it was *RCM* which purportedly extended credit to them. *See, e.g.* VR Compl. ¶ 49; CM Compl. ¶¶ 31-33. Plaintiffs themselves acknowledge that even on their theory it was RCM itself which was subject to the disclosure requirements of Rule 10b-16, not Mr. Silverman. *See* VR Compl. ¶¶ 161-63; CM Compl. ¶¶ 137-38 ("Pursuant to SEC Rule 10b-16, *RCM* was obligated to provide express notice to its customers of the 'nature of any interest or lien retained by RCM in the security held as collateral.'"; "*RCM* failed to provide the disclosures required by Rule 10b-16.") (emphasis added).[16]

The Complaints also are entirely bereft of any allegations suggesting that Mr. Silverman was a broker or dealer. As an initial matter, the Complaints fail to establish that Mr. Silverman meets any of the indicia of a broker or dealer as set forth by the SEC. *See, e.g., Guide to Broker-Dealer Registration*, Division of Market Regulation, U.S. Securities and Exchange Commission (December 2005), *available at* http://www.sec.gov/divisions/marketreg/bdguide.htm#II. Plaintiffs do not allege, for example, that Mr. Silverman was involved in soliciting plaintiffs' business or negotiating the customer agreements at issue. To the contrary, the Complaints themselves allege that other individuals met with and encouraged plaintiffs to place their

---

[16] It also appears that, in fact, RCM made the requisite disclosures. *See* the THL Defendants' motion to dismiss.

securities with RCM, and do not mention Mr. Silverman at all in connection with these allegations.  VR Compl. ¶¶ 84-87, 97; CM Compl. ¶¶ 64-66, 76-77.  Nor do the Complaints suggest that Mr. Silverman was responsible for facilitating or executing plaintiffs' securities transactions.  There also is nothing in the Complaints to indicate that he received any compensation in the form of commission fees in connection with plaintiffs' transactions with RCM.  The Complaints allege only that Mr. Silverman was an officer of Refco entities other than RCM.  *See* VR Compl. ¶ 66; CM Compl. ¶ 48.[17]  Plaintiffs' attempt to hold Mr. Silverman primarily liable for failure to comply with the provisions of Rule 10b-16 therefore is baseless.

### 2.    The Rule 10b-16 claim is untimely.

A complaint charging a violation of Section 10(b) must be brought within two years after the plaintiff discovers the facts constituting the violation, and in no event more than five years after such violation.  28 U.S.C. § 1658(b); *see also Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991).  Plaintiffs allege that the "Officer Defendants" failed at the time plaintiffs opened their RCM accounts to disclose "the nature of any interest or lien retained by RCM in the security or other property held as collateral and the conditions under which additional collateral could be required," in violation of Rule 10b-16.  VR Compl. ¶ 551; CM Compl. ¶ 363.  Rule 10b-16 requires "the broker to establish procedures to assure that each customer is given a written statement disclosing information regarding interest [and other] charges *at the time an account is opened*."  *See Bissell*, 937 F. Supp. at 245 (emphasis added).

---

[17] The 1934 Exchange Act definitions of broker and dealer do not extend to officers of entities merely affiliated with broker/dealers (s*ee* 15 U.S.C. § 78c(a) (4)(A) and (5)(A)), and we are not aware of a single case in which a broker's primary liability for Rule 10b-16 violations has been extended on that basis alone to an officer of the broker's indirect corporate parent.  This is consistent with the principle that statutory and regulatory terms must be interpreted according to their plain meanings and may not be expanded based on mere policy arguments.  *See, e.g., Board of Governors of the Federal Reserve System v. Dimension Financial Corp.,* 474 U.S. 361, 373-74 (1986); *Seinfeld,* 404 F.3d at 649.

Thus, if there is a private claim under Rule 10b-16, the cause of action accrues at the time a plaintiff opens his or her margin account and credit is extended.  *Id*.; *Komanoff*, 884 F. Supp. at 859.

The VR plaintiffs opened their RCM accounts in September 2001.  VR Compl. ¶ 83. Plaintiffs IDF and IDC opened their RCM accounts in 1996 and 1998, respectively.  CM Compl. ¶¶ 32-33.  Their claims therefore are too late because they waited until October 9, 2007 to commence their actions, or more than five years after RCM's alleged failure to provide the requisite disclosures.  Capital Management alleges that it opened its RCM account in June 2004. CM Compl. ¶ 31.  Its claim therefore also is too late because it was on notice at that point of the disclosures it received or did not receive, and that was more than two years prior to its filing of its action.  *See* 28 U.S.C. § 1658(b)(1).

### 3.   Plaintiffs' 10b-16 claim fails because it does not meet the basic requirements for any Section 10(b) claim.

Any claim allowable under Rule 10b-16 would have to meet all the requirements of any other claim under Section 10(b).  *See, e.g. Levitin*, 933 F. Supp. at 331 (dismissing a 10b-16 claim for failure to meet Section 10(b)'s "in connection with" requirement); *accord Bissell*, 937 F. Supp. at 244 (same).  Plaintiffs' Rule 10b-16 claim therefore fails, because, for the reasons explained in the motion to dismiss by the THL Defendants, the Complaint fails to meet the deception requirement for a Section 10(b) claim, and plaintiffs do not even have standing to assert their claims.

## III.   PLAINTIFFS' CONTROL PERSON CLAIM AGAINST MR. SILVERMAN ALSO SHOULD BE DISMISSED

Count III of each of the Complaints alleges that Mr. Silverman is liable for RCM's and Refco's claimed wrongdoing because he was a control person of each.  A control person claim under Section 20(a) of the Exchange Act requires (1) an underlying primary violation by the

controlled person, (2) actual control over the controlled person, and (3) culpable participation in the alleged fraud by the control person. *E.g.*, *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d at 637, 660. Apart from the fact that the Complaints fail to make out an underlying violation,[18] plaintiffs do not sufficiently allege that Mr. Silverman was a control person or that he was a culpable participant in the alleged RCM fraud. Count III therefore should be dismissed as to him.

### A. The Complaints Do Not Allege That Mr. Silverman Exercised "Actual Control"

Plaintiffs were required to allege facts, not mere conclusions, from which it could be inferred that Mr. Silverman exercised actual control over RCM and Refco and the transactions in dispute. They were required to be specific as to Mr. Silverman and not merely lump him together with others. Control person liability requires an individualized determination of the defendant's control and culpability. *See, e.g.*, *Boguslavsky v. Kaplan,* 159 F.3d 715, 720 (2d Cir. 1998); *In re Alstom SA Sec. Litig.,* 406 F. Supp. 2d 433, 486 (S.D.N.Y. 2005). Bare, conclusory allegations do not suffice. *See, e.g., Global Crossing*, 2005 WL 1907005, at *12; *Maidstone*, 2002 WL 31867724, at *11-12. Mere allegations of corporate officer status also do not suffice. *See, e.g., In re Sotheby's Holdings, Inc. Sec. Litig.,* 2000 WL 1234601, at *7-8; *In re Livent, Inc. Sec. Litig.,* 78 F. Supp. 2d 194, 221 (S.D.N.Y. 1999).

Despite these requirements plaintiffs never refer to Mr. Silverman by name a single time within the paragraphs they use to allege control by the "Officer Defendants." VR Compl. ¶¶ 504-15; CM Compl. ¶¶ 323-29. To the extent they include Mr. Silverman at all, plaintiffs merely lump him with the others and allege that "The Officer Defendants had control . . . by virtue of their executive positions with Refco, the key roles each played in Refco's management, and their direct involvement in its day-to-day operations, including its finance and

---

[18] *See, e.g.*, Point II, *supra,* and the THL Defendants' motion to dismiss.

accounting functions." VR Compl. ¶ 504; CM Compl. ¶ 323. Elsewhere in the Complaints, plaintiffs allege that Mr. Silverman was secretary of Refco and held "numerous high-level executive positions within Refco and its subsidiaries, including Controller of RGL,"[19] and that Mr. Silverman is a certified public accountant, and that he was responsible for overseeing inter-company and related-party transactions. VR Compl. ¶¶ 66, 259; CM Compl. ¶¶ 48, 177. These allegations of officer status do not establish Mr. Silverman's ability to direct the actions of Refco, let alone RCM with which Mr. Silverman is not alleged to have had any direct relationship.[20] *See, e.g., Wanetick v. Mel's of Modesto, Inc.,* 811 F. Supp. 1402, 1407 (N.D. Cal. 1992) (allegation that defendant was corporate secretary, without more, is insufficient to establish control).

The inadequacy of the allegations against Mr. Silverman can also be demonstrated by comparing the allegations the plaintiffs have made against other defendants. For example:

- Other defendants had non-compete and executive employment agreements that "explicitly state that they were employed 'in a key capacity with the Company'" which "gave each . . . substantial authority over the day-to-day management and operation of Refco." VR Comp. ¶ 509; CM Compl. ¶ 328.

- Other defendants were significant shareholders of Refco and used their shareholdings to control Refco. VR Compl. ¶¶ 505, 510, 512; CM Compl. ¶ 324.

- Other defendants constituted "the Bennett Co-Conspirators," and they were the ones who perpetrated the RGHI Scheme. VR Compl. ¶ 30.

_____

[19] Mr. Silverman was not controller of RGL. *See* note 6, *supra.* Because Mr. Silverman did not actually serve as Controller, plaintiffs' allegation that "as Controller" he was responsible for "overseeing inter-company . . . transactions," "closing [the Company's] books, implementation and maintenance of adequate internal financial controls, [or] the adoption and implementation of appropriate accounting policies" for the Company is simply untrue. Nevertheless, even if that allegation is credited in the Rule 12(b)(6) context, such generic allegations about the perceived duties of a particular position within a corporation are insufficient to plead actual control by a particular defendant without any link to the defendant's actual conduct. The same is true with respect to the allegation that Mr. Silverman was trained as an accountant. VR Compl. ¶ 66; CM Compl. ¶ 48.

[20] Holding an office at Refco does not make Mr. Silverman a control person of RCM. Even the CEO of a parent does not without more become a control person of a subsidiary. *See, e.g. In re Alstom SA*, 406 F. Supp. 2d at 495.

- Other defendants conceived of, orchestrated and supervised the conversion of RCM customer assets.  VR Compl. ¶¶ 255, 257, 263; CM Compl. ¶¶ 173, 175, 181.

Thus, not only are the allegations against Mr. Silverman entirely conclusory, they are belied by the plaintiffs' specific allegations against others.  *See, e.g., Hirsch,* 72 F.3d at 1092 ("General, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint.").

The allegations against Mr. Silverman also are belied by the Refco bond offerings and IPO SEC filings plaintiffs cite as part of their control person claim.  VR Compl. ¶¶507-08; CM Compl. ¶¶ 326-27.  Plaintiffs allege that those filings made much of the importance of the "Officer Defendants" to Refco's business and thus demonstrate their control.  Upon examination, however, those filings identified *others* as the managers and executive officers who ran Refco. Cashman Decl., Exhs. 1-3.  Mr. Silverman is not listed anywhere in those filings, because he was not an officer who ever had control over Refco's operations.  Once again plaintiffs' own allegations require dismissal of their claim against Mr. Silverman.

### B.     Plaintiffs Also Fail To Adequately Plead Culpable Participation By Mr. Silverman

The deficiencies in the control person allegations against Mr. Silverman are cemented by plaintiffs' failure to adequately plead "culpable participation."  As this Court held in *Global Crossing*:

> Section 20(a) contains the additional requirement that plaintiff allege culpable participation 'in some meaningful sense' by the controlling person in the fraud. Since culpable participation is an element, the PSLRA's heightened pleading requirements apply, and 'plaintiffs must plead with particularity facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct.'

322 F. Supp. 2d at 349 (internal citations omitted).  This means that "determination of § 20(a) liability requires an individualized determination of a defendant's control of the primary violator

as *well as a defendant's particular culpability.*"  *Id.* (emphasis added) (citing *Boguslavsky,* 159 F.3d at 720).

Yet, as explained in detail in Point I, *supra*, plaintiffs do not allege a single fact regarding Mr. Silverman's state of mind or motive, let alone particularized facts from which to infer that he was engaging in fraudulent conduct.  At most he is alleged to have had a reason to know of the inter-company transfers, but that does not equate to an exercise of control over company operations.

## **CONCLUSION**

Accordingly, the Complaint should be dismissed in its entirety as to Mr. Silverman, with prejudice.

Dated:  New York, New York
             February 21, 2008

Respectfully submitted,

HELLER EHRMAN LLP

By _____/s/ Richard Cashman_____
        Lawrence J. Zweifach (LZ-8641)
        lawrence.zweifach@hellerehrman.com
        Richard Cashman (RC-4769)
        richard.cashman@hellerehrman.com
        Eric Creizman (EC-7684)
        eric.creizman@hellerehrman.com
Times Square Tower
7 Times Square
New York, New York  10036-6524
Telephone:  (212) 832-8300
Facsimile:   (212) 763-7600

*Attorneys for Defendant Philip Silverman*