UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re REFCO CAPITAL MARKETS, LTD. BROKERAGE CUSTOMER SECURITIES LITIGATION | 06 Civ. 643 (GEL) |
| VR GLOBAL PARTNERS, L.P., et al., <br><br> Plaintiffs, <br><br> v. <br><br> PHILIP R. BENNETT, et al., <br><br> Defendants. | 07 Civ. 8686 |

**TONE GRANT'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO DISMISS**

1698579.1

**TABLE OF CONTENTS**

Preliminary Statement ........................................................................................................... 1

Facts   ..................................................................................................................................... 2

    A.    Allegations In The Complaints ............................................................................. 2

    B.    Procedural History ................................................................................................ 5

Argument ................................................................................................................................ 6

I.    PLAINTIFFS' CLAIMS UNDER SECTION 10(B) AND RULE 10B-5 MUST BE DISMISSED AGAINST MR. GRANT. ........................................................................ 6

    A.    The Section 10(b) Claims Must Be Dismissed Because Plaintiffs Have Not Alleged That RCM Engaged in Deceptive Conduct. .................................................................... 7

    B.    Plaintiffs Have Not Alleged Mr. Grant Committed a Primary Violation. ........................ 8

        1.    Plaintiffs Have Not Alleged Any Misstatements or Omissions by Mr. Grant During the Class Period. ............................................................... 8

        2.    Plaintiffs Fail to Allege a Deceptive Act by Mr. Grant. ............................... 11

        3.    Plaintiffs Do Not Allege Reliance on Any Statement or Act by Mr. Grant. ................. 12

II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(B) AND RULE 10B-16. ......................................................................................................... 13

III.    PLAINTIFFS' CONTROL PERSON CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT ALLEGED A PRIMARY VIOLATION. .......................... 15

Conclusion ............................................................................................................................ 16

## TABLE OF AUTHORITIES

### CASES

*A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97 Civ. 4978, 1999 WL 47223
(S.D.N.Y. Feb. 3, 1999) .................................................................................................. 10

*Boguslavsky v. Kaplan*, 159 F.3d 715 (2d Cir. 1998) ..................................................................... 15

*Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994) ...................... 14

*Gurfein v. Ameritrade, Inc.*, 411 F. Supp. 2d 416 (S.D.N.Y. 2006) ............................................... 11

*In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005) ........................................ 10, 12

*In re Converium Holding AG Sec. Litig.*, No. 04 Civ. 7892, 2006 WL 3804619
(S.D.N.Y. Dec. 28, 2006) ............................................................................................... 10

*In re Global Crossing Sec. Litig.*, 322 F. Supp. 2d 319 (S.D.N.Y. 2004) ....................................... 9

*In re Global Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910, 2005 WL 2990646
(S.D.N.Y. Nov. 7, 2005) ............................................................................................. 8, 15

*In re Homestore.com Inc. Sec. Litig.*, 252 F. Supp. 2d 1018 (C.D. Cal. 2003)
*aff'd sub nom Simpson v. AOL Time Warner Inc.*, 452 F.3d 1010 (9th Cir. 2006),
*vacated on other grounds*, 2008 WL 169406 (Jan. 22, 2008) .................................... 12

*In re IBM Sec. Litig.*, 163 F.3d 102 (2d Cir. 1998) .................................................................. 6, 10

*In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472 (S.D.N.Y. 2005) ................................................. 11

*In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig.*, No. 06 Civ. 643,
2007 WL 2694469 (S.D.N.Y. Sept. 13, 2007) .......................................................... 5, 7

*Kalnit v. Eichner*, 264 F.3d 131 (2d Cir. 2001) .............................................................................. 6

*Kittay v. Kornstein*, 230 F.3d 531 (2d Cir. 2000) ........................................................................... 6

*Koehler v. Bank of Bermuda (New York) Ltd.*, 96 Civ. 7885,
1998 WL 557595209, (S.D.N.Y. Sept. 2, 1998) ............................................................ 6

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005) ......................................................... 7

*Muller-Paisner v. TIAA*, 446 F. Supp. 2d 221 (S.D.N.Y. 2006) .................................................. 10

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) .......................................................................... 6

*Scone Invs., L.P., v. American Third Mkt. Corp.*, No. 97 Civ. 3802, 1998 WL 205338
(S.D.N.Y. Apr. 28, 1998) ................................................................................................ 7

*SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326 (S.D.N.Y. 2006) .......................... 9

*SEC v. PIMCO Advisors Fund Management LLC*, 341 F. Supp. 2d 454 (S.D.N.Y. 2004) ........... 9

*SEC v. Treadway*, 430 F. Supp. 2d 293 (S.D.N.Y. 2006) .............................................................. 9

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, No. 06-43,
    128 S.Ct. 761 (Jan. 15, 2008) ...................................................................................... 1, 6, 12

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) .......................................................... 8

*Yung v. Lee*, 432 F.3d 142, 146 (2d Cir. 2005) ............................................................................ 2

## **STATUTES AND RULES**

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 6

Fed. R. Civ. P. 9(b) ........................................................................................................................ 6

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ..................................................... 6-7

S.E.C. Rule 10b-5  ................................................................................................................ *passim*

S.E.C. Rule 10b-16  .............................................................................................................. *passim*

**Preliminary Statement**

Plaintiffs do not allege Tone Grant was an officer or director of Refco Capital Markets, Ltd. ("RCM"), the offshore brokerage in which Plaintiffs in these consolidated actions held accounts between 2001 and 2005. Nor did Mr. Grant hold any management position at Refco while plaintiffs held accounts at RCM. Plaintiffs do not allege they had any communications with Mr. Grant at any time. Nonetheless, Plaintiffs assert securities claims against Mr. Grant stemming from their inability to recover the value of their RCM accounts following Refco's October 2005 bankruptcy. Plaintiffs' claims against Mr. Grant fail for at least four reasons:

*First*, Plaintiffs have failed to allege that RCM engaged in any deceptive conduct with respect to their securities. RCM's practices concerning its use of customer securities were disclosed in the very documents Plaintiffs claim deceived them. As this Court observed in its September 13, 2007 decision dismissing the first class action complaint, the failure to allege deceit is fatal to a claim under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act").

*Second,* even if Plaintiffs could state a § 10(b) claim with respect to RCM's conduct, none of the alleged statements, acts or omissions that Plaintiffs claim deceived them can be attributed to Mr. Grant, who played no role in the management of the company during the period in which Plaintiffs held their accounts. Nor can Plaintiffs claim to have relied on anything Mr. Grant said or did. As the Supreme Court recently affirmed in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, No. 06-43, 128 S.Ct. 761 (Jan. 15, 2008), a purported "scheme to defraud" cannot be used as an end-run about the reliance element of a § 10(b) claim.

*Third*, Plaintiffs' claim under SEC Rule 10b-16 fails as a matter of law, because no private right of action exists for Rule 10b-16 claims. Even if a private right of action existed, a

claim could not lie against Mr. Grant, who was not alleged to have been a broker or dealer subject to the rule, and is not alleged to have had any role in RCM's disclosures to Plaintiffs.

*Finally*, in the absence of any primary violation of Section 10(b), Rule 10b-5 or Rule 10b-16, Plaintiffs' control person claims pursuant to Section 20 of the Exchange Act must be dismissed.

## **Facts**

### A. Allegations in the Complaints

The following allegations are taken from the Second Amended Consolidated Class Action Complaint in *In re Refco Capital Markets, Ltd., Brokerage Customers Securities Litigation*, No. 06 Civ. 643 ("Class Compl.") and the Complaint in *VR Global Partners, L.P., et al., v. Phillip R. Bennett, et al.*, No 07 Civ. 8686 ("VR Compl."). The two complaints are nearly identical and are referred to collectively as the "Complaints" in this Memorandum. For the purposes of a motion to dismiss, the Court must assume the truth of the allegations in the Complaints. *See Yung v. Lee*, 432 F.3d 142, 146 (2d Cir. 2005).

*Class Plaintiffs*

Plaintiffs Global Management Worldwide Limited, Arbat Equity Arbitrage Fund Limited, and Russian Investors Securities Limited (together, "Class Plaintiffs") are corporations incorporated under the laws of the Bahama Islands. Class Compl. ¶¶ 36-38. Class Plaintiffs opened brokerage accounts with RCM on July 4, 2004, May 11, 2005 and July 4, 2004, respectively. *Id.* RCM was, until it filed for bankruptcy in October 2005, a securities and foreign exchange broker and subsidiary of Refco, Inc. ("Refco"). Class Compl. ¶ 70.

Class Plaintiffs purport to represent a class of brokerage customers of RCM who placed securities with or held securities at RCM and/or Refco Securities, LLC ("RSL") between

2

October 17, 2000 and October 17, 2005 (the "Class Period") and who elected to contribute the proceeds of their claims to the Refco Private Action Trust. *See* Class Compl. ¶¶ 2; 34-38.

*VR Plaintiffs*

Plaintiffs VR Global Partners, L.P., Paton Holdings Ltd., VR Capital Group Ltd. and VR Argentina Recovery Fund, Ltd., (together, "VR") are limited liability companies, registered in Grand Cayman. VR Compl. ¶ 49. VR opened prime brokerage accounts with RCM starting in September 2001. VR Compl. ¶ 83.

*Defendants*

Class Plaintiffs assert securities fraud claims against two groups of defendants, described in the Complaint as the Officer Defendants and the THL Defendants. The Officer Defendants—Phillip R. Bennett, Santo C. Maggio, Tone N. Grant, Robert C. Trosten, and Richard N. Outridge—are all former officers of RCM and/or Refco. *See* Class Compl. ¶¶ 48-53. The THL Defendants include Thomas H. Lee Partners, L.P. and related entities (the "THL funds"), who purchased a controlling 57% equity stake in Refco for $507 million in August 2004. The THL Defendants also include individual defendants Thomas H. Lee, David V. Harkins, Scott L. Jaeckel and Scott A. Schoen, who became directors of Refco following the August 2004 transaction. *See* Class Compl. ¶¶ 54-62. VR sues the same defendants, with the addition of Grant Thornton LLP, Refco's auditor for the period 2002-2005, and the additional Officer Defendants William M. Sexton, Joseph J. Murphy, and Philip Silverman. VR Compl. ¶ 78; ¶¶ 60-66; 69-76.

*The Alleged Fraudulent Scheme*

Plaintiffs allege that they entered into customer agreements with RCM that provided that their securities would only be used in accordance with the particular customer's instructions. Class Compl. ¶¶ 4, 95-99; VR Compl. ¶¶ 4, 8, 83. Plaintiffs claim that in contravention of these

3

agreements, Refco's senior management improperly converted their securities to finance Refco's operational and business needs.  Class Compl. ¶¶ 4, 71-73, 103; VR Compl. ¶¶ 5, 104-10. According to the Complaints, the scheme worked as follows:

> Typically Refco senior management, including Defendants Maggio and Bennett, and other persons, acting on behalf of [affiliates] Refco Global Finance, RCC and RGL, having determined that a further injection of capital was required to meet Refco's operational and funding needs, would direct Refco employees…to sell, or cause to be sold…whatever amount of RCM customer securities was required to raise the required funds.

Class Compl. ¶ 105; VR Compl. ¶ 117.

The RCM customer securities were used to sustain Refco's business operations and fund the company's expenses through intercompany "loans."  Class Compl. ¶¶ 5, 106-12; VR Compl. ¶¶ 5, 21, 114-17, 119.  The proceeds from the sales of RCM customer securities were also used to finance transactions with other entities, such as Refco's $209 million purchase of Cargill Investor Services and $204 million loan to Suffolk LLC in 2005.  Class Compl. ¶ 108; VR Compl. ¶ 120.  Plaintiffs claim that RCM did not disclose or seek approval for the sale of its customers' securities.  Class Compl. ¶ 126; VR Compl. ¶¶ 10, 104.

*Refco Files for Bankruptcy*

On October 10, 2005, Refco announced that it had discovered a receivable in the amount of $430 million owed to Refco by RGHI, an entity then owned and controlled by Bennett.  Class Compl. ¶ 152; VR Compl. ¶ 236.  In the wake of this disclosure, many RCM customers, including VR, sought to withdraw securities and funds they had placed with RCM.  Class Compl. ¶ 153; VR Compl. ¶ 237.  Refco and its subsidiaries, including RCM, filed for bankruptcy one week later, on October 17, 2005.  Class Compl. ¶ 154; VR Compl. ¶ 238.

4

*Allegations Against Defendant Grant*

Mr. Grant was President and CEO of Refco Ltd., LLC ("RGL") from 1997 to 1998. Class Compl. ¶¶ 51, 173; VR Compl. ¶¶ 62, 264. Plaintiffs do not allege that Mr. Grant was an officer or director of RCM. Nor did Mr. Grant hold any management position at Refco while Plaintiffs held accounts at RCM. He remained a shareholder of RGHI until August 2004, when he sold his shares to Bennett. Class Compl. ¶ 51; VR Compl. ¶¶ 58, 62. Plaintiffs state that between 1999 and 2004 Mr. Grant "maintained his indirect interest in Refco … and was regularly briefed by Bennett and Maggio on the status of Refco's ongoing economic troubles." Class Compl. ¶ 176; VR Compl. ¶ 267. Mr. Grant is not alleged to have had any involvement with any Refco affiliate after August 2004.

### B.  Procedural History

*The First Class Complaint*

On September 5, 2006, Class Plaintiffs filed a complaint (the "First Class Complaint"), alleging that RCM used customer funds as part of a scheme to improve the appearance of Refco's financial health. Defendants moved to dismiss. This Court granted the motions to dismiss on September 13, 2007, ruling that the First Class Complaint "fail[ed] to allege deceptive conduct." *In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig.*, ("*In re RCM*") No. 06 Civ. 643, 2007 WL 2694469, at *5 (S.D.N.Y. Sept. 13, 2007). The Court granted Class Plaintiffs leave to replead.

*The VR Complaint and the Second Class Complaint*

On October 9, 2007, VR filed its Complaint, seeking to recover losses sustained when RCM was unable to redeem VR's accounts following RCM's bankruptcy filing. On November 20, 2007, this Court consolidated the VR complaint and the complaint filed in *Capital*

5

*Management Select Fund Ltd. v. Bennett et al.,* No. 07-8688, another individual customer action, with the putative class action. The Class Plaintiffs filed their Second Amended Complaint on December 21, 2007.

## Argument

To survive a motion for dismissal under Rule 12(b)(6), the complaint must allege facts that, if true, would create a judicially cognizable cause of action. *Kittay v. Kornstein*, 230 F.3d 531, 537 (2d Cir. 2000). However, "the complaint must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory; it is not up to the Court to create a new legal theory to support the Complaint." *Koehler v. Bank of Bermuda (New York) Ltd.*, 96 Civ. 7885, 1998 WL 557595, at *9 (S.D.N.Y. Sept. 2, 1998).

### I.  PLAINTIFFS' CLAIMS UNDER SECTION 10(B) AND RULE 10B-5 MUST BE DISMISSED AGAINST MR. GRANT.

In Count I of the Complaints, Plaintiffs allege that all defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. To state a claim under Rule 10b-5, Plaintiffs must allege 1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss and (6) loss causation. *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, No. 06-43, 128 S.Ct. 761, 769 (Jan. 15, 2008) (citing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)); *see also In re IBM Sec. Litig.,* 163 F.3d 102, 106 (2d Cir. 1998).

"A complaint asserting securities fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b), which requires fraud to be alleged with particularity." *Kalnit v. Eichner*, 264 F.3d 131,138 (2d Cir. 2001); *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). *See also* Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4

(complaint must "specify each statement alleged to have been misleading [and] the reasons why the statement is misleading"). While "[a]ny fraud must be pled with particularity … the rule is applied assiduously to securities fraud." *Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 168 (2d Cir. 2005). *See also Scone Invs., L.P., v. American Third Mkt. Corp.*, No. 97 Civ. 3802, 1998 WL 205338, at *4 (S.D.N.Y. Apr. 28, 1998) ("Courts are especially vigilant in applying Rule 9(b) where a complaint is made against multiple defendants.").

Plaintiffs allege both that defendants made deceptive statements regarding RCM's use of their securities, and that defendants engaged in deceptive conduct concerning RCM's sale of customer securities during the Class Period. Because RCM did not engage in deceptive conduct, the Section 10(b) claims against all defendants fail as a matter of law. And because Plaintiffs fail to allege Mr. Grant made any deceptive statements or acts upon which they relied, the claims against him must be dismissed.

### A. The Section 10(b) Claims Must Be Dismissed Because Plaintiffs Have Not Alleged That RCM Engaged in Deceptive Conduct.

Class Plaintiffs have failed to cure the defect this Court identified in dismissing their first complaint: they do not allege deceptive conduct. *In re RCM*, 2008 WL 2694469, at *12. VR's Complaint is equally defective. As shown Section I of the TH Lee Defendants' Memorandum of Law in support of their Motion to Dismiss ("THL Mem.")[1], Plaintiffs have not alleged that RCM represented to them that it would not sell or otherwise use customer securities, or that it represented that it was subject to regulations that would prohibit it from using customer assets. *See* THL Mem. § 1. RCM's trade confirmations expressly permitted RCM to "sell, pledge, hypothecate, assign, invest or use" securities deposited with it. *See id.* Similarly, RCM's customer agreements authorized it to "loan, pledge, hypothecate or otherwise use or dispose of"

---

[1] Mr. Grant hereby adopts and incorporates these arguments by reference.

a customer's margin "until settlement in full" of that customers' margin transactions. *See id.* Contrary to Plaintiffs' Rule 10b-16 claim, the customer agreements *did* disclose the nature of the interests or liens RCM claimed in customer collateral. *See id.* RCM's monthly account statements were not misleading, because they accurately reflected the securities to which RCM customers were entitled. *See id.* Finally, Plaintiffs' alleged oral misrepresentations are too vague to show reasonable reliance. *See id.* Because Plaintiffs cannot show deception, their claims under Section 10(b) and Rule 10b-5 against all the defendants must be dismissed.

### B. Plaintiffs Have Not Alleged Mr. Grant Committed a Primary Violation.

#### 1. Plaintiffs Have Not Alleged Any Misstatements or Omissions by Mr. Grant During the Class Period.

Plaintiffs allege that defendants "made untrue statements of material fact and omitted to state material facts necessary to make the statements not misleading" in violation of Rule 10b-5. Class Compl. ¶ 367; VR Compl. ¶ 542. To make a false statements claim under Rule 10b-5(b) against Mr. Grant, plaintiffs must identify a specific misleading statement or omission by or attributable to Mr. Grant. *See, e.g.*, *In re Global Crossing, Ltd. Sec. Litig.,* No. 02 Civ. 910, 2005 WL 2990646, at *5 (S.D.N.Y. Nov. 7, 2005).

"[A] defendant must actually make a false or misleading statement in order to be held liable under Section 10(b)." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998) (internal quote and citation omitted). Moreover, the misrepresentation must have been "attributed to that [defendant] at the time of its dissemination." *Id.* Courts have found that a statement may be attributed to a defendant "where the defendant's participation is substantial enough that s/he may be deemed to have made the statement, and where investors are sufficiently aware of defendant's participation that they may be found to have *relied* on it as if the statement had been attributed to the defendant." *In re Global Crossing Sec. Litig.,* 322 F. Supp. 2d 319,

333 (S.D.N.Y. 2004). *See also SEC v. Treadway*, 430 F. Supp. 2d 293, 323 (S.D.N.Y. 2006) ("a defendant can be liable under Section 10(b) for material misstatements or omissions as long as he personally made the misleading statement or omission, was primarily responsible for communications with investors and industry analysts, and was involved in the drafting, producing, reviewing and/or disseminating the false/misleading statements") (internal citations and quotations omitted). In contrast, courts decline to attribute a statement to a defendant where the complaint fails to allege that the defendant was responsible for or participated in the issuance of the statement. *See SEC v. PIMCO Advisors Fund Management LLC*, 341 F. Supp. 2d 454, 466-67 (S.D.N.Y. 2004); *SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 332-33 (S.D.N.Y. 2006).

Plaintiffs allege they were deceived by the following statements or omissions:

- Representations by Refco representatives that led Plaintiffs to believe customers' securities would be safeguarded in custodial accounts. *See* Class Compl. ¶¶ 8, 76, 83, 90; VR Compl. ¶¶ 4, 8, 85-86.

- Paper and online account statements identifying the securities held in customers' accounts at RCM. *See* Class Compl. ¶¶ 11, 129-132; VR Compl. ¶¶ 11, 157-58.

- Material omissions and misrepresentations in RCM's financial statements. *See* Class Compl. ¶¶ 112-118; VR Compl. ¶¶ 125; 180-221.

- Defendants' failure to disclose RCM's sales of customer securities. *See* Class Compl. ¶¶ 151; VR Compl. ¶¶ 5, 118 .

As shown in Section I.A above, none of these statements or omissions was deceptive. Moreover, they cannot form the basis of a § 10(b) violation against Mr. Grant, because Plaintiffs do not allege he made any of these statements or omissions. Mr. Grant is not alleged to have had any communications with RCM customers during the Class Period. Nor is he alleged to have played any role in the preparation of RCM's customer agreements or account statements. While VR conclusorily alleges that all Officer Defendants participated in the issuance of Refco's and

9

RCM's financial statements, *see* VR Compl. ¶ 268, Mr. Grant was not an officer of RCM nor of any Refco entity during the Class Period, and Plaintiffs do not allege he had direct involvement in RCM's day-to-day operations. Mr. Grant's ownership interest in RGHI is insufficient for him to incur liability for RCM's statements. *See In re Converium Holding AG Sec. Litig.*, No. 04 Civ. 7892, 2006 WL 3804619, at *12 (S.D.N.Y. Dec. 28, 2006) ("The fact that [defendant] owned [subsidiary corporation] during the relevant period …does not demonstrate the level of public involvement in the misstatements necessary … to incur Section 10(b) liability.").[2]

Accordingly, none of the alleged misrepresentations or omissions may be attributed to Mr. Grant. *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 467 (S.D.N.Y. 2005) (dismissing § 10(b) claims against executives because the complaint failed to allege that either of the two insiders had made statements, had a role in the preparation of financial statements, or had signed any financial reports).

Nor did Mr. Grant owe a fiduciary duty to RCM's customers that would obligate him to make disclosures to them. *See Muller-Paisner v. TIAA*, 446 F. Supp. 2d 221, 228 (S.D.N.Y. 2006) (duty to disclose arises where fiduciary or "similar relation of trust and confidence" exists) (internal quotes and citations omitted). Under New York law, a controlling shareholder, officer or director of a corporation owes no fiduciary duty to the corporation's customers. *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.,* No. 97 Civ. 4978, 1999 WL 47223, at *6 (S.D.N.Y. Feb. 3, 1999) (defendant's status as 50% shareholder, officer and director of investment fund did not create a fiduciary relationship with investors in the fund).

---

[2] Class Plaintiffs claim that while Mr. Grant was CEO of RGL he made false statements "insisting that 'there was no problem at Refco' " in the wake of the Asian crisis. Class Compl. ¶ 174. Even if these statements were actionable, Mr. Grant cannot be liable for them because they fall outside the Class Period. *See In re IBM Sec. Litig.,* 163 F.3d at 107.

10

Because Plaintiffs have not identified any material misstatement or omission that may be attributed to Mr. Grant during the Class Period, they cannot state a claim against him under Rule 10b-5(b).

### 2. Plaintiffs Fail to Allege a Deceptive Act by Mr. Grant.

Plaintiffs also allege that defendants "carried out a plan, scheme and course of conduct" that was intended to fraudulently sell their securities, misappropriate the proceeds and induce them to place their securities with RCM. Class Compl. ¶ 366; VR Compl. ¶ 541. To state a claim for scheme liability against Mr. Grant under Rule 10b-5(a) or (c), Plaintiffs must allege that he "(1) committed a manipulative or deceptive act, (2) in furtherance of the alleged scheme to defraud, (3) scienter, and (4) reliance." *Gurfein v. Ameritrade, Inc.*, 411 F. Supp. 2d 416, 425 (S.D.N.Y. 2006) (internal quotes and citations omitted). *See also In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 493 (S.D.N.Y. 2005) (plaintiffs must identify "what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and what effect the scheme had on investors in the securities at issue"). Plaintiffs fail to meet this standard.

Plaintiffs do not allege any manipulative or deceptive conduct by Mr. Grant in furtherance of the alleged scheme to sell RCM Customer assets.[3] Plaintiffs claim that RCM customers' securities "were fraudulently converted by RCM, at the direction of Bennett, Maggio, and Refco Senior Management … to sustain Refco's business operations and fund Refco's expenses and other obligations incurred by Refco and its subsidiaries." Class Compl. ¶ 107; VR Compl. ¶ 119. Mr. Grant had no management position at RCM or any Refco entity during the

---

[3] VR alleges that Mr. Grant and other defendants participated in a second scheme, called the "RGHI scheme," which caused Refco's financial statements to be misleading. The alleged RGHI scheme is the subject of another class action pending before the Court, *In re Refco Inc. Sec. Litig.*, No. 05 Civ. 8626. As explained below, VR cannot state a 10(b) claim based on Refco's or RCM's financial statements, because it did not purchase or sell securities of either company.

11

period Plaintiffs maintained accounts at RCM.  Plaintiffs do not allege that he committed a single deceptive act in furtherance of the alleged scheme to convert their assets or those of the putative class members.[4]

Nor do Plaintiffs allege that Mr. Grant devised or orchestrated the "scheme" to sell their assets—despite having ample opportunity to plead (and replead) their claims.  *See* Class Compl. ¶ 49; VR Compl. ¶ 61 ("Bennett directly conceived, orchestrated and supervised the illegal theft of RCM customers' assets"); Class Compl. ¶ 50; VR Compl. ¶ 63 ("Maggio ran the brokerage operations of RSL and RCM and directly participated in, orchestrated and supervised the fraudulent conversion of RCM customer assets").  Mere allegations that a defendant "was aware of and participated in" the scheme are insufficient to state a claim under Rule10b-5(a) or (c).  *See In re Homestore.com Inc. Sec. Litig.,* 252 F. Supp. 2d 1018, 1035 (C.D. Cal. 2003), *aff'd sub nom Simpson v. AOL Time Warner Inc.,* 452 F.3d 1010 (9th Cir. 2006), *vacated on other grounds*, 2008 WL 169406 (Jan. 22, 2008).

### 3. Plaintiffs Do Not Allege Reliance on Any Statement or Act by Mr. Grant.

Plaintiffs' Section 10(b) claim fails for the additional reason they do not allege reliance on any statement or act by Mr. Grant.  In *Stoneridge*, the Supreme Court found that no primary liability under Section 10(b) existed against defendants whose "deceptive acts were not communicated to the public," because the plaintiff investor could not show reliance.  *Stoneridge*, 128 S.Ct. at 769.  The Court specifically held that, even where a defendant committed a deceptive act, the invocation of a fraudulent scheme under Rule 10-b5(a) or (c) "does not answer the objection that [plaintiff] did not in fact rely upon [defendants'] *own* deceptive conduct."  *Id.* at 770 (emphasis added).  Here, Class Plaintiffs allege only that Mr. Grant was aware of a

---

[4] Plaintiffs may not rely on Grant's statements regarding the Asian financial crisis because "a plaintiff may not seek to hold a defendant liable for misleading statements under subsections (a) and (c) by alleging that the defendant …was a participant in a scheme through which the statements were made." *Alstom,* 406 F. Supp. 2d at 475.

12

scheme carried out by other defendants after he left his executive positions at Refco. *See* Class Compl. ¶¶ 175, 176, 335.

While VR claims that it relied on upon RCM and Refco's financial statements in choosing to open and maintain accounts at RCM, *see* VR Compl. ¶¶ 90-94, it has no standing to bring a 10b-5 claim arising out of these financial statements. As shown in the THL Defendants' brief, a plaintiff in a private Section 10(b) action must be a "purchaser or seller" of the securities that form the basis of the alleged deceptive conduct. *See* THL Mem. § VI.[5] Because VR does not allege that it purchased or sold securities of RCM or Refco, it cannot premise a 10b-5 claim on alleged misstatements in either company's financial statements. In any event, none of the alleged misstatements in RCM or Refco's financials may be attributed to Mr. Grant, because he was not an officer or director of either company during the period in which VR held accounts at RCM, and is not alleged to have participated in the creation of their financial statements. *See supra* at 10.

Since Plaintiffs have not alleged that they relied on any deceptive statements, omissions or acts by Mr. Grant, they cannot meet the required element of reliance, and the § 10(b) claim against him must be dismissed.

## II.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(B) AND RULE 10B-16.

In Count II of the Complaints, Plaintiffs allege that the Officer Defendants omitted to make disclosures required by Rule 10b-16 of the Exchange Act, 17 C.F.R. § 240.10b-16. These claims must also be dismissed. As shown in Section II of Philip Silverman's Memorandum of Law in Support of his Motion to Dismiss ("Silverman Mem.")[6], Plaintiffs' Rule 10b-16 claims

---

[5] Mr. Grant hereby adopts and incorporates these arguments by reference.
[6] Mr. Grant hereby adopts and incorporates these arguments by reference.

13

fail because there is no implied private right of action under Rule 10b-16. *See* Silverman Mem., § II.

Even if such a private right of action existed, it could not asserted against Mr. Grant (or any of the other Officer Defendants) because the regulation, by its terms, applies only to broker-dealers. *See id.* There are no allegations in the Complaints that Mr. Grant was a broker or dealer, or even that he was an officer of RCM. The Exchange Act's definitions of broker and dealer do not extend to officers of affiliates of broker-dealers. *See id.* VR's Rule 10b-16 claim fails for the additional reason that it is untimely, because VR brought suit more than five years after RCM allegedly failed to make the required disclosures. *See id*.

Finally, Plaintiffs' Rule 10b-16 claims against Mr. Grant fail for the same reasons as their Rule 10b-5 claims – they do not allege any omissions attributable to Mr. Grant. Like a 10b-5 claim, any private right of action under Rule 10b-16 cannot expand the scope of liability under the enabling statute, Section 10(b). *See Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 173 (1994) ("[T]he private plaintiff may not bring a 10b-5 suit against a defendant for acts not prohibited by the text of § 10(b)"). Section 10(b) imposes liability only on a person who makes a material misstatement or omission or commits a manipulative act. *Id.* at 177. As set forth above, Mr. Grant was not an officer of RCM, was not primarily responsible for communicating with RCM's customers, and did not participate in the drafting of RCM's communications with its customers. Accordingly, none of RCM's omissions may be attributed to him, and the Rule 10b-16 claim must be dismissed.

### III. PLAINTIFFS' CONTROL PERSON CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT ALLEGED A PRIMARY VIOLATION.

In Count III of the Complaints, Plaintiffs assert claims for control person liability under § 20(a) of the Exchange Act. To state a § 20(a) control person claim, a plaintiff must show: "(1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) 'that the controlling person was in some meaningful sense a culpable participant' in the primary violation." *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (citation omitted). *See also In re Global Crossing*, 2005 WL 2990646, at *7.

Plaintiffs' Section 20(a) claims must be dismissed because, as set forth above, they have failed to allege a primary violation of Section 10(b), Rule 10b-5, or Rule 10b-16.

**Conclusion**

For the foregoing reasons and the applicable reasons contained in co-defendants' memoranda in support of their Motions to Dismiss, the Court should dismiss the claims asserted against Tone Grant with prejudice.

Respectfully submitted,

Dated: February 21, 2008
     New York, New York          ZUCKERMAN SPAEDER LLP

s/Norman L. Eisen
Norman L. Eisen (admitted *pro hac vice*)
Laura E. Neish (LN-0040)
1540 Broadway, Suite 1604
New York, New York 10036-4039
(212) 704-9600

-and-

HANNAFAN & HANNAFAN, LTD.
Blake T. Hannafan (admitted *pro hac vice*)
Michael T. Hannafan (admitted *pro hac vice*)
One East Wacker Drive, Suite 2800
Chicago, Illinois 60601

Attorneys for Tone N. Grant