UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re REFCO CAPITAL MARKETS, LTD. BROKERAGE CUSTOMER SECURITIES LITIGATION | ELECTRONICALLY FILED<br><br>06 Civ. 643 (GEL) |
| VR GLOBAL PARTNERS, L.P., PATON HOLDINGS LTD., VR CAPITAL GROUP LTD., AND VR ARGENTINA RECOVERY FUND, LTD.,<br><br>Plaintiffs,<br><br>-against-<br><br>PHILLIP R. BENNETT, WILLIAM M. SEXTON, SANTO C. MAGGIO, JOSEPH J. MURPHY, PHILIP SILVERMAN, ROBERT C. TROSTEN, RICHARD N. OUTRIDGE, TONE GRANT, REFCO GROUP HOLDINGS, INC., THOMAS H. LEE PARTNERS, L.P., THOMAS H. LEE ADVISORS LLC., THL MANAGERS V, LLC., THL EQUITY ADVISORS V, LLP., THOMAS H. LEE EQUITY FUND V, L.P., THOMAS H. LEE PARALLEL FUND V, L.P., THOMAS H. LEE EQUITY (CAYMAN) FUND V, L.P., THOMAS H. LEE INVESTORS LIMITED PARTNERSHIP, 1997 THOMAS H. LEE NOMINEE TRUST, THOMAS H. LEE, DAVID V. HARKINS, SCOTT L. JAECKEL, SCOTT A. SCHOEN, AND GRANT THORNTON LLP,<br><br>Defendants. | Applicable only to:<br>07 Civ. 8686 (GEL)<br><br>Hon. Gerard E. Lynch |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
<u>GRANT THORNTON LLP'S MOTION TO DISMISS</u>**

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

*Attorneys for Defendant Grant Thornton LLP*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT .........................................................................................................................1

    I.      VR Global lacks standing to sue...............................................................................1

          A.      VR Global cannot establish standing under *Blue Chip Stamps* ...................1

          B.      RCM—not VR Global—is the correct party to assert these claims ............3

    II.     VR Global has failed to satisfy the pleading requirements of Rule 9(b).................5

    III.    VR Global's allegations do not support a compelling inference of scienter ...........7

    IV.    VR Global's theory of loss causation makes no sense ............................................8

CONCLUSION....................................................................................................................10

**INTRODUCTION**

In its opposition brief, VR Global has still failed to explain how it could possibly have standing to sue. Its basic theory is that its securities were *stolen*—converted by the Refco entities and sold for those entities' benefit—not that it was injured by virtue of its *own* "purchase or sale." Thus whatever claims it has must lie in state law, not in the federal securities laws. Moreover, to allow VR Global to sue for injury suffered when other Refco entities failed to repay loans to RCM would be an end-run around the RCM bankruptcy proceeding.

Even if VR Global had standing to sue, its claim against Grant Thornton would still be fatally deficient. VR Global still has not provided the details required under Rule 9(b) to put Grant Thornton on notice as to the precise nature of the claims against it or the audit steps it should have taken to discover RCM's scheme. Nor has it provided sufficient allegations of scienter and loss causation. VR Global still fails to explain how the RCM intercompany loans were uncollectible, and it certainly has not alleged that Grant Thornton knew or should have known of that uncollectibility. And VR Global yet again ignores the fact that it was the Refco entities, not Grant Thornton, that converted the deposited assets and caused its alleged losses. For all these reasons, the claim against Grant Thornton should be dismissed with prejudice.

**ARGUMENT**

**I.     VR Global lacks standing to sue.**

    **A.     VR Global cannot establish standing under *Blue Chip Stamps*.**

Despite its lengthy response, VR Global has failed to cite a single case where a party that merely placed or held securities in reliance on an alleged fraud was afforded standing to sue under the federal securities laws. Pl. Mem. 42-47. This absence of authority is not surprising: the securities laws were never intended to reach the type of conduct that caused VR Global's

1

alleged losses. On the contrary, the judicially crafted private cause of action—expressly limited by the Supreme Court in *Blue Chip Stamps*—is aimed to protect only those parties that are induced by false information to buy or sell securities. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749 (1975). As the Second Circuit recognized over 50 years ago, limits on the private right of action under Rule 10b-5 were necessary to avoid the type of overreaching claims typified by this action, *see Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952), and the Supreme Court fully agreed with this reasoning in *Blue Chip Stamps*. Thus there is no private right of action for a party that merely placed or held securities with someone who later stole them. *See* GT Mem. 8-10.

Although VR Global argues that the sale of its securities **by RCM** satisfies the purchaser/seller rule, Pl. Mem. 42-47, the authority it cites for that proposition is inapposite. For example, *SEC v. Zandford* did not deal with private party standing at all, but rather concerned an SEC enforcement action against a broker who stole the proceeds of his customer's sales. 535 U.S. 813 (2003). The question was whether the fraud was "in connection with" the purchase or sale of a security for purposes of establishing a violation of Rule 10b-5. *Id.* at 820-25.[1] As the Supreme Court has made clear, that "in connection with" requirement is entirely distinct from the *Blue Chip Stamps* standing rule. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 84 (2006) (*Blue Chip Stamps* "purported to define the scope of a private right of action under Rule 10b-5—not to define the words 'in connection with the purchase or sale'").

The other cases cited by VR Global also miss the mark. In *Caiola v. Citibank, N.A.*, the "key fact" in the court's standing analysis was that the broker's unauthorized trading was "on

---

[1] VR Global's reliance on the comments of counsel in the *Zandford* oral argument is misguided and misplaced. *See Inv. Co. Inst. v. Camp*, 401 U.S. 617, 628 (1971) ("Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands."). Moreover, the customer in *Zandford* was injured when he purchased and sold securities through a broker, who then stole the proceeds. Plaintiffs here claim only that they "placed" or "held" securities with RCM in reliance on alleged misstatements.

2

[the customer's] behalf" rather than for the broker's own benefit. 295 F.3d 312, 324 (2d Cir. 2002). Indeed, all the cases upon which VR Global relies to avoid the purchaser-seller rule involved trading activities by brokers—authorized or not—that were for their customers' benefit. *See* Pl. Mem. 42-45.[2] Here, by contrast, VR Global alleges that its securities **were converted first**—and then sold for the benefit of the Refco entities themselves. *E.g.*, Compl. ¶¶ 4-5.

The fact that the securities laws do not confer standing here is entirely consistent with the purpose of those laws, which is to "insure honest securities markets and thereby promote investor confidence." *United States v. O'Hagan*, 521 U.S. 642, 658 (1997); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (Rule 10b-5 does not "provide investors with broad insurance" against all losses). Fraud is not deterred by allowing claims that do not arise out of a fraudulently induced purchase or sale and that are only remotely tethered to the securities market. *See Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 32 (2d Cir. 2004); *see also Blue Chip Stamps*, 421 U.S. at 747 (class of plaintiffs is limited "to those who have at least dealt in the security to which the prospectus, representation, or omission relates").

Once again, VR Global's claim is really about theft. It would be no different if the property that RCM allegedly converted had been cash or fine art. VR Global lacks standing to sue as a purchaser or seller of securities, and thus its Section 10(b) claim must be dismissed.

**B.    RCM—not VR Global—is the correct party to assert these claims.**

VR Global has likewise alleged no facts showing that it—as opposed to RCM itself—is the correct party to assert whatever claims it may have arising from the Refco entities' failure to

---

[2] For example, VR Global cites *Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618 (S.D.N.Y. 2004), in support of its standing claims. But in *Fezzani*, the court noted that the key fact supporting standing was that the purchases were made **on the client's behalf**, not that they were unauthorized. Indeed, the court found it "irrelevant that [the client] did not authorize those purchases." *Id.* at 638. Here, the securities were **stolen**, not sold on VR Global's behalf.

3

pay back the intercompany loans.  Because VR Global's theory of loss is ultimately based on the failure of Refco affiliates to repay what they owed to RCM (Compl. ¶¶ 116-17, 119), it necessarily follows that recovery on those loans by the RCM estate would have cured VR Global's alleged injury.  Thus the claims belong to RCM.  Indeed, as VR Global alleged in the complaint, it was not the only victim of RCM's fraudulent scheme:  other RCM customers also fell victim in the same manner.  *Id*. ¶¶ 5, 242.

VR Global argues that its injury is "separate and distinct" from that of other creditors because it involves specific securities.  Pl. Mem. 47-48.  Yet VR Global has not identified any specific security or asset it lost.  Indeed, its complaint makes clear that its assets were commingled with those of other customers.  *E.g.*, Compl. ¶ 171.[3]  And VR Global's argument that each customer placed a different ***amount*** of securities with RCM (Pl. Mem. 47) confuses "injury" with "damages" and ignores the nature of derivative actions, which—by definition—focus not on the degree of loss to secondary claimants but on the nature of the legal injury.  *See Kamerman v. Steinberg*, 123 F.R.D. 66, 68 (S.D.N.Y. 1988) (relevant inquiry is whether the cause of action "belongs to the corporation").

VR Global also fails to demonstrate that its injury was materially different from what RCM suffered when the intercompany loans were not repaid.  The similarity of the injury is what matters in determining who can assert the claim.  *Jackson Nat'l Life Ins. Co. v. Ligator*, 949 F. Supp. 200, 203-07 (S.D.N.Y. 1996) (creditor retains individual right to sue only "where the plaintiff sustains a direct injury that is separate and distinct from the injury suffered by the corporation").  For that reason, none of the cases VR Global cites on this point has any

---

[3] Moreover, in making this argument, VR Global concedes implicitly that other RCM "securities customers" possess the same injury, and it makes no serious effort to distinguish the cases rejecting individual standing where a plaintiff's injuries could have been cured through recovery by the bankrupt debtor.

4

application here (Pl. Mem. 48-49):  in each case, the plaintiffs did not share the same injury as the estate.  On this basis as well, VR Global's claim should be dismissed for lack of standing.

## II.    VR Global has failed to satisfy the pleading requirements of Rule 9(b).

Despite the clear directives in this Court's previous opinion, VR Global's complaint leaves Grant Thornton to guess how its actions violated Section 10(b).  As this Court has explained, a defendant is "entitled to know what deceptive or manipulative acts were performed and in what sense they were deceptive."  *In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*, No. 06 Civ. 643, 2007 WL 2694469, at *10 (S.D.N.Y. Sept. 13, 2007) (GEL) (quotation marks omitted).  VR Global's allegations concerning Grant Thornton do not cure the fundamental weaknesses identified by this Court in dismissing the initial RCM class complaint.

VR Global's opposition brief does not point to any allegations showing how Grant Thornton's audit opinions were connected to the theft and loss alleged by VR Global.  In the first instance, its attempt to highlight details surrounding the RGHI Receivable transactions (*e.g.*, Pl. Mem. 101-02) is off-point:  this lawsuit centers on RCM's alleged conversion of VR Global's securities, not on the aspects of Refco's fraud related to RGHI.  In fact, VR Global's claim cannot be based on the RGHI Receivable fraud, as the causal relationship between that fraud and its own loss is both unclear and hopelessly attenuated.  *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 769 (2008) (denying securities claim that rested on "an indirect chain that we find too remote for liability"); *Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1177 (10th Cir. 2006) (securities complaint must "sufficiently specify the reasons why [the audit] opinion was false or misleading in the context of its stated basis").

As for the RCM conversion scheme itself, VR Global has utterly failed to supply the details required by Rule 9(b). Indeed, VR Global does not even contest this in its opposition, and it leaves the many holes in its complaint unfilled. *See* GT Mem. 14-16 (no details regarding which affiliates lacked the intent to repay the loans; whether, when, or how Grant Thornton should have uncovered those intentions; or which affiliates were insolvent and which could not pay for other reasons). And the "uncollectibility" of the loans is certainly not a "red herring," as VR Global contends. Pl. Mem. 106. As this Court has recognized, this concept is central to any theory based on the RCM intercompany loans. *In re Refco Capital Mkts.*, 2007 WL 2694469, at *10. Without the "uncollectibility" of the loans, VR Global would have no claim that RCM's financial statements were misleading in the first place.

VR Global cannot save its claim merely by stating that its securities were sold in contravention of the customer agreements. Pl. Mem. 106. In the first place, its failure to supply any details regarding these alleged wrongful transactions makes it impossible to glean whether and how the agreements were violated. For example, VR Global contends that it did not have a margin balance with RCM ***at the time of the Refco bankruptcy***—and thus that at that time, RCM was not permitted to have any securities deposited by VR Global out on loan. Compl. ¶ 110. But VR Global does not say anything about whether it had a margin balance ***when the securities were hypothecated and the loans were made***—a margin balance that may have made the hypothecation perfectly acceptable under the agreements. *See id*. ¶ 108. And regardless, VR Global has provided no allegations suggesting that a violation of the customer agreements had already occurred when Grant Thornton issued its audit opinions for RCM.

Finally, as Grant Thornton pointed out in its opening brief, VR Global has failed to identify any specific auditing steps that were required but not taken in respect to RCM. Like the

6

complaint, VR Global's opposition brief regurgitates general platitudes and various provisions of GAAS that should have been followed.  *E.g.*, Pl. Mem. 114.  But this is not enough to put Grant Thornton on notice of how its audits were deficient and why its audit opinions were misleading.  *See Deephaven*, 454 F.3d at 1177.  Thus, the claim against Grant Thornton fails under Rule 9(b).

**III.    VR Global's allegations do not support a compelling inference of scienter.**

As the Supreme Court has recently explained, VR Global must plead facts supporting an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent," and courts are required to consider plausible opposing inferences as well.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2505, 2510 (2007).  "[P]laintiffs must allege that facts which come to a defendant's attention would place a reasonable party in defendant's position on notice of wrongdoing."  *In re Refco Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 649 (S.D.N.Y. 2007) (citation omitted).  It follows that the critical facts are those that fell within the defendant's range of vision.  *Id.* (red flags may be suggestive of fraud, "but only to those who were or should have been aware of them"); *id.* at 651 (supposed red flags do not give rise to an inference of scienter if they were "outside defendants' range of vision").

Despite the clear command of *Tellabs*, VR Global fails to show how Grant Thornton—which was itself the principal target of management's deceit—could have possessed an "actual intent to aid in the fraud being perpetrated."  *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000).  VR Global's brief does not explain how Grant Thornton could possibly have been aware of the Refco entities' alleged inability or lack of intent to repay the intercompany loans.  While VR Global refers to several "red flags" that, in its view, should have put Grant Thornton "on notice" of the fraud (Pl. Mem. 107-15), VR Global cannot connect any of these supposed signals to Grant Thornton's audit opinions on RCM's financial statements and the alleged uncollectibility

7

of the intercompany loans. This omission is critical, because VR Global must tie Grant Thornton's state of mind to the fraud that actually caused its losses. *Rothman*, 220 F.3d at 98.[4]

Even if the intercompany loans were "substantial and recurring" (Pl. Mem. 112), nothing about the size, nature, or frequency of these loans necessarily put Grant Thornton on notice that they were uncollectible or part of an ongoing theft. Nor does VR Global allege that Grant Thornton knew that the customer agreements precluded the use of the assets elsewhere in the organization. Thus, VR Global's contention that the loans had no business purpose or were otherwise suspect (Pl. Mem. 112) does not mean they would have appeared improper or uncollectible to Grant Thornton. Again, VR Global still has not explained exactly when and how these loans became uncollectible in the first place. *See supra* at 7. And while VR Global alleges that Grant Thornton should have monitored RCM's compliance with the customer agreements (Compl. ¶ 448), it points to no specific auditing provisions requiring Grant Thornton to do so, particularly given that compliance with the agreements apparently required ongoing information about the state of each customer's current margin balance (*id.* ¶ 108).[5]

### IV. VR Global's theory of loss causation makes no sense.

VR Global's response on loss causation fails to show how Grant Thornton can possibly be the legal cause of VR Global's alleged losses. Even if Grant Thornton's audit opinions somehow induced VR Global to place its securities with RCM—which would at most be

---

[4] For this reason, VR Global's discussion of scienter in respect to the RGHI fraud is misplaced. VR Global has never alleged that it was the RGHI Receivable that made the RCM intercompany loans uncollectible. And in any case, Grant Thornton has **not** conceded scienter with respect to the RGHI fraud. *See* Pl. Mem. 107. To the contrary, Grant Thornton continues to believe that no plaintiff has adequately alleged scienter, but it has elected not to occupy the Court's time on this motion with an issue on which it has already expressed a view. GT Mem. 20 n.2.

[5] VR Global makes a passing attempt to defend its allegations regarding "motive and opportunity" (Pl. Mem. 115-17), but they also cannot support a strong inference of scienter. An interest in generating fees—without more—is not a sufficient "motive" to establish scienter. *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 621 (S.D.N.Y. 2005). And the fact that Grant Thornton audited more than one Refco entity does not change this analysis. An auditor that audits a wholly owned subsidiary in addition to the parent is not serving in a "dual capacity" under the caselaw. Pl. Mem. 116-17 (citing cases where firm served as both auditor and consultant).

8

"transaction causation"—VR Global still must allege that Grant Thornton's audit opinions were the reason the transaction turned out to be a losing one. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994). It has failed to carry that burden.[6]

It is not enough for VR Global to speculate that RCM's scheme was foreseeable. Nothing that Grant Thornton did or said made it "necessary or inevitable" that RCM would convert customer assets and loan the proceeds to other Refco entities that would later fail to repay. *See Stoneridge*, 128 S. Ct. at 770. And VR Global is simply wrong with respect to the supervening cause issue. A supervening event can indeed be established as a matter of law based on the pleadings. *See Bloor*, 754 F.2d at 62. Grant Thornton does not assert that there can be only one legal cause for an injury, but rather relies upon the long-established doctrine that a supervening cause breaks the chain of causation and relieves from liability those parties whose acts preceded the supervening act. *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 233-34 (S.D.N.Y. 2006) ("A plaintiff fails to establish loss causation if an intervening cause supersedes the effects of the material misrepresentation or omission."). Thus, VR Global's citation to cases involving the analysis of concurrent—as opposed to supervening—causes completely misses the point and cannot cure the causation problem in its pleading.[7]

---

[6] There is no legal rule preventing dismissal of a securities claim based on a failure to plead loss causation. *Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 174 (2d Cir. 2005) ("[A] plaintiff's claim fails when it has not adequately ple[aded] facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events."). Where, as here, the allegations show that loss causation cannot be established, dismissal is warranted. *See Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir. 1985) (granting judgment on the pleadings because theft of corporate funds by officers "was hardly a reasonably foreseeable result, let alone the direct result," of defendant's actions); *In re IPO Litig.*, 241 F. Supp. 2d 281, 324, 374 n.136 (S.D.N.Y. 2003) (plaintiff can "plead[] itself out of court" by "plead[ing] decisive supervening causes").

[7] VR Global's attempt to distinguish *Bloor* is misguided. Pl. Mem. 122-23. Its reference to the hypothetical shareholders referred to in *Bloor* ignores that VR Global did not purchase or sell any securities in reliance on representations about those particular securities. Rather, VR Global's losses were caused by Refco—not Grant Thornton—through the conversion of its securities, the loaning of the proceeds, and the failure to repay the loans.

9

## CONCLUSION

For all these reasons and those set forth in Grant Thornton's opening memorandum of law, Grant Thornton respectfully asks that the Court dismiss VR Global's claim with prejudice.

Dated: May 30, 2008
New York, New York

Respectfully submitted,

By:   /s/
David E. Mollón (dmollon@winston.com)
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166-4193

*Of Counsel:*
Margaret Maxwell Zagel
Kenneth Cunningham
GRANT THORNTON LLP
175 West Jackson, 20th Floor
Chicago, Illinois 60604
Ph: 312-856-0001
Fax: 312-565-347

Bradley E. Lerman (blerman@winston.com)
Catherine W. Joyce (cjoyce@winston.com)
Linda T. Coberly (lcoberly@winston.com)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Ph: 312-558-5600
Fax: 312-558-5700