# Exhibit B

<u>Individual</u>/
Corporate

# REFCO CAPITAL MARKETS, LTD.
# TRI-PARTY AGREEMENT

We are pleased to advise you that Refco Capital Markets, Ltd. ("Refco") is prepared to make available to you ("Customer") a facility for executing transactions introduced to us on your behalf by Refco Securities, Inc. ("RSI") from time to time in various financial instruments (including, without limitation, securities and foreign currencies) ("Transactions") as may be agreed between us, subject in all cases to the following standard terms and conditions which shall apply to each Transaction entered into on or after the date of your acceptance of this agreement (the "Agreement").

1. <u>Authorization</u>. You hereby authorize Refco to purchase, sell, borrow, lend, pledge or otherwise transfer securities and other financial instruments (including any interest therein) for your account in accordance with your oral or written instructions. Except to the extent you have expressly authorized someone else to buy, sell and otherwise effect transactions on your behalf and for your account, all Transactions introduced to us by RSI on your behalf and entered into pursuant to this Agreement shall be initiated orally or in writing by you. You hereby waive any defense that any such instructions were not in writing as may be required by any law, rule, or regulation. The authority hereby conferred shall remain in force until written notice of its revocation is received by Refco. Refco shall be under no duty or obligation to inquire into the purpose or propriety of any instruction given by you and shall be under no obligation concerning the application of any funds delivered to you upon your order. All securities and other financial instruments delivered by you to Refco shall be in good deliverable form.

2. <u>Collateral</u>. Refco reserves the right to require the deposit or maintenance of collateral (consisting of cash, United States government obligations or such other marketable securities or other property which may be acceptable to Refco) to secure performance of your obligations to Refco. Refco will advise you of the initial collateral requirement and of the amount of collateral required to be maintained from time to time. Such collateral requirements may be changed from time to time by Refco with respect to both new and outstanding Transactions and Refco may value any non-cash collateral on any reasonable basis. Additional collateral must be received by Refco within one business day of a demand. To secure your obligations under Transactions entered into pursuant to this Agreement, you hereby grant to Refco a security interest in all of your securities and other property (whether held individually or jointly with others) and the proceeds thereof from time to time in the possession or under the control of Refco or any of its affiliates, whether or not such securities and other property were deposited with Refco. Insofar as a security interest is granted to Refco in any collateral in the possession of any affiliate of Refco, such affiliate shall act for itself and as agent for Refco. Insofar as a security interest is granted under any other agreement to any affiliate of Refco in collateral in the possession of Refco, Refco shall act for itself and as agent for such affiliate. Refco shall have the right to pledge, hypothecate or otherwise use or dispose of such securities and other property until settlement in full of all Transactions entered into pursuant to this Agreement. Refco's sole obligation shall be to return to you such cash, securities and other property (or the cash value thereof in the event of any liquidation of collateral under paragraph 3 below) to the extent they are not deemed to be collateral to secure Transactions entered into pursuant to this Agreement with Refco or any of its affiliates or have not been applied against obligations owing by you to Refco or any of its affiliates, whether as a result of the liquidation of positions and any Transactions

entered into pursuant to this Agreement or otherwise. Refco shall have all of the rights of a secured party with respect to all collateral.

3. **Remedies.** If you (a) fail timely to honor a request for additional collateral, (b) default in the payment or performance of any obligation to Refco or any of its affiliates, (c) become the subject of a bankruptcy, insolvency or other similar proceeding or (d) fail to pay your debts generally as they become due or (e) if Refco deems it reasonably necessary for its protection, then Refco may, in its discretion at any time or times thereafter and without notice, sell any and all property in any or all of your account(s) with it or any of its affiliates (whether such accounts are held individually or jointly with others), buy any or all property which may be short in such accounts and to cancel all outstanding Transactions and to offset any indebtedness in your account against any other account you may have (either individually or jointly with others) and you shall be liable to Refco for any loss and costs sustained. Such purchases and sales may be public or private and may be made without notice or advertisement and in such manner as Refco may in its discretion determine. At any such sale or purchase, Refco may purchase or sell the property free of any right of redemption. If a default occurs or if Refco exercises its right to liquidate any of your open Transactions, Refco may, without limitation on its rights under this paragraph 3, set off amounts which you owe to it against any amounts which it owes to you (whether or not then due). You shall remain liable for any deficiency.

4. **Non-Delivery.** In case of the sale of any financial instrument at your direction and Refco's inability to deliver the same to the purchaser by reason of your failure to supply Refco therewith, then and in such event, you authorize Refco, in its discretion, to borrow or to buy in any instrument or other property necessary to make delivery thereof, and you will be responsible for any loss which Refco may sustain thereby and any premiums which Refco may require to pay thereon, and for any loss which Refco may sustain by reason of its inability to borrow or to buy in such instrument or other property.

5. **Consent to Loan or Pledge of Securities.** To the extent permitted by applicable law and governmental regulations, all securities and other property deposited by you with Refco or its affiliates may be loaned, pledged, repledged, hypothecated or re-hypothecated by Refco or its affiliates separately or in common with other securities or any other property, for the sum due to Refco thereon or for a greater sum and without retaining in Refco's possession and control for delivery a like amount of a similar securities or other property.

6. **Notices and Other Communications.** You hereby agree to provide prompt written notice to Refco and RSI in the event that any of the information you have provided to Refco and RSI in this Agreement is no longer accurate. Any notice or communication in respect of this Agreement will be sufficiently given to a party if in writing and delivered in person, sent by certified or registered mail (airmail, if overseas) or the equivalent (with return receipt requested) or by overnight courier or given by facsimile or telex (with answerback received) at the address or number specified herein. A notice or communication will be effective: (i) if delivered by hand or sent by overnight courier, on the day it is delivered (or if that day is not a business day, or if delivered after the close of business, on the first following day that is a business day; (ii) if sent by facsimile or telex, on the day the facsimile was sent or the recipient's answerback is received (or if that day is not a business day, or if after the close of business, on the first following day that is a business day); or (iii) if sent by certified or registered mail (airmail, if overseas) or the equivalent (return receipt requested), three business days after dispatch if the recipient's address for notice is in the same country as the place of dispatch and otherwise seven business days after dispatch. Each party may by notice to the other parties change the address or number at which notices or communications are to be given to it.

7. <u>Miscellaneous</u>.

   a. <u>Status of RSI</u>. RSI is acting solely as your agent in connection with the transactions governed by this Agreement and has no obligation, by guarantee, endorsement or otherwise, with respect to the performance of Refco's obligations to you. You acknowledge and agree that a portion of the compensation Refco receives for effecting Transactions hereunder (including, without limitation, any mark-ups or mark-downs charged by Refco) may be paid to RSI, along with any agency fee that RSI may charge.

   b. <u>Successors and Assigns</u>. You hereby agree that this Agreement and all the terms hereof shall be binding upon your successors, heirs, executors, administrators, personal representatives, affiliates and permitted assigns. You agree that you may not assign this Agreement without the express written consent of Refco and RSI.

   c. <u>Costs of Collection</u>. In the event that Refco must employ counsel or a collection agency to collect any debit balance which you owe, you hereby authorize it to charge you for the reasonable costs of collection, including without limitation attorneys' fees, court costs and expenses whatsoever in nature incurred in effecting said collection.

   d. <u>Representations and Warranties</u>. As an inducement to Refco and RSI to enter into this Agreement, Customer represents and warrants to Refco and RSI as of the date hereof and as of the date of each Transaction hereunder that:

   (i) it is duly organized and validly existing in good standing under the laws of the jurisdiction of its incorporation and is duly qualified to do business and is in good standing in each other jurisdiction in which such qualification is required (except where the failure to so qualify would not have a material adverse effect on its ability to perform its obligations under this Agreement and such Transaction);

   (ii) it has full power and authority (corporate and other) to execute and deliver this Agreement, to enter into such Transaction and perform its obligations hereunder and thereunder;

   (iii) its execution and delivery of this Agreement, its entering into such Transaction and the performance of its obligations hereunder and thereunder have been duly authorized by all requisite corporate action;

   (iv) all authorizations of and exemptions, actions, approvals and consents by, and all notices to or filings with, any governmental or other authority or other person that are necessary to enable it to execute and deliver this Agreement, to enter into such Transaction and to perform its obligations hereunder and thereunder have been obtained or made and are in full force and effect, and it has complied with all the conditions thereof;

   (v) this Agreement has been duly executed and delivered by it;

   (vi) this Agreement and such Transaction are legal, valid and binding obligations on its part, enforceable against it in accordance with their respective terms;

   (vii) its execution and delivery of this Agreement and its performance of this Agreement and such Transaction do not and will not violate or conflict with any law, regulation, rule of a self-regulatory organization or judicial or governmental order or decree to which it is subject, any provision of its constitutional or governing documents,

REFCO CAPITAL MARKETS, LTD.                                                                 11

or any term of any agreement to which it is a party or by which it or its property or assets is bound or affected;

(viii) no default has occurred and is continuing with respect to it and no event has occurred or circumstance arisen which might constitute, or with the giving of notice or the passage of time (or both) become, a default on the part of such party;

(ix) it acts as principal in entering into and exercising such Transaction and no other person or entity has any interest in or control of any Transaction purchased, sold or exercised for the account of such Party; and

(x) it has carefully reviewed the various risks of entering into Transactions and that it understands and is willing and able, financially and otherwise, to assume such risks.

Each representation and warranty made by Customer pursuant to this Agreement shall survive the purchase, sale, liquidation or offset of any Transaction and the termination of this Agreement.

8. <u>Law and Jurisdiction</u>. This Agreement shall be governed by, and construed in accordance with the laws of Bermuda without giving effect to conflict of laws provisions. With respect to any suit, action or proceeding ("Proceeding") relating to this Agreement, each party irrevocably (i) submits to the exclusive jurisdiction of the courts located in Hamilton, Bermuda; (ii) agrees to service of process in any legal proceeding by sending copies thereof by registered or certified mail, if practicable (postage prepaid), or by telex or facsimile to the other party at the address set forth herein; and (iii) waives any objection which it may have at any time to the laying of venue of any Proceeding brought in any such court, waives any claim that such Proceeding have been brought in an inconvenient forum and further waives the right to object, with respect to such Proceeding, that such court does not have jurisdiction over such party.

9. <u>Supplemental Terms</u>. The terms of this Agreement are in addition to the terms set forth in any confirmation issued by us or in a separate written agreement between us.

10. <u>Acceptance</u>. Your signature below constitutes your agreement with and acceptance of this Agreement.

Very truly yours,

REFCO CAPITAL MARKETS, LTD.

By:_____

Date: _____

Address:

Rosebank Building
12 Bermudiana Road
Second Floor
Hamilton, HM 11
Bermuda

REFCO SECURITIES, INC.

By:_____

Date: _____

Address:

One World Financial Center
Tower A
200 Liberty Street
New York, NY 10281

Accepted and agreed this _____ day of _____, 19___.

INVESTMENT AND DEVELOPMENT FINANCE CORPORATION
[INSERT NAME OF CUSTOMER]

By: _____

Title: President

Address: 444 Brickell Avenue, Suite 53-2058, Miami, Florida 33131

[INSERT]

Corporate

# REFCO CAPITAL MARKETS, LTD.
# TRI-PARTY AGREEMENT

We are pleased to advise you that Refco Capital Markets, Ltd. ("Refco") is prepared to make available to you ("Customer") a facility for executing transactions introduced to us on your behalf by Refco Securities, Inc. ("RSI") from time to time in various financial instruments (including, without limitation, securities and foreign currencies) ("Transactions") as may be agreed between us, subject in all cases to the following standard terms and conditions which shall apply to each Transaction entered into on or after the date of your acceptance of this agreement (the "Agreement").

1. **Authorization.** You hereby authorize Refco to purchase, sell, borrow, lend, pledge or otherwise transfer securities and other financial instruments (including any interest therein) for your account in accordance with your oral or written instructions. Except to the extent you have expressly authorized someone else to buy, sell and otherwise effect transactions on your behalf and for your account, all Transactions introduced to us by RSI on your behalf and entered into pursuant to this Agreement shall be initiated orally or in writing by you. You hereby waive any defense that any such instructions were not in writing as may be required by any law, rule, or regulation. The authority hereby conferred shall remain in force until written notice of its revocation is received by Refco. Refco shall be under no duty or obligation to inquire into the purpose or propriety of any instruction given by you and shall be under no obligation concerning the application of any funds delivered to you upon your order. All securities and other financial instruments delivered by you to Refco shall be in good deliverable form.

2. **Collateral.** Refco reserves the right to require the deposit or maintenance of collateral (consisting of cash, United States government obligations or such other marketable securities or other property which may be acceptable to Refco) to secure performance of your obligations to Refco. Refco will advise you of the initial collateral requirement and of the amount of collateral required to be maintained from time to time. Such collateral requirements may be changed from time to time by Refco with respect to both new and outstanding Transactions and Refco may value any non-cash collateral on any reasonable basis. Additional collateral must be received by Refco within one business day of a demand. To secure your obligations under Transactions entered into pursuant to this Agreement, you hereby grant to Refco a security interest in all of your securities and other property (whether held individually or jointly with others) and the proceeds thereof from time to time in the possession or under the control of Refco or any of its affiliates, whether or not such securities and other property were deposited with Refco. Insofar as a security interest is granted to Refco in any collateral in the possession of any affiliate of Refco, such affiliate shall act for itself and as agent for Refco. Insofar as a security interest is granted under any other agreement to any affiliate of Refco in collateral in the possession of Refco, Refco shall act for itself and as agent for such affiliate. Refco shall have the right to pledge, hypothecate or otherwise use or dispose of such securities and other property until settlement in full of all Transactions entered into pursuant to this Agreement. Refco's sole obligation shall be to return to you such cash, securities and other property (or the cash value thereof in the event of any liquidation of collateral under paragraph 3 below) to the extent they are not deemed to be collateral to secure Transactions entered into pursuant to this Agreement with Refco or any of its affiliates or have not been applied against obligations owing by you to Refco or any of its affiliates, whether as a result of the liquidation of positions and any Transactions entered into pursuant to this Agreement or otherwise. Refco shall have all of the rights of a secured party with respect to all collateral.

3. **Remedies.** If you (a) fail timely to honor a request for additional collateral, (b) default in the payment or performance of any obligation to Refco or any of its affiliates, (c) become the subject of a bankruptcy, insolvency or other similar proceeding or (d) fail to pay your debts generally as they become due or (e) if Refco deems it reasonably necessary for its protection, then Refco may, in its discretion at any time or times thereafter and without notice, sell any and all property in any or all of your account(s) with it or any of its affiliates (whether such accounts are held individually or jointly with others), buy any or all property which may be short in such accounts and to cancel all outstanding Transactions and to offset any indebtedness in

your account against any other account you may have (either individually or jointly with others) and you shall be liable to Refco for any loss and costs sustained. Such purchases and sales may be public or private and may be made without notice or advertisement and in such manner as Refco may in its discretion determine. At any such sale or purchase, Refco may purchase or sell the property free of any right of redemption. If a default occurs or if Refco exercises its right to liquidate any of your open Transactions, Refco may, without limitation on its rights under this paragraph 3, set off amounts which you owe to it against any amounts which it owes to you (whether or not then due). You shall remain liable for any deficiency.

4. <u>Non-Delivery</u>. In case of the sale of any financial instrument at your direction and Refco's inability to deliver the same to the purchaser by reason of your failure to supply Refco therewith, then and in such event, you authorize Refco, in its discretion to borrow or to buy in any instrument or other property necessary to make delivery thereof, and you will be responsible for any loss which Refco may sustain thereby and any premiums which Refco may require to pay thereon, and for any loss which Refco may sustain by reason of its inability to borrow or to buy in such instrument or other property.

5. <u>Consent to Loan or Pledge of Securities</u>. To the extent permitted by applicable law and governmental regulations, all securities and other property deposited by you with Refco or its affiliates may be loaned, pledged, repledged, hypothecated or re-hypothecated by Refco or its affiliates separately or in common with other securities or any other property, for the sum due to Refco thereon or for a greater sum and without retaining in Refco's possession and control for delivery a like amount of a similar securities or other property.

6. <u>Notices and Other Communications</u>. You hereby agree to provide prompt written notice to Refco and RSI in the event that any of the information you have provided to Refco and RSI in this Agreement is no longer accurate. Any notice or communication in respect of this Agreement will be sufficiently given to a party if in writing and delivered in person, sent by certified or registered mail (airmail, if overseas) or the equivalent (with return receipt requested) or by overnight courier or given by facsimile or telex (with answerback received) at the address or number specified herein. A notice or communication will be effective: (i) if delivered by hand or sent by overnight courier, on the day it is delivered (or if that day is not a business day, or if delivered after the close of business, on the first following day that is a business day; (ii) if sent by facsimile or telex, on the day the facsimile was sent or the recipient's answerback is received (or if that day is not a business day, or if after the close of business, on the first following day that is a business day); or (iii) if sent by certified or registered mail (airmail, if overseas) or the equivalent (return receipt requested), three business days after dispatch if the recipient's address for notice is in the same country as the place of dispatch and otherwise seven business days after dispatch. Each party may by notice to the other parties change the address or number at which notices or communications are to be given to it.

7. <u>Miscellaneous</u>.

    a. <u>Status of RSI</u>. RSI is acting solely as your agent in connection with the transactions governed by this Agreement and has no obligation, by guarantee, endorsement or otherwise, with respect to the performance of Refco's obligations to you. You acknowledge and agree that a portion of the compensation Refco receives for effecting Transactions hereunder (including, without limitation, any mark-ups or mark-downs charged by Refco) may be paid to RSI, along with any agency fee that RSI may charge.

    b. <u>Successors and Assigns</u>. You hereby agree that this Agreement and all the terms hereof shall be binding upon your successors, heirs, executors, administrators, personal representatives, affiliates and permitted assigns. You agree that you may not assign this Agreement without the express written consent of Refco and RSI.

    c. <u>Costs of Collection</u>. In the event that Refco must employ counsel or a collection agency to collect any debit balance which you owe, you hereby authorize it to charge you for the reasonable costs of collection, including without limitation attorneys' fees, court costs and expenses whatsoever in nature incurred in effecting said collection.

9

REFCO CAPITAL MARKETS, LTD.

IDC 000049

d. <u>Representations and Warranties.</u> As an inducement to Refco and RSI to enter into this Agreement, Customer represents and warrants to Refco and RSI as of the date hereof and as of the date of each Transaction hereunder that:

(i)  it is duly organized and validly existing in good standing under the laws of the jurisdiction of its incorporation and is duly qualified to do business and is in good standing in each other jurisdiction in which such qualification is required (except where the failure to so qualify would not have a material adverse effect on its ability to perform its obligations under this Agreement and such Transaction);

(ii)  it has full power and authority (corporate and other) to execute and deliver this Agreement, to enter into such Transaction and perform its obligations hereunder and thereunder;

(iii)  its execution and delivery of this Agreement, its entering into such Transaction and the performance of its obligations hereunder and thereunder have been duly authorized by all requisite corporate action;

(iv)  all authorizations of and exemptions, actions, approvals and consents by, and all notices to or filings with, any governmental or other authority or other person that are necessary to enable it to execute and deliver this Agreement, to enter into such Transaction and to perform its obligations hereunder and thereunder have been obtained or made and are in full force and effect, and it has complied with all the conditions thereof;

(v)  this Agreement has been duly executed and delivered by it;

(vi)  this Agreement and such Transaction are legal, valid and binding obligations on its part, enforceable against it in accordance with their respective terms;

(vii)  its execution and delivery of this Agreement and its performance of this Agreement and such Transaction do not and will not violate or conflict with any law, regulation, rule of a self-regulatory organization or judicial or governmental order or decree to which it is subject, any provision of its constitutional or governing documents, or any term of any agreement to which it is a party or by which it or its property or assets is bound or affected;

(viii)  no default has occurred and is continuing with respect to it and no event has occurred or circumstance arisen which might constitute, or with the giving of notice or the passage of time (or both) become, a default on the part of such party;

(ix)  it acts as principal in entering into and exercising such Transaction and no other person or entity has any interest in or control of any Transaction purchased, sold or exercised for the account of such Party; and

(x)  it has carefully reviewed the various risks of entering into Transactions and that it understands and is willing and able, financially and otherwise, to assume such risks.

Each representation and warranty made by Customer pursuant to this Agreement shall survive the purchase, sale, liquidation or offset of any Transaction and the termination of this Agreement.

8. <u>Law and Jurisdiction.</u> This Agreement shall be governed by, and construed in accordance with the laws of Bermuda without giving effect to conflict of laws provisions. With respect to any suit, action or

REFCO CAPITAL MARKETS, LTD.

10

IDC 000050

proceeding ("Proceeding") relating to this Agreement, each party irrevocably (i) submits to the exclusive jurisdiction of the courts located in Hamilton, Bermuda; (ii) agrees to service of process in any legal proceeding by sending copies thereof by registered or certified mail, if practicable (postage prepaid), or by telex or facsimile to the other party at the address set forth herein; and (iii) waives any objection which it may have at any time to the laying of venue of any Proceeding brought in any such court, waives any claim that such Proceeding have been brought in an inconvenient forum and further waives the right to object, with respect to such Proceeding, that such court does not have jurisdiction over such party.

9. <u>Supplemental Terms</u>. The terms of this Agreement are in addition to the terms set forth in any confirmation issued by us or in a separate written agreement between us.

10. <u>Acceptance</u>. Your signature below constitutes your agreement with and acceptance of this Agreement.

Very truly yours,

REFCO CAPITAL MARKETS, LTD.

By: _____

Date: _____

Address:
Rosebank Building
12 Bermudiana Road
Second Floor
Hamilton, HM 11
Bermuda

REFCO SECURITIES, INC.

By: _____

Date: _____

Address:
One World Financial Center
Tower A
200 Liberty Street
New York, NY 10281

Accepted and agreed this ___12th___ day of __FEBRUARY__, 1998.

[INSERT NAME OF CUSTOMER]   IDC FINANCIAL, S. A.

By: _____

Title: __PRESIDENT_____

REFCO CAPITAL MARKETS, LTD.

11

IDC 000051

Address:

13 CALLE 2-60, ZONA 10, EDIF. TOPACIO AZUL., OF. 701, GUATEMALA CITY.

MAILING ADDRESS:

SECTION 2474, P.O. BOX 02-5339
MIAMI, FLORIDA 33102-5339