UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VR GLOBAL PARTNERS, L.P., et al.,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>PHILLIP R. BENNETT, et al.,<br><br>                    Defendants. | 07 Civ. 8686 (GEL) |
| CAPITAL MANAGEMENT SELECT FUND LTD., et al.,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>PHILLIP R. BENNETT, et al.,<br><br>                    Defendants. | 07 Civ. 8688 (GEL) |
| In re REFCO CAPITAL MARKETS, LTD. BROKERAGE CUSTOMER SECURITIES LITIGATION | 06 Civ. 643 (GEL) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RICHARD N. OUTRIDGE'S MOTION TO DISMISS

PROSKAUER ROSE LLP
1585 Broadway
New York, New York  10036-8299
(212) 969-3000

*Attorneys for Defendant Richard N. Outridge*

Dated: June 18, 2008

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 6

POINT I     PLAINTIFFS' SECTION 10(B) AND RULE 10(B)-5 CLAIM SHOULD BE
DISMISSED AS AGAINST MR. OUTRIDGE ...................................................... 6

    A.     Plaintiffs Fail To Allege that Mr. Outridge Engaged in any Conduct
Prohibited under Rule 10(b)-5 ...................................................................... 7

       1.     Plaintiff's Fail To Allege that Mr. Outridge Engaged in
any Conduct Prohibited under Rule 10b-5 (a) or (c) ...................... 9

          (a)     Plaintiffs Have Not Alleged with Particularity Mr.
Outridge's Participation in any Scheme To Defraud ......... 10

          (b)     The Complaints Fail To Adequately Allege that Mr.
Outridge Committed a Manipulative or Deceptive Act ..... 11

       2.     The VR Complaint Fails To Adequately Allege any
Materially False Statement or Omission by Mr. Outridge
in Violation of Rule 10b-5(b) ........................................................ 14

    B.     Plaintiffs Have Not Pled Scienter as to Mr. Outridge ................................ 16

       1.     Plaintiffs Fail To Adequately Allege Mr. Outridge's
Motive and Opportunity To Commit a Fraud ................................ 17

       2.     Plaintiffs Have Not Alleged any Facts that Would
Constitute Strong Circumstantial Evidence of Conscious
Misbehavior or Recklessness by Mr. Outridge .............................. 19

POINT II     PLAINTIFFS' RULE 10b-16 CLAIM SHOULD BE DISMISSED AS
AGAINST MR. OUTRIDGE ................................................................................ 22

    A.     There Is No Express or Implied Right of Action under Rule 10b-16 ....... 23

    B.     Even If the Court Were To Imply a Private Right of Action, Mr. Outridge
Is Not Subject to Rule 10b-16 .................................................................... 24

    C.     Plaintiffs' Claims Under Rule 10b-16 Are Untimely ................................ 27

i

POINT III  PLAINTIFFS' SECTION 20(a) CLAIM SHOULD BE DISMISSED AS AGAINST MR. OUTRIDGE ...............................................................................27

    A. Plaintiffs' Have Not Pled A Primary  Violation against Mr. Outridge......27

    B. The Complaints Do Not Adequately Allege That  Mr. Outridge Exercised Actual Control............................................................................................28

    C. Plaintiffs Also Fail To Adequately Plead  Culpable Participation by Mr. Outridge ..............................................................................................29

CONCLUSION.......................................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. Sandoval,*
    532 U.S. 275 (2001)........................................................................................24, 25

*American Fin. Int'l Group-Asia, L.L.C. v. Bennett,*
    No. 05 Civ. 8988, 2007 WL 1732427 (S.D.N.Y. June 14, 2007)...............................5

*Apace Communications, Ltd. v. Burke,*
    522 F. Supp. 2d 509 (W.D.N.Y. 2007) ...................................................................21

*Bellikoff v. Eaton Vance Corp.,*
    481 F.3d 110 (2d Cir. 2007)....................................................................................25

*Bissell v. Merrill Lynch & Co.,*
    937 F. Supp. 237 (S.D.N.Y. 1996),
    *aff'd,* 157 F.3d 138 (2d Cir. 1998) ........................................................................17

*Boguslavsky v. Kaplan,*
    159 F.3d 715 (2d Cir. 1998)....................................................................................29

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
    511 U.S. 164 (1994).................................................................................................9

*Glickman v. Alexander & Alexander Servs., Inc.,*
    93 Civ. 7594, 1996 WL 88570 (S.D.N.Y. Feb. 29, 1996) ........................................18

*Gurfein v. Ameritrade, Inc.,*
    411 F. Supp. 2d 416 (S.D.N.Y. 2006)..................................................................9, 12

*Hart v. Internet Wire, Inc.,*
    145 F. Supp. 2d 360 (S.D.N.Y. 2001)......................................................................21

*Hirsch v. Arthur Andersen & Co.,*
    72 F.3d 1085 (2d Cir. 1995)....................................................................................30

*In re Action Industries Tender Offer,*
    572 F. Supp. 846 (E.D. Va. 1983) ............................................................................8

*In re Alstom SA Sec. Litig.,*
    406 F. Supp. 2d 433 (S.D.N.Y. 2005)................................................................13, 29

*In re AOL Time Warner Sec. & "ERISA" Litig.,*
    381 F. Supp. 2d 192 (S.D.N.Y. 2004)......................................................................22

*In re Authentidate Holding Corp. Sec. Litig.,*
  05 Civ. 5323, 2006 WL 2034644 (S.D.N.Y. July 14, 2006) ....................................................18

*In re Bayer AG Secs. Litig.,*
  No. 03 CV 1546, 2004 WL 2190357 (S.D.N.Y. Sept. 30, 2004) ...........................................21

*In re BISYS Sec. Litig.,*
  397 F. Supp. 2d 430 (S.D.N.Y. 2005)..............................................................................18, 21

*In re Blech Sec. Litig.,*
  961 F. Supp. 569 (S.D.N.Y. 1997) ....................................................................................9, 12

*In re Citigroup, Inc. Secs. Litig.,*
  330 F. Supp. 2d 367 (S.D.N.Y. 2004)......................................................................................22

*In re Converium Holding AG Sec. Litig.,*
  04 Civ. 7897, 2006 WL 3804619 (S.D.N.Y. Dec. 28, 2006)....................................................16

*In re Global Crossing, Ltd Secs. Litig.*
  02 Civ. 910, 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005) ...........................................16, 29, 30

*In re Global Crossing, Ltd. Sec. Litig.,*
  322 F. Supp. 2d 319 (S.D.N.Y. 2004)...............................................................................12-13, 31

*In re IBM Corp. Secs. Litig.,*
  163 F.3d 102 (2d Cir. 1998)........................................................................................................8

*In re Livent, Inc. Secs. Litig.,*
  78 F. Supp. 2d 194 (S.D.N.Y. 1999)........................................................................................29

*In re Mercury Interactive Corp. Sec. Litig.,*
  No. C 05-3395 JF, 2007 WL 2209278 (N.D. Cal. Jul. 30, 2007)...........................................15

*In re Parmalat Sec. Litig.,*
  376 F. Supp. 2d 472 (S.D.N.Y. 2005)......................................................................................13

*In re Refco Capital Markets, Ltd. Brokerage Customers Sec. Litig.,*
  No. 06 Civ. 643, 2007 WL 2694469 (S.D.N.Y. Sept. 13, 2007).................................... passim

*In re Refco, Inc. Sec. Litig.,*
  503 F. Supp. 2d 611 (S.D.N.Y. 2007) (Lynch, J.) ......................................................... passim

*In re Salomon Analyst Winstar Litig.,*
  No. 02 Civ. 6171, 2006 WL 510526 (S.D.N.Y. Feb. 28, 2006) .............................................17

*In re Sotheby's Holdings, Inc.,*
  2000 WL 1234601 (S.D.N.Y Aug. 31, 2000)..........................................................................29

*In re Visual Networks, Inc. Secs. Litig.,*
    217 F. Supp. 2d 662 (D. Md. 2002) .................................................................20

*Iqbal v. Hasty,*
    490 F.3d 143 (2d Cir. 2007).............................................................................6

*Kalnit v. Eichler,*
    264 F.3d 131 (2d Cir. 2001)......................................................................17, 20

*Katz v. David W. Katz & Co.,*
    82 Civ. 6383, 1984 WL 2385 (S.D.N.Y. Feb. 14, 1984) ..............................30

*Kinsey v. Cendant Corp.,*
    No. 04 Civ. 0582, 2005 WL 1907678 (S.D.N.Y. Aug. 10, 2005) .................22

*Komanoff v. Mabon, Nugent & Co.,*
    884 F. Supp. 848 (S.D.N.Y. 1995) ...............................................................24

*Levitin v. PaineWebber, Inc.,*
    933 F. Supp. 325 (S.D.N.Y. 1996),
    *aff'd,* 159 F.3d 698 (2d Cir. 1998) ..........................................................17, 23

*Liberty Mut. Ins. Co. v. WAWA Tours, Inc.,*
    CV-07-0880, 2007 WL 2743500 (E.D.N.Y. Sept. 18, 2007) ........................21

*Olmsted v. Pruco Life Ins. Co.,*
    283 F.3d 429 (2d Cir. 2002)..........................................................................25

*Rich v. Maidstone Fin., Inc.,*
    98 Civ. 2569, 2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002)...............9, 12, 29

*Roberto's Fruit Market, Inc. v. Schafer,*
    13 F. Supp. 2d 390 (E.D.N.Y. 1998) ...............................................................5

*Rombach v. Chang,*
    355 F.3d 164 (2d Cir. 2004)......................................................................18, 20

*Rubinstein v. Skyteller, Inc.,*
    48 F. Supp. 2d 315 (S.D.N.Y. 1999)..............................................................30

*S.E.C. v. Durgarian,*
    477 F. Supp. 2d 342 (D. Mass. 2007) ............................................................15

*Scone Invs., L.P., v. American Third Mkt. Corp.,*
    No. 97 Civ. 3802, 1998 WL 205338 (S.D.N.Y. Apr. 28, 1998)......................9

*Shields v. Citytrust Bancorp. Inc.,*
    25 F.3d 1124 (2d Cir. 1994)..........................................................................20

*Simpson v. AOL Time Warner,*
452 F.3d 1040 (9th Cir. 2006),
*vacated sub nom.,* Avis Budget Group, Inc. v. California State Teacher's
Retirement Sys.,
128 S. Ct. 1119 (2008) ...................................................................................13

*Steed Fin. LDC v. Laser Advisers, Inc.,*
258 F. Supp. 2d 272, 280 (S.D.N.Y. 2003) ................................................22

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,*
128 S. Ct. 761 (2008) .............................................................................8, 24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
127 S. Ct. 2499 (2007) ..........................................................................18, 22

*Wallace v. Buttar,*
239 F. Supp. 2d 388 (S.D.N.Y. 2003),
*rev'd on other grounds,* 378 F.3d 182 (2d Cir. 2004) .................................30

*Wright v. Ernst & Young LLP,*
152 F.3d 169 (2d Cir. 1998) .........................................................................15


**STATUTES & RULES**

15 U.S.C. § 78c(a)(4)(A), (5)(A) (2006) ..............................................................27

15 U.S.C. § 78j (2007) ............................................................................................8

15 U.S.C. § 78u-4 ...................................................................................................9

15 U.S.C. § 78u-4(b) ..............................................................................................1

15 U.S.C. § 78u-4(b)(2) ....................................................................................5, 17

17 C.F.R. § 240.10b-5 ............................................................................................8

Fed. R. Civ. P. 9(b) ....................................................................................... passim

Fed. R. Civ. P. 12(b)(6) ......................................................................................1, 6

Rule 10(b) ...................................................................................................... passim

Rule 10(b)-5 .................................................................................................7, 8, 23

Rule 10(b)-5(b) .......................................................................................................5

Rule 10b-5 ...............................................................................................2, 6, 8, 9

Rule 10b-5(a) ..................................................................................................10, 15

Rule 10b-5(c) ........................................................................................................10

Rule 10b-5(b) ........................................................................................................15

Rule 10b-16............................................................................................... passim

**OTHER AUTHORITIES**

*Guide to Broker-Dealer Registration*, Division of Market Regulation, U.S.
    Securities and Exchange Commission (December 2005), *available at*
    http://www.sec.gov/divisions/marketreg/bdguide.htm#II. ....................................................27

Defendant Richard N. Outridge submits this memorandum in support of his motion

pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, and pursuant to the

Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b), to dismiss all counts

of the complaints in *VR Global Partners, L.P. et al v. Bennett, et al.,* No. 07 Civ. 8686 (GEL)

(the "VR Compl. or "VR") and *Capital Management Select Fund Ltd., et al. v. Bennett, et al.,*

No. 07 Civ. 8688 (GEL) (the "CM Compl." or "CM") and the Second Amended Complaint in *In*

*re Refco Capital Markets, Ltd., Brokerage Customers Securities Litigation*, No. 06 Civ. 643

(GEL) ("CA Compl." or "VR") (collectively, the "Complaints"), as against him.[1]  He also joins

in those arguments for dismissal applicable to him made by the other defendants in their motions

to dismiss that were previously filed with this Court, and incorporates those arguments by

reference.

## PRELIMINARY STATEMENT

The Complaints were filed only after this Court dismissed the initial purported class

action complaint filed on behalf of brokerage customers of Refco Capital Markets, Ltd.

("RCM").  *See In re Refco Capital Markets, Ltd. Brokerage Customers Sec. Litig.,* No. 06 Civ.

643, 2007 WL 2694469 (S.D.N.Y. Sept. 13, 2007) (Lynch, J.).  The Court dismissed that

complaint against all of the then-named defendants because it had failed to allege deceptive

conduct.  *Id.* at *5.  Significantly, Mr. Outridge was not named in that complaint or in *any* of the

numerous other Refco-related litigations filed in the two years after Refco's bankruptcy.

Plaintiffs have now, without justification, decided to name Mr. Outridge as a defendant in the

---

[1]  Although the cases are not consolidated, the Complaints are very similar with respect to allegations against Mr. Outridge; any differences relevant to this motion are noted herein.  Accordingly, Mr. Outridge respectfully requests that the Court accept the filing of one memorandum of law in support of his motion to dismiss the Complaints, so as to avoid burdening the Court with identical arguments in three separate memoranda of law.  On June 17, 2008, Plaintiffs agreed to accept one memorandum of law in response to the three Complaints referenced above.

In this memorandum, unless otherwise specified, the term "Plaintiffs" refers to the Plaintiffs in the VR Compl. and the CM Compl. and the putative class in the Class Action Complaint.

Complaints and have merely re-packaged the same insufficient allegations that this Court has already dismissed against the defendants named in the initial class action complaint.

Not only was Mr. Outridge not named in the prior Refco-related actions, he was not identified at all by Thomas York ("York"), a former Executive Vice President of Refco Capital Markets, Ltd. on its Global Execution and Finance Desk, who, over the course of three days, gave detailed testimony about how the schemes alleged in the Complaints worked.[2] Mr. York testified before the Honorable Robert D. Drain in the United States Bankruptcy Court for the Southern District of New York.

Mr. Outridge joined RCM in June of 2001 as controller and remained in that position until early 2004, when he was named chief financial officer of RCM, a position he held until August of 2005. (VR Compl. ¶ 68). As the Complaints allege, the schemes pursuant to which Mr. Outridge is alleged to have violated certain sections of the Securities and Exchange Act were well underway by the time Mr. Outridge came to RCM. (*See, e.g.,* CA Compl. ¶ 163 ("As alleged in the Information filed against Maggio "[s]tarting at leasing in or about 1997, Phillip R. Bennett, SANTO C. MAGGIO, and their coconspirators caused Refco to use customers funds to cover its losses.""). In addition, during his tenure at RCM, Mr. Outridge was a salaried employee who had no stock, stock options, employment contract or restricted stock units in the firm.

In the Complaints, Plaintiffs attempt to allege two schemes which they claim violate Section 10(b) of the Securities and Exchange Act of 1934 (the "Act" or the "Exchange Act") and SEC Rule 10b-5. They also attempt to allege claims against Mr. Outridge for non-disclosure under SEC Rule 10b-16 and for control person liability under Section 20 of the Exchange Act.

---

[2] *See* the Declaration of Jessica Mastrogiovanni in Support of Defendant Outridge's Motion To Dismiss the Complaints, dated June 18, 2008. Mr. York's testimony has been relied on by Plaintiffs throughout the Complaints and therefore may be considered by the Court on this motion.

The first scheme is an alleged fraud that Plaintiffs label "the RCM Securities Scheme." This scheme is really a claimed theft rather than a securities fraud. According to the Complaints, RCM misrepresented to its customers how their securities on deposit at RCM would be treated and allegedly converted, for the benefit of other Refco entities, securities and other assets that RCM customers had deposited with RCM. (*See* VR Compl. ¶¶ 3-6; CM Compl. ¶¶ 2-4; CA Compl. ¶¶ 3-6.)

With respect to this "RCM Scheme," there are no allegations (nor can there be) that Mr. Outridge had any involvement whatsoever in making the statements or representations to Refco's customers that are alleged to have falsely misled them. Plaintiffs assert that conduct by certain Defendants caused them to believe "RCM [was] acting in a custodial capacity and that RCM treated [Plaintiffs] as a beneficial owner of [their] securities." (*See, e.g.*, CA Compl. ¶¶ 76, 83, 90). Plaintiffs then point to RCM Customer Agreements, RCM customers' "paper and online account statements" and allegedly misleading "representations by Refco representatives" as the deceptive material that violated the customers' understandings of how Refco was handling their securities. (*See* CA Compl. ¶¶ 8, 10, 11, 24, 101, 104.) Nowhere in the Complaints, however, is there any allegation that Mr. Outridge had any contact with any customers or was in charge of, or administered any statement in connection with RCM's customers.

The VR Plaintiffs allege an additional fraudulent scheme they label "The RGHI Scheme," against the "Bennett Co-Conspirators" – a group consisting of Defendants Bennett, Grant, Maggio and Trosten – *but not Mr. Outridge*. Allegedly, the Bennett Co-Conspirators designed the RGHI Scheme to conceal losses suffered by Refco beginning in the late 1990's, so as to falsely improve the appearance of Refco's financial condition. (*See* VR ¶¶ 30, 126)

What is markedly absent from the Complaints are allegations sufficient to state a claim against Mr. Outridge for conduct prohibited in Section 10(b), Rule 10b-5, Rule 10b-16 or Section 20(A) of the Exchange Act.

Despite the length of the Complaints (the VR Compl. is 186 pages; the CM Compl. is 123 pages and the CA Compl. is 129 pages), none of them has successfully alleged fraudulent conduct or misrepresentations specifically committed by Mr. Outridge. In fact, Mr. Outridge's name is mentioned in only four paragraphs of the 561-paragraph VR Complaint; in four paragraphs in the 373-paragraph CM Complaint; and in four paragraphs of the 384-paragraph CA Complaint. For example, in the VR Complaint, one paragraph labels him and other defendants as "Officer Defendants;" another paragraph describes (inaccurately) Mr. Outridge's job responsibilities at RCM; a third paragraph repeats these descriptions, claims (falsely) that Mr. Outridge was "a close confident [sic] of Maggio," and makes conclusory allegations concerning Mr. Outridge's participation in and knowledge of the alleged scheme (VR Compl. ¶¶ 68, 263); a fourth paragraph alleges (again falsely) that Mr. Outridge was part of a group charged with Refco's day-to-day operations – without providing any details.[3] None of those paragraphs alleges with particularity any specific wrongdoing by Mr. Outridge.

The remainder of the Complaints refer to other individual Defendants or generically to the "Officer Defendants" as a group (see, e.g., VR Compl. ¶ 60; CM Compl. ¶ 43; CA Compl. ¶ 48), which is insufficient under the pleading requirements of Rule 9(b) of the Federal Rules of

---

[3] In addition to being false, the allegation that Outridge is a close confidant of Maggio is of no matter. As Your Honor has held, "it can hardly be assumed that everyone associating with an alleged fraudster is aware of the ongoing wrong." *American Fin. Int'l Group-Asia, L.L.C. v. Bennett*, No. 05 Civ. 8988, 2007 WL 1732427, at *8, n.8 (S.D.N.Y. June 14, 2007) (Lynch, J.). The Court therefore should disregard the "close confidant" allegation. *Cf. Roberto's Fruit Market, Inc. v. Schafer*, 13 F. Supp. 2d 390, 396 (E.D.N.Y. 1998) (striking allegations in a RICO action concerning defendants' ties to organized crime: even if true, the allegations had no relationship to the underlying RICO claims, and amounted to "unnecessary, vague, and inflammatory language in the nature of trash-talking").

4

Civil Procedure and the PSLRA, 15 U.S.C. § 78u-4(b)(2), both of which are applicable here. (*See* Point I.A, below)

Count I of the complaints, which asserts a claim under Section 10(b) and Rule 10b-5, fails as against Outridge for a number of reasons, including that there is no particularized allegation that he participated in any of the alleged schemes and further fails to assert that Mr. Outridge engaged in any deceptive act. (*See* Point I.A, below) Count I also should be dismissed against Mr. Outridge because Plaintiffs have not pled scienter as to him. Plaintiffs have wholly failed to show that Mr. Outridge had any motive to defraud and they have not alleged particularized facts giving rise to a "strong inference" that he acted with scienter, as required by the PSLRA. (*See* Point I.B, below).

Count II of the Complaints, which is premised on Rule 10b-16 of the Exchange Act, alleges that Plaintiffs did not receive certain written disclosures required by that rule. This claim fails as against Outridge for a number of reasons, including that there is no private right of action under Rule 10b-16 and that, in any event, the rule proscribes conduct *only* by brokers or dealers, and thus cannot be the basis for a claim against Mr. Outridge, who was not a broker or a dealer. (*See* Point II, below)

Count III of the Complaints, alleging "control person" liability pursuant to Section 20(a) of the Exchange Act, also should be dismissed as against Outridge. Plaintiffs have failed to allege any primary violation by Mr. Outridge. (*See* Point III.A, below) The Complaints also fail to adequately allege that Mr. Outridge exercised "actual control" over RCM and Refco or the transactions at issue. (*See* Point III. B below) Finally, the Complaints fail to plead culpable participation by Mr. Outridge in the fraud. (*See* Point III, C., below)

Accordingly, Plaintiffs' claims against Mr. Outridge should be dismissed in their entirety, with prejudice.

## ARGUMENT[4]

In order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must "amplify a claim with some factual allegations . . . to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). "Under this standard, a complaint may be dismissed where it fails to plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*, 06 Civ. 643, 2007 WL 2694469, at *5 (S.D.N.Y. Sept. 13, 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). As a result, "'more than labels and conclusions'" are required to satisfy "'[a] plaintiff's obligation to provide the grounds of his entitlement to relief,'" and a "'formulaic recitation of the elements of a cause of action[] will not do.'" *Id.* (quoting *Twombly*, 127 S. Ct. at 1965). "Where a plaintiff 'ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* (quoting *Twombly*, 127 s. Ct. at 1974).

## POINT I

## PLAINTIFFS' SECTION 10(B) AND RULE 10(B)-5 CLAIM SHOULD BE DISMISSED AS AGAINST MR. OUTRIDGE

Count I, alleging violations of Section 10(b) and Rule 10b-5 of the Exchange Act, fails to state a claim against Mr. Outridge for four fundamental reasons. First, for the reasons set forth in Point I of Grant Thorton LLP's Memorandum of Law in Support of its Motion To Dismiss, dated February 21, 2008, which is incorporated herein by reference, Plaintiffs lack standing to assert a claim under Section 10(b). Second, for the reasons set forth by the THL Defendants (in Point I of the THL Defendants' Memorandum of Law in Support of their Motion To Dismiss, dated February 21, 2008, and in Points I and II of their Reply Memorandum of Law in Further Support

---

[4] Mr. Outridge adopts the Statement of Facts at pp. 5-10 in Defendant Joseph J. Murphy's and William M. Sexton's Memorandum of Law in Support of their Motion To Dismiss the Complaints. In the interest of efficiency, that section has not been replicated here.

of the THL Defendant's Motion To Dismiss, dated June 8, 2008, and the accompanying

Affidavit of Richard A. Rosen dated June 9, 2008, with Exhibits A-F annexed thereto, all of

which are incorporated herein by reference), Count I fails to state a claim against any defendant,

because there was no deception. Third, specific as to Mr. Outridge, Count I fails to allege any

deceptive conduct or statement by him that could support a Section 10(b) claim against him.

Fourth, Count I fails to plead with particularity any facts giving rise to a "strong inference" that

Mr. Outridge acted with scienter, as required by the PSLRA.

To state a claim under Section 10(b) and Rule 10b-5, Plaintiffs must allege: (1) a

material misrepresentation or omission; (2) scienter; (3) a connection between the

misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the

misrepresentation or omission; (5) economic loss; and (6) loss causation. *Stoneridge Inv.*

*Partners, LLC v. Scientific-Atlanta, Inc.*, No. 06-43, 128 S. Ct. 761, 769 (2008) (citing *Dura*

*Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)); *see also In re IBM Corp. Secs.*

*Litig.*, 163 F.3d 102, 106 (2d Cir. 1998).[5]

Plaintiffs have not adequately alleged these elements against Mr. Outridge.

### A.  Plaintiffs Fail To Allege that Mr. Outridge Engaged in any Conduct Prohibited under Rule 10(b)-5

Count I should be dismissed as against Mr. Outridge because Plaintiffs have not

adequately alleged any specific misstatement or other deceptive conduct by Mr. Outridge.

Section 10(b) makes it unlawful to "use or employ, in connection with the purchase or sale of

any security . . . any manipulative or deceptive device in contravention of such rules and

---

[5]  Further, it is not sufficient simply to allege that RCM engaged in deceptive conduct; each element of a violation under the Exchange Act must be alleged against the individual defendants as well. *See, e.g., In re Action Industries Tender Offer*, 572 F. Supp. 846, 852 (E.D. Va. 1983).

regulations as the [SEC] may proscribe." 15 U.S.C. § 78j (2007). Rule 10b-5 prohibits three

types of conduct: (a) employing any device, scheme or artifice to defraud; (b) making any

untrue statements of material fact or omitting to state a material fact necessary to make

statements made, in light of the circumstances under which they were made, not misleading; or

(c) engaging in any act, practice, or course of business which operates as a fraud or deceit upon

any person. 17 C.F.R. § 240.10b-5.

Because Plaintiffs assert a securities fraud claim, the Complaints must satisfy the

heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private

Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. Rule 9(b) requires that in

"alleging fraud or mistake, a party must state with *particularity* the circumstances constituting

fraud or mistake." (Emphasis added).

Further, when securities fraud claims are alleged against multiple defendants, the

pleadings standards must be strictly applied. *Scone Invs., L.P., v. American Third Mkt. Corp.*,

No. 97 Civ. 3802, 1998 WL 205338, at *4 (S.D.N.Y. Apr. 28, 1998) ("Courts are especially

vigilant in applying Rule 9(b) where a complaint is made against multiple defendants.").

Rule 9(b) is not satisfied by a complaint in which defendants are clumped together in vague

allegations. *See In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 641 (S.D.N.Y. 2007) (Lynch,

J.); *In re Blech Sec. Litig.*, 961 F. Supp. 569, 581 (S.D.N.Y. 1997); *see also Gurfein v.*

*Ameritrade, Inc.*, 411 F. Supp. 2d 416, 426 (S.D.N.Y. 2006) ("[T]he complaint may not rely

upon blanket references to acts or omissions by all of the defendants, for each defendant . . . is

entitled to be appraised of the circumstances surrounding the fraudulent conduct with which he

individually stands charged.").

Absent allegations of facts establishing that a particular defendant committed a deceptive

or manipulative act, that defendant cannot be a primary violator, and thus cannot be liable under

8

Rule 10b-5. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994) ("[Section 10(b)] prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act[.] . . . The proscription does not include giving aid to a person who commits a manipulative or deceptive act."); *Rich v. Maidstone Fin., Inc.*, 98 Civ. 2569, 2002 WL 31867724, at *7 (S.D.N.Y. Dec. 20, 2002) ("[Section] 10(b) reaches only primary violators, *i.e.*, those who commit a manipulative or deceptive act . . . and not individuals who aid and abet the violation."); *In re Refco, Inc.*, 503 F. Supp. 2d at 641 (quoting *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998),  "'Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under [10(b)]'".)

Count I fails to allege any specific deceptive act or statement attributed to Mr. Outridge that could even arguably support a "scheme to defraud" or a "misstatements" claim against Mr. Outridge.  In contravention of Rule 9(b), the PSLRA, and the clear requirements of the case law in this Circuit, cited above, Plaintiffs merely lump Mr. Outridge together with all "Officer Defendants," and improperly rely on conclusory group allegations in an attempt to state a claim.

### 1.     Plaintiff's Fail To Allege that Mr. Outridge Engaged in any Conduct Prohibited under Rule 10b-5 (a) or (c)

In order to properly plead a "scheme" claim under Section 10(b) and Rule 10b-5(a) or (c), a complaint must allege, *inter alia*, that the defendant participated in the purported scheme through the commission of a deceptive or manipulative act.  *See, e.g., In re Refco Capital*, 2007 WL 2694469, at *8.

As the courts have recognized, group pleading has no place when it comes to pleading a scheme liability theory under Rule 10b-5(a) and (c).  Plaintiffs are required to allege facts identifying deceptive acts Mr. Outridge personally performed in furtherance of the scheme, when

Mr. Outridge performed such acts, and the effects those acts had on Plaintiffs. *Id.* Plaintiffs have failed to do so here.

### (a) Plaintiffs Have Not Alleged with Particularity Mr. Outridge's Participation in any Scheme To Defraud

At the core of Count I of the Complaints is an allegation that Defendants engaged in a fraudulent scheme through which they converted customer securities owned by Plaintiffs and other customers of RCM. The VR Complaint also alleges that the "Bennett Co-conspirators" – not Mr. Outridge – engaged in a scheme to conceal trading losses in order to make Refco's customers think that it was in a better financial position than it actually was. (*See, e.g.,* VR Compl. ¶¶ 30, 126, 131, 132-148).

Plaintiffs, however, do not identify with particularity a single act by Mr. Outridge in furtherance of either of their alleged schemes. The Complaints are bereft of any specific factual allegations that Mr. Outridge approved or directed or conducted any act constituting the alleged fraud. Plaintiffs bald conclusory allegation that "Mr. Outridge directly participated in, orchestrated and supervised the RCM Securities Scheme alleged herein" (VR Compl. ¶263) does not meet the strict pleading standard of Rule 9(b) and the PLSRA, discussed above. Plaintiffs cannot assert broad brush allegations but, rather, must state with particularity specific acts Mr. Outridge took in furtherance of the alleged schemes. They have not done so here. For example, Plaintiffs baldly allege that Mr. Outridge "orchestrated" the scheme, but fail to allege with particularity facts explaining what Mr. Outridge allegedly did to "orchestrate" the schemes – schemes that, according to Plaintiffs, were engrained in Refco's practices long before Mr. Outridge was hired as RCM's controller and that were masterminded by Defendants Bennett and Maggio. (*See, e.g.,* VR Compl. ¶¶ 126, 263)

10

Unable to allege with particularity any participation by Mr. Outridge, Plaintiffs improperly rely on conclusory, non-specific allegations against all "Defendants" or "Officer Defendants." (*See, e.g.*, VR Compl. ¶ 28 ("Defendants' fraudulent conversion of Plaintiffs' securities"); ¶ 112 ("the Officer Defendants had directed Refco employees to sell, or cause to be sold, RCM customers' securities"); ¶ 122 ("Officer Defendants . . . caused customer securities to be converted fraudulently"); CM Compl. ¶ 4 ("Refco senior management, including the Officer Defendants, directed Refco employees to sell, or cause to be sold . . . securities . . . that had been entrusted to RCM.").

Such non-specific allegations against a group of Defendants do not state a claim for violation of Section 10(b) against Mr. Outridge. *See Gurfein*, 411 F. Supp. 2d at 426-27 (complaint failed to state securities fraud claims where it made allegations against "defendants" without specifying which defendant did what); *Rich*, 2002 WL 31867724, at *8-9 & n.7 (allegations that defendant was aware of scheme together with general allegations of fraudulent conduct by "defendants" did not satisfy requirement that complaint set forth defendant's participation in scheme); *In re Blech*, 961 F. Supp. 569, 580-81 (S.D.N.Y. 1997) (dismissing Section 10(b) claim against trustee of a trust alleged to have purchased and sold shares in furtherance of alleged market manipulation scheme, as complaint did not set forth specific acts by trustee demonstrating his direct participation in scheme).

### (b) The Complaints Fail To Adequately Allege that Mr. Outridge Committed a Manipulative or Deceptive Act

Even if the Court were to find that Plaintiffs have sufficiently alleged that Mr. Outridge participated in the schemes (which they have not), Count I must fail because Plaintiffs have not pled that Mr. Outridge committed a deceptive act, as required to plead a claim under Section 10(b). *See In re Refco Capital*, 2007 WL 2694469, at *7 ("The point is that there must be some

conduct or representation by the fraudster that deceives the victim – that is, the defendant's conduct must create in the victim a sense that things are otherwise than they are."); *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 336 (S.D.N.Y. 2004) (Lynch, J.) (requiring commission of a deceptive act for a "scheme" claim) (citing *SEC v. U.S. Environmental Inc.*, 155 F.3d 107, 111 (2d Cir. 1998)).

 The Complaints do not allege "(1) the source of the understanding falsely created by [Mr. Outridge] (that is, a fiduciary duty, prior representation, or some other reason why they believed [Mr. Outridge] would act otherwise than [he] did), and (2) [how Mr. Outridge's] conduct violated that understanding." *In re Refco Capital,* 2007 WL 2694469, at *8. Plaintiffs failed to make these allegations against the defendants named in the initial class action complaint, and they have repeated that fatal mistake again here with respect to Mr. Outridge.

 To state a Section 10(b) "scheme" claim, the defendant must have taken actions which "in and of" themselves or "by nature" are deceptive or manipulative. *See In re Alstom SA Secs. Litig.*, 406 F. Supp. 2d 433, 476-77 (S.D.N.Y. 2005); *see also In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 504 (S.D.N.Y. 2005). Each defendant must have committed a deceptive or manipulative act. *See Simpson v. AOL Time Warner*, 452 F.3d 1040, 1050 (9th Cir. 2006), vacated *sub nom.*, on other grounds, *Avis Budget Group, Inc. v. California State Teacher's Retirement Sys.*, 128 S. Ct. 1119, (2008) ("[w]hen determining whether a defendant is a 'primary violator,' the conduct of each defendant, while evaluated in its context, must be viewed alone for whether it had the purpose and effect of creating a false appearance of fact in the furtherance of an overall scheme to defraud.").

 In *In re Refco Capital*, this Court determined that although Plaintiffs made various allegations of wrongdoing or mishandling of assets, they "failed to explain how defendants created a false impression concerning their handling of assets." 2007 WL 2694469, at *8. As a

12

result, "[t]he complaint fail[ed] to make sufficient allegations as to deception" and was dismissed. *Id.* at *12.

The Complaints are devoid of allegations that Mr. Outridge engaged in any deceptive act. The Complaints consist of two schemes that allegedly involved deceptive acts: the first claims that the Plaintiffs were deceived by the Customer Account statements, trade confirmations and certain representations to believe that Refco was not loaning, re-hypothecating or otherwise using the securities in the customers' accounts; the second, alleged only in the VR Complaint, claims that the customers were deceived by Refco's transferring large receivables to and from its books in order to make Refco's financials look better than they actually were. (*See, e.g.*, VR Compl. ¶¶ 85-86, 106-110, 124-148, 157-60.) (For example, VR Compl. ¶ 105 ("VR relied . . . upon Refco's false representations in the customer agreements with VR and the RCM-issued customer statements and trade confirmations in entrusting its securities to RCM and maintaining additional securities with RCM throughout the course of its relationship with Refco.")).[6]

However, there are no allegations that Mr. Outridge engaged in any deceptive act. Plaintiffs do not allege (nor can they) that Mr. Outridge was involved in preparing or disseminating the Customer Agreements, customer account statements, or trade confirmations, or that Mr. Outridge made any representations whatsoever to any of the Plaintiffs. Moreover, there are no allegations in the Complaints that Mr. Outridge met with Plaintiffs in connection with their Customer Agreement or account statements or that Mr. Outridge had any communication at all with any of Refco's customers; that Mr. Outridge made any specific representations that were reflected in the Customer Agreement or account statements; that Mr. Outridge was involved with

---

[6] With respect to the Customer Agreement, Plaintiffs allege that each Plaintiff entered into a Customer Agreement with RCM and RSL and that no provision of the Customer Agreement gave RCM the right to sell customers' fully-paid securities entrusted to RCM other than in accordance with the customer's express instructions. (*See, e.g., VR Compl.* ¶¶ 106, 108.) Plaintiffs thus allege that "RCM's theft of Plaintiffs' securities contradicted the terms and conditions of the Customer Agreement and the understanding that Plaintiffs had justifiably reached concerning the manner in which their securities were being held." (VR Compl. ¶ 110.)

the material represented in the Customer Agreement or account statements; or that Mr. Outridge approved of, directed or executed the loans that allegedly caused the VR Plaintiffs to believe that Refco's financial position was better than it actually was.

Plaintiffs have failed, therefore, to allege any actions by Mr. Outridge that "had a principal purpose and effect upon creating a false appearance in fact in furtherance of the scheme to defraud." *S.E.C. v. Durgarian*, 477 F. Supp. 2d 342, 353 (D. Mass. 2007); *see also In re Mercury Interactive Corp. Sec. Litig.*, No. C 05-3395 JF, 2007 WL 2209278, at *11-12 (N.D. Cal. Jul. 30, 2007) (dismissing Section 10(b) scheme claim against officer defendants because "the Complaint contains insufficient allegations that the various defendants' contributions to the overall scheme had a deceptive purpose and effect").

### 2. The VR Complaint Fails To Adequately Allege any Materially False Statement or Omission by Mr. Outridge in Violation of Rule 10b-5(b)[7]

To state a "material misstatement" claim under Section 10(b) and Rule 10b-5(b), a plaintiff must, *inter alia*: "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *In re Refco, Inc.*, 503 F. Supp. 2d at 640-41 (quoting *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999)).

In order to be held liable under Rule 10b-5(a), Mr. Outridge "'must actually make a false or misleading statement.'" (*Wright v. Ernst & Young LLP*, 152 F.3d at 175 (quoting *Shapiro v. Cantor*, 123 F.3d 717, 720 (2d Cir. 1997)) *See also In re Refco, Inc.*, 503 F. Supp. 2d at 641 (same). Moreover, the misrepresentation must be "attributed to that [specific defendant] at the time of its dissemination." *Wright*, 152 F.3d at 175. *See also, In re Global Crossing, Ltd. Sec.*

---

[7] Only the VR Complaint alleges that Defendants violated Section 10(b) through misstatements or omissions; the CM and CA Complaints do not allege a violation of Rule 10b-5(b) by any Defendant.

*Litig.* 02 Civ. 910, 2005 WL 1907005, at *8 (S.D.N.Y. Aug. 8, 2005) ("The Second Circuit has elaborated that in cases brought under Rule 10b-5(b), defendants can only be held liable for statements that are publically attributed to them."); *In re Converium Holding AG Sec. Litig.*, 04 Civ. 7897, 2006 WL 3804619, at *11 (S.D.N.Y. Dec. 28, 2006) (same).

As explained above, there is no allegation that Mr. Outridge had any involvement whatsoever – let alone involvement sufficient to hold him liable for making a material misstatement – with any of the customer statements or representations on which Plaintiffs allegedly relied to place their securities with Refco. (*See, e.g.,* VR Compl. ¶ 105.) Nor is there any allegation that the alleged misstatements in the Customer Agreements, the trade confirmations or the customer account statements were attributed to Mr. Outridge, or that Mr. Outridge made any representations directly to customers. In fact, Mr. Outridge is not alleged to have been – and was not – involved with customers at all.

The VR Complaint alleges that "in making the decision to place securities in customer accounts with RCM," Plaintiffs relied on "RCM's and Refco's audited financial statements for the years 2001 to 2005." (VR Compl. ¶ 32.) The VR Complaint does not allege that Mr. Outridge had any involvement with Refco's audited financial statements. With respect to RCM's audited financial statements, the sole, general allegation against Mr. Outridge is that, "throughout his time at Refco, Mr. Outridge was heavily involved in the preparation of RCM's financial statements." (VR Compl. ¶ 263.) That allegation does not meet the requirements that Mr. Outridge have actually made a false or misleading statement or that any of the allegedly false financial statements were publically attributed to Mr. Outridge.

In addition, the VR Plaintiffs were customers of RCM long before Mr. Outridge was named Chief Financial Officer of RCM in March of 2004, and before he had any involvement in preparing RCM's audited financial statements. (VR Compl. at ¶ 83.) The VR Complaint does

not allege, nor could it, that the VR Plaintiffs had knowledge of and relied on Mr. Outridge's

participation in preparation of any of RCM's financial statements in placing their securities with

RCM.[8]

### B.    Plaintiffs Have Not Pled Scienter as to Mr. Outridge

Count I of the Complaints also should be dismissed because Plaintiffs have not met their

heavy burden under the PSLRA of pleading scienter – an "intent to deceive, manipulate or

defraud" – against Mr. Outridge. *In re Refco, Inc.,* 503 F. Supp. 2d at 644 (quoting *Ernst &*

*Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)).

The PSLRA requires that, "with respect to each act or omission" alleged in a Section

10(b) complaint, plaintiffs must "state with *particularity* facts giving rise to a *strong inference*

that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis

added). This must be pled as against each defendant. *See Kalnit v. Eichler,* 264 F.3d 131, 138

(2d Cir. 2001). Under this standard, a plaintiff must plead particularized facts, not conclusory

allegations or speculative assertions, that "point strongly to an inference that defendants harbored

intent to deceive, manipulate, or defraud." *In re Salomon Analyst Winstar Litig.,* No. 02 Civ.

6171, 2006 WL 510526, at *7 n.11, 14 (S.D.N.Y. Feb. 28, 2006) (Lynch, J.). The Supreme

Court recently clarified that the facts alleged must be sufficient to create an inference of scienter

that is "more than merely plausible or reasonable – it must be cogent and at least as compelling

as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues*

*& Rights, Ltd.,* 127 S. Ct. 2499, 2510 (2007).

---

[8] Moreover, the alleged misstatements about the financial condition of Refco were not "in connection with" Plaintiffs' purchase or sale of securities because Plaintiffs never purchased or sold the securities of RCM – or, for that matter, Refco, or any other Refco affiliate, and merely allege that they decided to place their securities in accounts at RCM in reliance on the financial statements. (VR Compl. ¶ 32) *See Levitin v. PaineWebber, Inc.,* 933 F. Supp. 325, 328-29 (S.D.N.Y. 1996) (dismissing Rule 10b-5 claim as nondisclosure related to contract relationship between customer and broker rather than purchase and sale of any securities), *aff'd*, 159 F.3d 698 (2d Cir. 1998); *Bissell v. Merrill Lynch & Co.*, 937 F. Supp. 237, 242-43 (S.D.N.Y. 1996), *aff'd*, 157 F.3d 138 (2d Cir. 1998).

To establish scienter, Plaintiffs must plead particularized facts (a) "to show that defendants had both motive and opportunity to commit fraud," or (b) "that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Rombach v. Chang,* 355 F.3d 164, 176 (2d Cir. 2004) (citation omitted). The Complaints allege neither against Mr. Outridge.

### 1. Plaintiffs Fail To Adequately Allege Mr. Outridge's Motive and Opportunity To Commit a Fraud

To plead scienter by motive and opportunity, a plaintiff must plead that the defendant benefited in a way that is concrete and personal. *See, e.g., In re Refco, Inc.,* 503 F. Supp. 2d at 644-45; *In re BISYS Sec. Litig.,* 397 F. Supp. 2d 430, 441 (S.D.N.Y. 2005). The motive must be unique to that defendant, and not merely generalized to the officers of the corporation generally. *See, e.g., Rombach,* 355 F.3d at 177. The motive must also be direct, and not merely speculative or attenuated. *See, e.g., Glickman v. Alexander & Alexander Servs., Inc.,* 93 Civ. 7594, 1996 WL 88570, at *11 (S.D.N.Y. Feb. 29, 1996); *In re Authentidate Holding Corp. Sec. Litig.,* 05 Civ. 5323, 2006 WL 2034644, at *6 (S.D.N.Y. July 14, 2006); *In re Refco, Inc.,* 503 F. Supp. 2d at 645-46.

Each Complaint contains the same or a similar section alleging that Defendants reaped substantial profits from the alleged scheme(s). (VR Compl. ¶¶ 488-503; CM Compl. ¶¶ 307-22; CA Compl. ¶¶ 311-27.) In those paragraphs, Plaintiffs have included charts detailing the millions of dollars of benefits that certain Defendants allegedly received from Refco. *Id.* One chart, for example, lists the grants of common stock received by certain Defendants. (VR Compl. ¶ 494; CM Compl. ¶ 313; CA Compl. ¶ 317). Another chart itemizes the greenshoe dividend paid to certain Officer Defendants in connection with Refco's initial public offering. (VR Compl. ¶ 500; CM Compl. ¶ 319; CA Compl. ¶ 324). Plaintiffs also describe "significant windfalls" that certain "Officer Defendants" realized from the LBO: Murphy $13.1 million;

17

Sexton $8.1 million; Maggio $13.5 million.  (VR Compl. ¶ 492; CM Compl. ¶ 311).  **Tellingly, the charts and descriptions do not (and cannot) include Mr. Outridge, who was a salaried employee with no stock, stock options, dividends or other financial interest in any Refco entity.**

Plaintiffs allege that the *"Officer Defendants* and the THL Control Group Defendants reaped tremendous monetary benefit" from the allegedly fraudulent RCM transactions and that those defendants were thus motivated to conduct the fraudulent scheme.  (VR Compl. ¶ 489; CM Compl. ¶ 308; CA Compl. ¶ 312 (emphasis added)).  However, because Plaintiffs do not, and cannot, identify any such benefits received by Mr. Outridge, they have completely failed to plead that he had any motive or incentive to commit fraud.

Indeed, every time Plaintiffs point to some specific way in which the "Officer Defendants" are supposed to have cashed out or taken some benefit for themselves – whether in the form of the money the "Officer Defendants" paid themselves out of Refco's LBO or IPO (VR Compl. ¶¶ 492-95; CM Compl. ¶¶ 311-14; CA Compl. ¶¶ 313-315); whether through Refco stock they took for themselves (VR Compl. ¶ 494; CM Compl. ¶ 313, CA Compl. ¶ 317); whether through the greenshoe dividend (VR Compl. ¶ 500; CM Compl. ¶ 319, CA Compl. ¶ 324); or whether through grants of restricted stock units (VR Compl. ¶ 496; CM Compl. ¶ 315, CA Compl. ¶ 313) – Mr. Outridge's name is conspicuously absent.  The reason is that Mr. Outridge was never a participant in any of the alleged payoff schemes and he did not receive any stock, cash or any other form of profit from the alleged schemes.  Thus, whatever motive certain other Officer Defendants may have had to commit fraud, Mr. Outridge had no such motive.

To the extent Plaintiffs allege that the eight (or seven) "Officer Defendants" committed fraud to perpetuate Refco's "unsustainable" operations and thereby obtain "monetary benefit,"

such generalized allegations are patently insufficient to survive a motion to dismiss. As the Second Circuit has explained, "a plaintiff must do more than merely charge that executives aim to prolong the benefits of the positions they hold." *Shields v. Citytrust Bancorp. Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994). Nor may Plaintiffs rely on allegations that Defendants were motivated by "(1) the desire for the corporation to appear profitable and (2) the desire to keep stock prices high to increase officer compensation." *Kalnit*, 264 F.3d at 139. If scienter could be so readily pleaded, executives of "virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *Rombach*, 355 F.3d at 177 (citation omitted).

> **2.    Plaintiffs Have Not Alleged any Facts that Would Constitute Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness by Mr. Outridge**

Because Plaintiffs cannot allege that Mr. Outridge had any motive to commit fraud, Plaintiffs' only option is to try to plead scienter "by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Kalnit*, 264 F.3d at 142. To survive dismissal under a "conscious misbehavior" theory, a plaintiff must "at the least" show that a defendant engaged in "reckless conduct . . . which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id.* (internal citation omitted).

Where motive and opportunity do not exist, Plaintiffs must overcome a "significant burden . . . to create a strong inference that the defendant acted with the required state of mind." *In re Visual Networks, Inc. Secs. Litig.*, 217 F. Supp. 2d 662, 669 (D. Md. 2002) (internal citations omitted). Plaintiffs must "allege facts approaching a knowledgeable participation in the

fraud or a deliberate and conscious disregard of facts." *Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360, 367 (S.D.N.Y. 2001) (citations omitted).

As in the initial class action complaint, Plaintiffs Complaints fail because "[a]side from defendants' role in the corporation, the complaint's allegations of recklessness focus primarily on the allegedly fraudulent transactions themselves, in particular their size . . . and . . . lack of business purpose." *In re Refco, Inc.*, 503 F. Supp. 2d at 648.

The PSLRA requires Plaintiffs to plead scienter with particularity as to **each defendant.** *In re Bayer AG Secs. Litig.,* No. 03 CV 1546, 2004 WL 2190357, at *15 (S.D.N.Y. Sept. 30, 2004) (even where statements are attributed to a group of defendants, "Plaintiffs must still establish scienter as to each defendant"). Here, Plaintiffs arbitrarily lump defendants together, which is impermissible under the PSLRA and Rule 9(b). *See Apace Communications, Ltd. v. Burke*, 522 F. Supp. 2d 509, 517 (W.D.N.Y. 2007); *Liberty Mut. Ins. Co. v. WAWA Tours, Inc.*, CV-07-0880, 2007 WL 2743500, at *7 (E.D.N.Y. Sept. 18, 2007) (rejecting scienter allegations that "fail[ed] to distinguish between defendants"); *In re Refco, Inc.*, 503 F. Supp. 2d at 645 (citation omitted) ("group pleading doctrine 'has no effect on the PSLRA's scienter requirement'"). Further, it is not enough for the Plaintiffs to allege that the "sheer magnitude and size of the improper transfers," or that "access to inside information," raises a strong inference of scienter on the part of the "Officer Defendants." (VR Compl. ¶¶ 247, 253; CM Compl. ¶¶ 165, 171.) *See In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 447 (S.D.N.Y. 2005) (quoting *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2003 WL 21488087, at *7 (S.D.N.Y. June 25, 2003) ("Plaintiffs argue also that the size of the restatement alone constitutes strong evidence of scienter. This argument is without merit.")).

In addition, Plaintiffs have failed to set out "facts regarding how and when Defendants received [the] information which they allegedly recklessly ignored." *Steed Fin. LDC v. Laser*

*Advisers, Inc.*, 258 F. Supp. 2d 272, 280 (S.D.N.Y. 2003) (citing *Ross v. A.H. Robins Co.*,

607 F.2d 545, 558-59 (2d Cir. 1979)).  Merely alleging, as Plaintiffs do, that defendants had

"access . . . to reports" is insufficient.  See *Kinsey v. Cendant Corp.*, No. 04 Civ. 0582, 2005 WL

1907678, at *5 (S.D.N.Y. Aug. 10, 2005); *In re AOL Time Warner Sec. & "ERISA" Litig.*, 381

F. Supp. 2d 192, 224 (S.D.N.Y. 2004).

      Finally, even if the Court did credit Plaintiffs' conclusory allegations, the allegations do

not explain how that data would have alerted Mr. Outridge to the alleged wrongdoing.  *See In re*

*Citigroup, Inc. Secs. Litig.,* 330 F. Supp. 2d 367, 381 (S.D.N.Y. 2004) ("the Complaint is devoid

of facts establishing that Weill [Citigroup's CEO] knew such transactions to be fraudulent").  As

in *Citigroup*, Plaintiffs fail to plead any facts demonstrating that Mr. Outridge knew or should

have known that any laws or the terms of any agreements were being violated or that RCM

customers were being deceived. *See, e.g., id.* (holding that Thomson's, Citigroup's CFO's,

"awareness of a of a particular transaction is insufficient to show that he acted with scienter.")

      To establish the requisite "strong inference" of wrongdoing, the proffered inference must

be "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 127 S.

Ct. at 2504-06.  As the Complaints make clear, the alleged schemes were well underway before

Mr. Outridge joined RCM in June of 2001.  (*See, e.g.,* CA Compl. ¶163 ("As alleged in the

Information filed against Maggio, '[s]tarting at least in or about 1997, Phillip R. Bennett,

SANTO C. MAGGIO, and their coconspirators caused Refco to use customers funds to cover its

losses.'")).  (*See also* VR Compl. ¶ 126 ("One early aspect of the RGHI Scheme involved the

improper concealment by the Bennett Co-Conspirators of hundreds of millions of dollars in

customer and proprietary trading losses in the late 1990s. . .")).  Accordingly, these schemes

were well underway and Mr. Outridge would have had no reason to suspect that the transactions

described in the Complaints, which were typical of valid business transactions RCM engaged in,

21

were anything other than transactions made in the ordinary course of RCM's business. For example, even if there were adequate allegations that Mr. Outridge knew that RCM customer deposits were being lent to other Refco entities (and there are not), such allegations would not suffice because there is nothing inherently wrongful about intercompany loans, which serve a self-evident, valid business purpose. Mr. Outridge would not have known that any such loans to other Refco entities were fraudulent unless he knew that the other Refco entity was unable to pay. Plaintiffs have not pled with particularity facts creating a strong inference that Mr. Outridge knew prior to October 2005 that the Refco subsidiaries to which RCM customer assets allegedly were loaned could not satisfy their obligations. Without such allegations, there is no conceivable basis for finding a strong inference that Mr. Outridge acted with intent to deceive, manipulate or defraud Plaintiffs.

For all of the foregoing reasons, Plaintiffs' claims against Mr. Outridge under Section 10(b) and Rule 10b-5 must be dismissed.

## POINT II

### PLAINTIFFS' RULE 10b-16 CLAIM SHOULD BE DISMISSED AS AGAINST MR. OUTRIDGE

Any claim allowable under Rule 10b-16 would have to meet all the requirements of any other claim under Section 10(b). *See, e.g., Levitin,* 933 F. Supp. at 331 (dismissing a 10b-16 claim for failure to meet Section 10(b)'s "in connection with" requirement). Therefore, Plaintiffs' Rule 10b-16 claims against Mr. Outridge fail for the same reasons their Section 10(b) and Rule 10b-5 claims fail. (*See* Point I, above) Plaintiffs' Rule 10b-16 claims fail for three additional reasons, discussed below.

## A.    There Is No Express or Implied Right of Action under Rule 10b-16

Neither Rule 10b-16, nor its counterpart in Section 10(b) of the Securities Exchange Act of 1934, creates an express private cause of action. *See Komanoff v. Mabon, Nugent & Co.,* 884 F. Supp. 848 (S.D.N.Y. 1995). If a private right of action were to exist under Rule 10b-16, it would have to be implied by the Court. However, the Supreme Court, in two recent decisions, clearly held that Congress, and not the judiciary, should dictate whether a cause of action exists under Section 10(b) of the 1934 Securities Act. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,* 128 S. Ct. 761, 773 (2008); *Alexander v. Sandoval,* 532 U.S. 275 (2001).

In *Sandoval,* the Supreme Court took a new restrictive approach toward the judicial creation of an implied right of action. The court emphasized that "private rights of action to enforce federal law must be created by *Congress.*" *Sandoval,* 532 U.S. at 275 (citations omitted, emphasis added). The role of the judiciary, the Court explained, was to determine whether the language and structure of the federal statute "displays intent to create not just a private right but also a private remedy." *Id.* at 286. "Without [Congressional intent to create a private right and remedy], a cause of action does not exist and *courts may not create one,* no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87 (emphasis added). The Supreme Court recently reaffirmed and applied *Sandoval's* deference to congressional intent in *Stoneridge Inv. Partners,* 128 S. Ct. at 773 ("The determination of who can seek a remedy has significant consequences for the reach of federal power. . . . Concerns with the judicial creation of a private cause of action *caution against its expansion.* The decision to extend the cause of action is for *Congress, not for [the courts].*" (emphasis added)).

*Sandoval* examined the language of the federal statute to determine whether Congress intended to create a private right and remedy. When a statute focuses "on the person regulated rather than the individuals protected," there can be no implication of a private right of action.

*Sandoval*, 532 U.S. at 289.  Rule 10b-16 regulates the conduct of brokers and dealers and, thus, does not create an implied cause of action.  Both subsections (a) and (b) of Rule 10b-16 begin with the following language:  "It shall be unlawful for any *broker or dealer* to . . . ."  Nowhere does it contain "'rights-creating' language" that the Court was searching for in *Sandoval*.  532 U.S. at 288.

The *Sandoval* court's "statutory intent" approach has also been applied in two post-*Sandoval* Second Circuit decisions.  *See Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429 (2d Cir. 2002); *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007).  In both cases, the lack of "rights-creating language," combined with the express provision for enforcement by the Securities and Exchange Commission, was enough for the Second Circuit to hold that no private right of action should be implied under the statutes.  *Olmsted*, 283 F.3d at 432-33; *Bellikoff*, 481 F.3d at 116.  Indeed, the Second Circuit has never recognized an implied Rule 10b-16 right of action.

In light of *Sandoval* and *Stoneridge*, the only way the Court could recognize a private right of action under Rule 10b-16 is if Congress expressly articulates an intention to create a private cause of action.  Congress has not done so.  Therefore, the Court must refuse to recognize an implied cause of action and dismiss the Plaintiffs' 10b-16 claims against Mr. Outridge.

**B.      Even If the Court Were To Imply a Private Right of Action, Mr. Outridge Is Not Subject to Rule 10b-16**

Even if the Court were to imply a private right of action under Rule 10b-16, Plaintiffs' Rule 10b-16 claims against Mr. Outridge should still be dismissed, because Rule 10b-16 does not apply to him.

Rule 10b-16 applies only to brokers or dealers – which Mr. Outridge was not and is not alleged to have been – and requires a disclosure that Plaintiffs do not allege Mr. Outridge was responsible for making.  For example, Rule 10b-16 states that:

24

(a) It shall be unlawful for any broker or dealer to extend credit, directly or indirectly, to any customer in connection with any securities transaction unless such broker or dealer has established procedures to assure that each customer:

1.      Is given or sent at the time of opening the account, a written statement or statements disclosing (i)the conditions under which an interest charge will be imposed; (ii) the annual rate or rates of interest that can be imposed; (iii) the method of computing interest; (iv) if rates of interest are subject to change without prior notice, the specific conditions under which they can be changed; (v) the method of determining the debit balance or balances on which interest is to be charged and whether credit is to be given for credit balances in cash accounts; (vi) what other charges resulting from the extension of credit, if any, will be made and under what conditions; and (vii) the nature of any interest or lien retained by the broker or dealer in the security or other property held as collateral and the conditions under which additional collateral can be required

2.      Is given or sent a written statement or statements, at least quarterly, for each account in which credit was extended, disclosing (i) the balance at the beginning of the period; the date, amount and a brief description of each debit and credit entered during such period; the closing balance; and, if interest is charged for a period different from the period covered by the statement, the balance as of the last day of the interest period; (ii) the total interest charge for the period during which interest is charged . . .

3.      It shall be unlawful for any broker or dealer to make any changes in the terms and conditions under which credit charges will be made (as described in the initial statement made under paragraph (a) of this section), unless the customer shall have been given not less than (i) thirty days written notice of such changes. . . .

The Complaints fail to allege any facts indicating that Mr. Outridge was accountable for the disclosures allegedly required under Rule 10b-16. Instead, they make only general references to Mr. Outridge's work as the CFO of RCM and do not allege that he had any dealings with customer accounts or responsibility for reporting changes in those accounts. The Complaints do not refer to Mr. Outridge, but instead to Refco and RCM, as the entities that purportedly extended credit to Plaintiffs and were subject to the disclosure requirements of Rule 10b-16. (VR Compl. ¶¶ 81-87; CM Compl. ¶¶ 64-66, 76-77, 137-38; CA Compl. ¶¶ 74-76.)

Under the Securities and Exchange Act of 1934, a "broker" is "any person engaged in the business of effecting transactions in securities for the account of others," and a "dealer" is "any person engaged in the business of buying and selling securities for such person's own account through a broker or otherwise." 15 U.S.C. § 78c(a)(4)(A), (5)(A) (2006). Within these broad statutory definitions, the SEC has laid out factors which might lead toward the conclusion that a party is either a broker or a dealer (referred to as "SEC's Factors"). *See Guide to Broker-Dealer Registration*, Division of Market Regulation, U.S. Securities and Exchange Commission (December 2005), *available at* http://www.sec.gov/divisions/marketreg/bdguide.htm#II.

Mr. Outridge does not meet any of the SEC's Factors and Plaintiffs' Complaints are deficient in the following ways:

- Plaintiffs fail to allege that Mr. Outridge solicited, negotiated, or executed any securities transactions;

- Plaintiffs fail to allege that Mr. Outridge's compensation was tied in any way to the success or size of any transactions;

- Plaintiffs fail to allege that Mr. Outridge handled the securities or funds of others in connection with any transactions; and

- Plaintiffs fail to allege that Mr. Outridge, as an individual, was in the business of buying or selling securities.

In fact, Plaintiffs only use the term "broker" to refer to those Defendants who exhibited at least some, if not all, of the SEC's Factors – a group in which Mr. Outridge cannot be lumped. (*See, e.g.,* VR Compl. ¶¶ 84-105.)

Finally, Plaintiffs' conclusory allegations that "Officer Defendants" as a group are liable as "controlling persons" of RCM are insufficient because Rule 10b-16 applies only to the

regulation of brokers and dealers, of which Mr. Outridge was neither.  (VR Compl. ¶¶ 504-515; CM Compl. ¶¶ 323-329; CA Compl. ¶¶ 328-339.)

All of the foregoing problems with Plaintiffs' Complaints lead to one conclusion: Plaintiffs fail to adequately allege that Mr. Outridge was a broker or a dealer who was subject to regulation under Rule 10b-16.  As a result, Plaintiffs' Rule 10b-16 claims against Mr. Outridge should be dismissed.

### C.    Plaintiffs' Claims Under Rule 10b-16 Are Untimely

As shown in Section II.B.2 of Defendant Philip Silverman's Memorandum of Law in Support of his Motion To Dismiss, dated February 21, 2008, which is incorporated by reference herein, Plaintiffs' Rule 10b-16 claim against Mr. Outridge also fails because it is untimely.

### POINT III

### PLAINTIFFS' SECTION 20(a) CLAIM SHOULD BE DISMISSED AS AGAINST MR. OUTRIDGE

A control person claim under Section 20(a) of the Exchange Act requires (1) an underlying primary violation by the control person, (2) actual control by the control person, and (3) culpable participation in the alleged fraud by the control person. *See, e.g., In re Refco, Inc.,* 503 F. Supp. 2d at 637, 660.  Plaintiffs fail to allege any of these three elements as against Mr. Outridge.

### A.    Plaintiffs' Have Not Pled A Primary Violation against Mr. Outridge

For the same reasons discussed in Point I above, Plaintiffs have not and cannot allege that Mr. Outridge has engaged in a primary violation of Section 10(b), as required to state a Section 20(a) claim against him.  Therefore, the Section 20(a) claim against Mr. Outridge should be dismissed.

**B.    The Complaints Do Not Adequately Allege That
Mr. Outridge Exercised Actual Control**

Control person liability requires an individualized determination of the defendant's actual

control and culpability. *See, e.g., Boguslavsky v. Kaplan,* 159 F.3d 715, 720 (2d Cir. 1998); *In re*

*Alstom,* 406 F. Supp. 2d at 486. Bare, conclusory allegations do not suffice. *See, e.g., Global*

*Crossing,* 2005 WL 1907005, at *12; *Rich,* 2002 WL 31867724, at *11-12. Mere allegations of

corporate officer status also do not suffice. *See, e.g., In re Sotheby's Holdings, Inc.,* 2000 WL

1234601, at *7-8 (S.D.N.Y Aug. 31, 2000); *In re Livent, Inc. Secs. Litig.,* 78 F. Supp. 2d 194,

221 (S.D.N.Y. 1999).

Accordingly, Plaintiffs were required to allege specific facts, not mere conclusions, from

which it could be inferred that Mr. Outridge exercised actual control over RCM and Refco and

the transactions in dispute. They have not done so.

Plaintiffs never refer to Mr. Outridge individually within the paragraphs in which they

allege control by the "Officer Defendants." (VR Compl. ¶¶ 504-15; CM Compl. ¶¶ 323-29;

CA Compl. ¶¶ 328-39.) Consistent with their other insufficient allegations, Plaintiffs merely

lump Mr. Outridge with the other Officer Defendants and allege that "[t]he Officer Defendants

had control . . . by virtue of their executive positions with Refco, the key roles each played in

Refco's management, and their direct involvement in its day-to-day operations, including its

finance and accounting functions." (VR Compl. ¶ 504; CM Compl. ¶ 323; CA Compl. ¶ 328.)

All Plaintiffs have alleged is that Mr. Outridge was controller and later CFO of RCM; Plaintiffs

have not and cannot allege that Mr. Outridge had actual control over any of the Refco entities.[9]

_____

[9] It is not that Plaintiffs lack knowledge as to who actually controlled Refco; they have made more specific
allegations of control as to certain of the Officer Defendants. For example, Plaintiffs allege that certain Officer
Defendants: (1) had non-compete and executive employment agreements that "explicitly state that they were
employed 'in a key capacity with the Company'" which "gave each . . . substantial authority over the day-to-day
management and operation of Refco" (VR Comp. ¶ 509; CM Compl. ¶ 328.); (2) were significant shareholders of
Refco and used their shareholdings to control Refco (VR Compl. ¶¶ 505, 510, 512; CM Compl. ¶ 324); and (3)
constituted "the Bennett Co-Conspirators," and they were the ones who perpetrated the RGHI Scheme. (VR Compl.

Simply alleging a defendant's title is not enough. *See In re Global Crossing*, 2005 WL 1907005, at *12 ("Officer or director status alone does not constitute control.") In addition, Mr. Outridge is not listed anywhere in Refco's SEC filings in connection with its initial public offering, which Plaintiffs cite as part of their Section 20(a) claim against the Officer Defendants. (VR Compl. ¶¶ 506-508; CM Compl. ¶¶ 325-27; CA Compl. ¶¶ 330-32; *see* Exhs. A-F to Cashman Decl.) Mr. Outridge is not mentioned in those filings, because he was not an officer who ever had control over Refco's operations.

Further, entirely absent from the Complaints are any specific factual allegations suggesting that Mr. Outridge had or exercised actual control over the transactions in question, therefore warranting dismissal of the control person claims. *See Wallace v. Buttar*, 239 F. Supp. 2d 388, 396 (S.D.N.Y. 2003) (rejecting Section 20(a) liability against company president where there was no showing that he possessed control over transaction in question), *rev'd on other grounds,* 378 F.3d 182 (2d Cir. 2004); *Rubinstein v. Skyteller, Inc.*, 48 F. Supp. 2d 315, 323 (S.D.N.Y. 1999) (lack of specific facts suggesting control over stock misappropriation compelled dismissal of claim against acting treasurer); *Katz v. David W. Katz & Co.*, 82 Civ. 6383, 1984 WL 2385, at *7 (S.D.N.Y. Feb. 14, 1984) (alleged control person must "possess[] actual control over the transactions in question").

### C.    Plaintiffs Also Fail To Adequately Plead Culpable Participation by Mr. Outridge

Plaintiffs' Section 20(a) claims also must be dismissed because they fail to allege "culpable participation 'in some meaningful sense' by [Mr. Outridge] in the fraud." *In re Refco, Inc.*, 503 F. Supp. 2d at 660 (citation omitted).

---

¶ 30.) Thus, in addition to being insufficient because of their conclusory language, the allegations against Mr. Outridge also are belied by Plaintiffs' specific allegations against other Defendants. *See, e.g., Hirsch v. Arthur Andersen & Co.,*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("General, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint.").

As this Court held in *Global Crossing*:

> Section 20(a) contains the additional requirement that plaintiff allege culpable participation 'in some meaningful sense' by the controlling person in the fraud. Since culpable participation is an element, the PSLRA's heightened pleading requirements apply, and 'plaintiffs must plead with particularity facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct.'

322 F. Supp. 2d at 349 (internal citations omitted).

As set forth at Point I.B above, Plaintiffs fail to adequately plead that Mr. Outridge acted with scienter and, therefore, fail to state a Section 20(a) claim against him.

In addition, as set forth at Point I.A, above, the Complaints allege no particularized facts of any participation by Mr. Outridge in the alleged RCM Securities Scheme or the RGHI Scheme. *See In re Refco, Inc.*, 503 F. Supp. 2d at 663 (stating that a "claim under § 20(a) requires culpable *participation*," and dismissing Section 20(a) claim against defendant Trosten in connection with the Bond Registration Statement because Trosten did not himself make the misstatements) (emphasis in original).

For all of these reasons, Plaintiffs' Section 20(a) claim against Mr. Outridge also should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaints in their entirety as to

Mr. Outridge, with prejudice.

Dated: New York, New York
        June 18, 2008

Respectfully submitted,

PROSKAUER ROSE LLP

By: _Jessica Mastrogiovanni_
    Claire P. Gutekunst
    cgutekunst@proskauer.com
    Jessica Mastrogiovanni
    jmastrogiovanni@proskauer.com
1585 Broadway
New York, New York 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

*Attorneys for Defendant Richard N. Outridge*

31