# EXHIBIT C

CONFIDENTIAL - Balzaretti

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------x

In Re: REFCO INC., et al.

Debtors Case No. 05-03064

-------------------------------x

***CONFIDENTIAL***

VIDEOTAPED DEPOSITION OF FERNANDO BALZARETTI

New York, New York

February 8, 2006

Reported by:
KATHY S. KLEPFER, RPR, RMR, CRR
JOB NO. 6116


MR. GLICK: Objection.

A. She recently retired to become a full-time mom.

**Q. When did she start working for you as your assistant?**

A. At -- I don't have the exact date.

**Q. Approximately?**

A. In '97, '98.

**Q. And did you in fact access your RCM account online?**

A. We accessed our Refco account online all the time, yes.

**Q. You keep saying "Refco." Can I take that to mean RCM?**

A. As I said before, I just learned to differentiate between RCM and Refco. To me, I had always referred as Refco as one entity, and I was not aware that I was dealing with separate entities.

**Q. Did IDC have more than one account at Refco within the Refco Group?**

A. No.

**Q. So the RCM account was the only account?**







A. Yes.

**Q. What -- when you accessed -- when IDC accessed the account online, what could you see online?**

A. The purpose of accessing it online was to review that the trades executed during the day were properly reflected and that we could do a, what is called a marked to market valuation of the account on a daily basis.

**Q. And you would perform the marked to market valuation yourself?**

A. Yes.

**Q. Was there any marked to market valuation reflected on the RCM online?**

A. Yes.

**Q. What else could you see?**

A. I could see any transaction that they had done -- that had been done, and all the positions held in the account.

**Q. Could you see the financing?**

A. You could see the financing.

**Q. Could you see the coupon payments?**

A. You could see the coupon payments.

**Q. Anything else?**







A. You could see any activity that took place in the account.

**Q. And you would check this frequently for accuracy?**

A. We would check it on a daily basis.

**Q. When you say "we would check it," you would check it?**

A. I would check it or my assistant would check it.

**Q. Your assistant, Ingrid?**

A. Yes.

**Q. Anybody else at IDC check it?**

A. No.

**Q. What about confirms, where were they sent?**

A. They were sent to our address of record.

**Q. Which was?**

A. I don't know if it was Guatemala or a P.O. Box in Miami. It got to be one of the two.

**Q. Did you receive them?**

A. Did I receive them? I never saw them. I would look at the daily transaction on the Internet.







**Q. So the daily transaction was reflected online?**

A. Yes.

**Q. What about account statements?**

A. Account --

**Q. Were they physically sent?**

A. Yes.

**Q. Where to?**

A. To the address of record.

**Q. Did you receive those?**

A. Did I personally receive those?

**Q. Yes.**

A. No.

**Q. Do you know anyone at IDC who did?**

A. Yes.

**Q. Who was that?**

A. My assistant, who would file them, until the following month, and then they would be destroyed.

**Q. Did you review those?**

A. No.

**Q. Did you review them online?**

A. Yes.

**Q. Were they format online, to your**

MS. CLEGHORN: I believe that's it. I don't have any further questions.

Anybody else care to question the witness?

MS. DAVIDSON: Mr. Glick has some questions.

EXAMINATION BY

MR. GLICK:

**Q. Mr. Balzaretti, you testified earlier that you had -- your clients, I should say, had accounts at Bear Stearns and also at Refco. You also testified that there was another entity that was somehow tied into the Bear Stearns account.**

**Could you explain who that entity was and its -- that entity's relationship to Bear Stearns?**

A. Yes. It's a U.S. broker-dealer that clears and custodies through Bear Stearns. So my account statements come with the logo of this entity, which at this time is called EFG, and the logo and statement of Bear Stearns.

We've had -- since we opened the accounts, there have been three different

changes. It started as Vestrust Securities. Vestrust Securities was later bought by Dresdner, and Dresdner was later bought by EFG.

**Q. Were each of those three entities that you just mentioned U.S. broker-dealers, to your knowledge?**

A. Yes.

**Q. And the relationship of Bear Stearns, was that with all three of those entities consistently throughout your relationship with them?**

A. Yes.

**Q. And did Bear Stearns simply do the custodial and the execution part of the transaction, or was it just the custodial part?**

A. I know they do the custodial part, and I know that the executions are done in my statement, and my account number has not changed even though three different entities have owned the account.

**Q. And can you compare what I'm going to call the -- is it EFG?**

A. Yes.

**Q. -- EFG/Bear Stearns account to the RCM**

**account in terms of the types of activity that the accounts we've discussed today transacted?**

A. To me, they're one and the same.

**Q. And when you say "one and the same," why do you say that?**

A. I can execute transactions identical in one account or the other.

**Q. And was there any significant differences that you can identify in how those transactions were executed?**

A. How were they reported or executed?

**Q. Executed.**

A. None that I know of.

**Q. In the way that they were reported?**

A. None that I know of.

**Q. Whether it was Bear Stearns or Refco, who was the owner of the positions within an account?**

MS. CLEGHORN: Objection.

**Q. You can answer.**

A. The account holder.

**Q. Who bore the risk, as you understood it?**

MS. CLEGHORN: Objection.

**Q. Whether it was in Bear Stearns or RCM?**

A. Market risk?

**Q. Market risk.**

A. The account holder.

**Q. Was there, in your mind, a custodial risk?**

A. None.

**Q. When we spoke about insurance just before, what did that insurance cover, do you have an understanding? What circumstances would that insurance come into effect?**

A. My limited understanding is that it would cover in the event that the securities were not in your account.

**Q. Was that a concern for you with regard to Refco?**

A. When I learned that it was a New York-based entity, no, it didn't become a concern.

**Q. Did you ever meet with any New York-based Refco personnel?**

A. Refco personnel from New York, Refco Securities persons from New York traveled to Guatemala to offer services to our clients and

CONFIDENTIAL - Balzaretti

to me as a client.

**Q. And you testified earlier that Refco personnel from Miami also traveled to Guatemala?**

A. Often, yes.

**Q. Did anyone else from any other Refco office come to Guatemala?**

A. If they did, they did not come to visit me.

MR. GLICK: I have nothing else.

FURTHER EXAMINATION BY MS. CLEGHORN:

**Q. Just to follow up, why was RCM -- or, strike that. Why was Refco's presence in New York relevant?**

A. It was our understanding that it was all managed in New York, and given that it's a U.S. territory, we felt comfortable with that.

MS. CLEGHORN: I think we have nothing further.

MR. GLICK: Thank you.

MS. CLEGHORN: And thank you kindly for your long trip.

THE WITNESS: Thank you.

THE VIDEOGRAPHER: The time is 2:2 --

CONFIDENTIAL - Balzaretti

excuse me, 2:40. We are going off the record.

____________________
FERNANDO BALZARETTI

Subscribed and sworn to before me this day of 2005.

____________________

CONFIDENTIAL - Balzaretti

CERTIFICATE

STATE OF NEW YORK )
: ss
COUNTY OF NEW YORK)

I, Kathy S. Klepfer, a Registered Merit Reporter and Notary Public within and for the State of New York, do hereby certify:

That FERNANDO BALZARETTI, the witness whose deposition is herein before set forth, was duly sworn by me and that such deposition is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage and that I am in no way interested in the outcome of this matter.

In witness whereof, I have hereunto set my hand this 8th day of February, 2006.

-------------------------------
KATHY S. KLEPFER, RPR, RMR, CRR

CONFIDENTIAL - Balzaretti

INDEX

| TESTIMONY OF F. BALZARETTI: | PAGE |
|---|---|
| Examination by Ms. Davidson | 6 |
| Examination by Ms. Cleghorn | 151, 158 |
| Examination by Mr. Glick | 154 |

| EXHIBITS: | PAGE |
|---|---|
| Exhibit 300, a document bearing Bates Nos. RCM AOD 012679 through 672 | 36 |
| Exhibit 301, a document bearing Bates Nos. RCM AOD 012678 through 012681 | 39 |
| Exhibit 302, a document bearing Bates Nos. RCM AOD 012722 through 726 | 50 |
| Exhibit 303, a document bearing Bates Nos. RCM AOD 012673 through 2677 | 56 |
| Exhibit 304, a document bearing Bates Nos. IDC 0010 through 0013 | 61 |
| Exhibit 305, a document bearing Bates Nos. RCMS-DTC000289 through 291 | 126 |
| Exhibit 306, Explanation of Coded Symbols | 129 |