UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re REFCO CAPITAL MARKETS, LTD. BROKERAGE CUSTOMER SECURITIES LITIGATION | 06 Civ. 643 (GEL) |
| VR GLOBAL PARTNERS, L.P., et al, Plaintiffs, <br><br> - against - <br><br> PHILLIP R. BENNETT, et al, Defendants. | 07 Civ. 8686 (GEL) |
| CAPITAL MANAGEMENT SELECT FUND LTD., et al, Plaintiffs, <br><br> - against - <br><br> PHILLIP R. BENNETT, et al, Defendants. | 07 Civ. 8688 (GEL) |

## DECLARATION OF MARC S. KIRSCHNER

MARC S. KIRSCHNER declares, pursuant to 28 U.S.C. § 1746:

1. I am the Plan Administrator of Refco Capital Markets, Ltd. ("RCM") as well as the Trustee of the Refco Private Actions Trust, and the Trustee of the Refco Litigation Trust. I submit this declaration in support of Plaintiffs' Memorandum Of Law In Support Of Their Motion for Reconsideration.

2. During the course of the Refco bankruptcy cases, I was appointed to serve as the chapter 11 trustee for RCM (the "RCM Trustee"). Following the confirmation of the Refco Bankruptcy Plan by the Bankruptcy Court on December 15,

2006, which became effective on December 26, 2006, the remaining rights, duties, powers and other responsibilities of the RCM Trustee were assigned to the RCM Plan Administrator. By Order dated April 12, 2007, I was discharged as RCM Trustee and concurrently appointed as RCM Plan Administrator.[1]

3.  Based on my work as the RCM Trustee and the RCM Plan Administrator, including numerous interviews of, and discussions with, former Refco employees, I have obtained a understanding of RCM's ordinary course of doing business, which I discuss below. A significant amount of my understanding of RCM's course of business comes from numerous discussions I have had with Vera Kraker and Thomas Yorke, who together ran the RCM Execution and Financing desk (the "Desk"), and both of whom worked directly for me in my role as RCM Trustee and RCM Plan Administrator.

4.  The Desk executed trades using customer securities for RCM and raised cash for another Refco entity, Refco Capital Corporation ("RCC").

5.  More specifically, on any given day, as part of the normal duties of Refco employees who worked on the Desk and as part of RCM's ordinary course of doing business, if RCM was in need of cash, the Desk would examine RCM's stock record to see which securities were being held by RCM's customers. Someone on the Desk would then select securities that could be used to raise sufficient cash to satisfy any cash shortfall. To raise the cash, the Desk would cause RCM to enter into repurchase

---

[1] The Plan also created two trusts, the Refco Private Actions Trust (the "Private Actions Trust") and the Refco Litigation Trust ("Refco Litigation Trust"). I was appointed Trustee of the both the Refco Private Actions Trust ("Private Actions Trustee") and of the Refco Litigation Trust ("Litigation Trustee") and the bankruptcy court approved those appointments.

("repo") or stock loan transactions with one or more counterparties (usually a large financial institution), either directly or indirectly through Refco Securities LLC ("RSL"), using the customers' securities. The stock loan or repo transaction and the use of customer securities happened simultaneously.

6.      In deciding which customer securities to use to raise cash, the Desk did not seek to determine whether the securities were held by a customer with or without a margin balance. To the contrary, the Desk freely used securities held by customers who had no margin balance.

7.      When using customer securities to raise cash, RCM executed a combination of stock loan and repo transactions, rather than straight sales. In both the stock loan and repo transactions, RCM's use of customer securities continued for as long as the stock loan or repo transactions remained open.

8.      All of the stock loan and some of the repo transactions were open transactions in which the transaction remained open until RCM or its counterparty chose to close out the transaction. Until the transaction was closed out, the securities remained outstanding and the stock loan transactions were revalued on a daily basis, based on the most recent day's trading price. During the time the stock loan transaction was open, the counterparty had an interest in the stock, namely the right to use the stock as their own for the duration of the stock loan and to sell it and keep the proceeds in the event of a default by RCM. During the period that the stock loan transaction was left open, RCM paid interest for the use of the cash extended by the counterparty. It was only after the transaction was closed that RCM's use of the securities ceased and the securities were returned.

9. Alternatively, some of the repo transactions were done on a term basis, under which the transaction had an agreed-upon start date, interest rate, and repurchase date. If RCM was still in need of cash at the end of the term of the repo, the Desk would "roll" the transaction at the end of the term, *i.e.*, by entering into a new term transaction using the same securities as collateral for RCM's new repo with the same counterparty.

10. In determining whether or not to close out a transaction, the Desk did not assess whether the customers holding the securities had a margin balance. Rather, as was the case with the decision about which securities to use in the first instance, decisions about which securities to stop using were made without regard to whether or not the securities were held by a customer with a margin balance.

11. Finally, if a customer requested the return of the customer's securities, the Desk would close out the open stock loan or repo transaction so that the securities could be returned to the customer or transferred pursuant to their instructions. To the extent that customers had no margin balance at the time they requested the return of their securities, to my knowledge, no-one at RCM took any steps to inform such customers that their securities were the subject of open stock loans or repo transactions. I declare under penalty of perjury that the foregoing is true and correct. The foregoing is affirmed under penalty of perjury pursuant to 28 U.S.C. § 1746.

_____
Marc S. Kirschner